FILED

LECIA L. SHORTER
287 S. ROBERTSON BLVD., STE 291
BEVERLY HILLS, CA 90211
(310) 869-5835
leciashorter@yahoo.com

2012 SEP -4  PM 3: 30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

Case No.: **CV12-7337** JVS (FMO)

| | |
|---|---|
| LECIA L. SHORTER,<br><br>       Plaintiff,<br><br>   vs.<br><br>LEROY BACA, GLORIA MOLINA, MARK<br>RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON<br>KNABE, MICHAEL D. ANTONOVICH, DEPUTY<br>SHERIFF AVALOS, DEPUTY SHERIFF ORTIZ, the<br>COUNTY OF LOS ANGELES and, Does 1<br>through 10, inclusive,<br><br>       Defendants. | **COMPLAINT FOR:**<br><br>1) **CIVIL RIGHTS VIOLATIONS, 42 U.S.C §1983;**<br>2) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>3) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>4) **DEFAMATION;**<br>5) **ASSAULT AND BATTERY;**<br>6) **NEGLIGENT HIRING AND SUPERVISION**<br>7) **NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF LECIA L. SHORTER ALLEGES AS FOLLOWS:

    1.    Plaintiff, LECIA L. SHORTER, is a citizen of the United States, and is now, and at all

times mentioned herein was, a resident of the County of Los Angeles, State of California.  At all

COMPLAINT FOR DAMAGES- 1

times mentioned in this Complaint was a prisoner in the custody of the Los Angeles County Sheriff's Department at the Century Regional Detention Facility, in Lynwood, California.

2.      This is an action brought pursuant to the First, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and to *42 U.S.C. §1983*. The jurisdiction of this Court is predicated on *28 U.S.C. §§ 1331* and *1343(a)*.

3.      A substantial portion of the events giving rise to this action occurred in Lynwood, California located in Los Angeles County. Venue is therefore proper under *28 U.S.C. § 1391(b)*.

4.      Each named Defendant was, at all times mentioned in this complaint, acting under color of statutes, ordinances, regulations, customs, or usage, of the State of California. This action is brought against Defendants for violation of Plaintiff's a) right to be free of cruel and unusual punishment, guaranteed by the *Eighth* and *Fourteenth Amendments to the United States Constitution;* b) Sixth Amendment right to a speedy trial; c) Sixth Amendment right to be represented by counsel for her defense; c) First Amendment right to freedom of association with her attorney; d) right to be free from "deliberate indifference" to her serious medical and dental needs as guaranteed by the Eighth Amendment; e) her right to be free from excessive bail; and, f) Eighth Amendment right to have dietary guidelines to maintain adequate nutrition for her unique medical issues.

5.      Defendant LEROY BACA, is and at all times mentioned in this complaint was, acting in the course and scope of his employment as the Sheriff of Los Angeles County. As Sheriff, he is the chief executive officer of the Los Angeles Sheriff Department. According to California law, the Sheriff is answerable for the safekeeping of the inmates in his custody. California Government Code §§26605 and 26610; California Penal Code §4006. Specifically, Defendant BACA is responsible for the oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services. This includes all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security and

medical staffs, of the County Jails.  He is also responsible for the care, custody, and control of all inmates housed in the County Jails.

6.      Plaintiff is informed and believes and thereon alleges that Defendant Baca is regularly provided with reports of applications of force, substandard medical care, improper strip searches, allegations of unreported and excessive use of force and breaches of security in the County Jails.  Plaintiff sues Defendant BACA in his official and individual capacity.

7.      Defendant Gloria Molina is the Supervisor of the First District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Molina is sued in her official capacity regarding her administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

8.      Defendant Mark Ridley-Thomas is the Supervisor of the Second District of Los Angeles County.  The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County.  Defendant Ridley-Thomas is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

9.      Defendant Zev Yaroslavsky is the Supervisor of the Third District of Los Angeles County.  The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County.  Defendant Yaroslavsk is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

10.      Defendant Don Knabe is the Supervisor of the Fourth District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County.

Defendant Knabe is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

11.     Defendant Michael D. Antonovich is the Supervisor the Fifth District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Antonovich is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

12.     Defendants, and each of them, are aware of the culture of deputy violence, intimidation, retaliation, substandard medical care, improper body searches, and inappropriate conduct that pervades the Los Angeles County Jails and have failed to take reasonable measures to remedy the problems.  Plaintiff therefore charges Defendants Baca, Molina, Ridley-Thomas, Yaroslavsky, Knabe and Antonovich with violations of Plaintiffs' First, Sixth, Eighth, Eleventh and Fourteenth Amendment right to reasonable protection from violence and excessive force, substandard medical and dental care, interference with her right to associate with her attorney, and, interference with her right to a speedy trial.

13.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have acquiesced in, fostered, and implicitly authorized the abuse incurred by Plaintiff by failing to adequately train and supervise deputies and the medical staff in the face of historical and continual evidence of abuse.  Defendants have failed to conduct meaningful investigations of reports of excessive force, improper strip searches, sub-standard medical and dental care, render guilty deputies accountable, and repeatedly ignored evidence that deputies and other Los Angeles County officials are covering up incidents of excessive force, inmate torture, substandard medical care, improper strip searches and overall prisoner abuse.

14.     On or about May 4, 2010, Plaintiff filed a complaint and claim for damages with Los Angeles County Sheriff's Department concerning the use of excessive force by Los Angeles County Sheriff Deputies Ian Beckford and R. Williams on April 9, 2010.  Specifically, Plaintiff was

physically assaulted by Deputy Ian Beckford when making an inquiry about a court appearance at the Los Angeles Superior Court at LAX on April 9, 2010.  Deputy Beckford called for assistance and Deputy Williams and another unidentified deputy joined in the attack, forcing Plaintiff to the floor and putting their knees on Plaintiff's back with force.

15.     Notwithstanding his responsibilities as chief executive officer of the Los Angeles Sheriff Department and notice of the allegations, Defendant LEROY BACA did not personally investigate the allegations of misconduct concerning Deputies Beckford, Williams and the unidentified deputy involved in the incident of April 9, 2010.

16.     On or about August 24, 2010, the Los Angeles County Board of Supervisors denied Plaintiff's claim for damages without making an inquiry to Defendant LEROY BACA or conducting an investigation of the misconduct of Deputies Beckford and Williams. The Los Angeles County Supervisors who failed to investigate Plaintiff's complaint were Defendants GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE and MICHAEL D. ANTONOVICH.

17.     On or about January 21, 2011, Plaintiff filed a complaint and claim for damages with the Los Angeles County Sheriff's Department concerning a series of incidents that occurred during her incarceration from October 19, 2010 through November 24, 2010. Specifically, on October 17, 2010, Plaintiff was arrested by the Beverly Hills Police Department after having been accused of trespassing at her private mail box location.  Plaintiff was held on $30,000.00 bail and transported to the Century Regional Detention Facility in Lynwood, California, operated by the Los Angeles County Sheriff's Department.

18.     While at the Century Regional Detention Facility from October 19 through November 24, 2010, Plaintiff experienced the following:  a) placement in a cell for two days with an inoperable toilet that was filled with urine, no ventilation, no water, an inoperable sink, an inoperable toilet, no blanket, no mattress padding on the steel bunk; b) denied showers; c) deputies' refusal to provide immediate medical attention to address Plaintiff's serious medical condition; d) being kicked and slapped after fainting; e) substandard medical care; f) deputy

interference with medical decisions after being hospitalized; g) being forced to have a medical procedure; h) refusals of request to speak with her attorney and/or a family member after being hospitalized; i) deputy physical and mental abuse while Plaintiff was hospitalized; and, not being allowed confidential communications with health care providers while hospitalized.

19.     Notwithstanding his responsibilities as chief executive officer of the Los Angeles Sheriff Department and notice of the allegations, Defendant LEROY BACA did not personally investigate the allegations of misconduct concerning Plaintiff's incarceration from October 19, 2010 through November 24, 2010.

20.     On or about March 15, 2011, the Los Angeles County Board of Supervisors denied Plaintiff's claim for damages without making an inquiry to Defendant LEROY BACA or investigating Plaintiff's allegations.

21.     The Los Angeles County Supervisors failed to make and inquiry of Defendant BACA concerning Plaintiff's incarceration from October 19 to November 24, 2010 were Defendants GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE and MICHAEL D. ANTONOVICH.

22.     On or about January 18, 2012, Plaintiff filed a complaint and claim for damages directly with the County of Los Angeles concerning various incidents that occurred during her incarceration at the Century Regional Detention Center from November 15, 2011 through December 17, 2011.  Plaintiff also sent a complaint to Defendant LEROY BACA about the incident that occurred during the same period of incarceration.  Plaintiff's complaint is attached hereto as Exhibit A and incorporated herein by reference.

23.     Plaintiff exhausted all available administrative remedies, by filing a claim with Los Angeles County on January 18, 2012.  Plaintiff also wrote Defendant LEROY BACA personally to apprise him of the incidents at Century Regional Detention Facility.  Defendant LEROY BACA wrote Plaintiff and told her she had received dental care.  On February 28, 2012, Plaintiff's claim for damages was denied by Defendant LOS ANGELES COUNTY BOARD OF SUPERVISORS.

### FIRST CLAIM FOR VIOLATION OF 42 U.S.C §1983
### (AGAINST DEFENDANTS LEROY BACA, SHERIFF DEPUTY ORTIZ, SHERIFF DEPUTY AVALOS
### AND LOS ANGELES COUNTY)

23.     Plaintiff incorporates herein paragraphs 1 through 22 as though fully set forth below.

24.     While incarcerated at the Century Regional Detention center from November 15, 2011 through December 17, 2011, Plaintiff experienced the following:  a)  lack of medical oversight; b) refusals to adhere to court medical orders; c) shower deprivations; d) denied medication for a critical medical condition; e) refused attorney communications notwithstanding requests by her attorney; f) repeat deputy insistence that Plaintiff manipulate her vagina; g) being chained to the door of her cell without clothes on numerous occasions for up to six hours at a time; h) food deprivation; i) being kept in a holding cell for ten to twelve hours at the Criminal Court Building and not being allowed to appear in court despite attorney and court requests; j) deprivation of dental care for an infected tooth; and, k) a cell that was never cleaned during her entire incarceration.

25.     On or about February 28, 2012, the Los Angeles County Board of Supervisors, and each of them, denied Plaintiff's claim for damages without making an inquiry to Defendant LEROY BACA, the Los Angeles County Sheriff Deputies Alvalos and Ortiz, the medical staff at Century Regional Detention Facility or investigating Plaintiff's allegations.

26.     The conduct of Defendants, and each of them, as alleged in this Complaint, subjected Plaintiff to unnecessary and wanton infliction of physical injury, pain, and emotional distress.

27.     In acting as alleged in this complaint, Defendants, and each of them, violated Plaintiff's right to be free of cruel and unusual punishment, guaranteed by the *Eighth* and *Fourteenth Amendments to the United States Constitution.*

28.     Defendants also violated Plaintiff's First Amendment right to freedom of association with her attorney and her Sixth Amendment right to a speedy trial by keeping Plaintiff in a holding cell on several occasions and not allowing her to appear in court and refusing to allow her conferences with her attorney despite the attorney's requests.

29.     As a direct and proximate result of Defendants actions, described in this complaint, plaintiff has suffered injury, pain, and emotional distress in that she was humiliated, embarrassed, suffered physical injuries, lost a tooth, and suffered mental anguish. Plaintiff was fearful of her death due to the deprivation of appropriate medical care and Defendants' refusal of her medication that assists her to not develop blood clots.

30.     In acting as is alleged in this Complaint, Defendants, and each of them, acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiff's federally protected rights.

## SECOND CLAIM FOR
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANTS LOS ANGELES COUNTY, DEFENDANT LEROY BACA, DEPUTY SHERIFF AVALOS AND DEPUTY SHERIFF ORTIZ)

31.     Plaintiff incorporates herein by reference paragraphs 1 through 30 as though fully set forth below.

32.     Defendants LEROY BACA, SHERIFF DEPUTY ORTIZ, SHERIFF DEPUTY AVALOS AND LOS ANGELES COUNTY, at all times referenced herein, owed a duty to Plaintiff to not engage in discriminatory conduct, to not be physically and emotionally abusive to Plaintiff and to provide proper and adequate medical care and supervision of Plaintiff's medical condition. Specifically, Defendant BACA has a duty to provide adequate and appropriate oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services.

33.    Defendants and each of them knew, or should have known, that their misconduct as set forth herein would cause Plaintiff to experience severe emotional distress.

34.    Defendants and each of them breached their duty of care to Plaintiff as a housed inmate of Century Regional Detention Facility as referenced *infra.*

35.    As a direct and proximate result of Defendants, and acts of cruel and unusual punishment, substandard medical care and violation of Plaintiff's First, Sixth, Eighth and Fourteenth Amendment Constitutional rights, as well as Defendants physical and emotional abuse Plaintiff, Plaintiff has suffered and continues to suffer severe emotional distress and mental suffering, all to her damage in an amount to be established at trial.

**THIRD CLAIM FOR**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS LOS ANGELES COUNTY, DEFENDANT LEROY BACA, DEPUTY SHERIFF AVALOS AND DEPUTY SHERIFF ORTIZ)**

36.    Plaintiff incorporates herein by reference paragraphs 1 through 35 as though fully set forth below.

37.    At all times referenced herein, the employees of DEFENDANT COUNTY OF LOS ANGELES e.g. DEFENDANT LEROY BACA, DEPUTY SHERIFF ORTIZ AND DEPUTY SHERIFF AVALOS acted within the scope of their employment with DEFENDANT COUNTY OF LOS ANGELES.

38.    As a direct and proximate result of the misconduct referenced herein, Plaintiff has suffered extreme emotional psychological distress, severe harm and anguish including but not limited to physical and emotional abuse.  Additionally, the actions of DEFENDANTS DEPUTY SHERIFF ORTIZ AND DEPUTY SHERIFF AVALOS and Does 1 thru 25 as referenced herein were specifically designed to embarrass, harass, humiliate and annoy Plaintiff.  Plaintiff has suffered damages and continues to suffer damages in an amount to be established at trial.

39.    Defendants, and each of their actions as referenced herein, particularly the physical and emotional abuse and disparaging comments regarding Plaintiff, were knowing, intentional,

and willful, because they had full knowledge or knew with substantial certainty of the extreme emotional psychological distress, severe harm, and anguish that their conduct would cause Plaintiff or any person of ordinary sensitivity.  Said conduct was outrageous and intended to cause harm and emotional distress to Plaintiff and Plaintiff has in fact experience psychological and emotional harm as set forth below.

40.     The conduct of Defendants was outrageous, intentional, malicious and oppressive, and done with a wanton and reckless disregard of the consequences to Plaintiff.  Defendants also knew or should have known that their physical and emotional abuse would cause Plaintiff psychological and emotional harm.  Notwithstanding the foregoing, Defendants intended for their conduct to humiliate, annoy and embarrass Plaintiff.    Plaintiff is therefore entitled to punitive damages in amount to be established at trial.

**FOURTH CLAIM FOR DEFAMATION**
**(AGAINST DEFENDANT LOS ANGELES COUNTY, DEFENDANT LEROY BACA AND DOES 1 THRU 25)**

41.     Plaintiff incorporates herein by reference paragraphs 1 through 40 as though fully set forth below.

42.     DEFENDANT LOS ANGELES COUNTY and its employees, agents, servants and assigns individually and in their capacity as employees of DEFENDANT LOS ANGELES COUNTY made false representations to the public about Plaintiff's mental status and/or condition as an inmate within a Los Angeles County jail facility.  Specifically, Defendant LOS ANGELES COUNTY and its agents, employees, servants and assigns forced Plaintiff to wear yellow shirts and blue pants, representing that she was an inmate with a medically diagnosed psychological condition.

43.     Defendants, and each of them, knew the representation of wearing yellow shirts and blue pants was false in that Plaintiff has never been medically diagnosed with a psychological condition. Defendants intended that the representation of wearing yellow shirts and blue pants to subject and expose Plaintiff to hatred, contempt, ridicule and shame.

44.     While wearing a yellow shirts and blue pants, a judicial officer of the Los Angeles Superior Court stated openly in during a court hearing, "I am not worried about what she has to say. Look at what she is wearing, she is obviously crazy." The judicial officer apparently believed the negative and false connotation of wearing yellow shirts and blue pants and viewed Plaintiff in a negative light as a result.

45.     As a direct and proximate cause of the false representation of wearing yellow shirts and blue pants, Plaintiff has experienced embarrassment, hurt feelings and mortification as a result of the statement made by the judicial officer of the Los Angeles Superior Court and the false representation that she had been medically diagnosed with a mental condition.

46.     Defendants knew that forcing Plaintiff to wear yellow and blue represented that she had been diagnosed with a mental condition, and, they knew that such a representation was false. Defendants intended to place Plaintiff in a false and negative light to the public and specifically, her attorneys, Los Angeles County employees and Los Angeles County judicial officers.

47.     Because of the intentional nature of Defendants false representations about Plaintiff, Plaintiff is entitled to punitive damages in an amount to be established at trial.

**FIFTH CLAIM FOR BATTERY**
**(AGAINST LOS ANGELES COUNTY, DEFENDANT LEROY BACA, DEPUTY SHERIFF AVALOS AND**
**DEPUTY SHERIFF ORTIZ)**

48.     Plaintiff incorporates herein by reference paragraphs 1 through 47 as though fully set forth below.

49.     From November 15, 2011 through December 17, 2011, Plaintiff was housed as an inmate at the Century Regional Detention Facility under the care and supervision of DEFENDANTS LOS ANGELES COUNTY AND DEFENDANT LEROY BACA.

50.     On November 29, 2011, Plaintiff was taken to LAX court for a pre-trial hearing. When Plaintiff arrived at Century Regional Detention Facility, she was taken to the 2300 module where Sheriff Deputies Ortiz, Avalos and Garcia were waiting to bring her to her cell. The deputies

asked Plaintiff for her clothes and my bra. They then asked her to lift my breasts and turn around, bend over, open her vagina and cough. Plaintiff bent over, opened her inner thighs and coughed. The sheriff deputies stated that was not good enough. DEFENDANT DEPTUY ORTIZ took Plaintiff's pants and her lunch and said, "you must not want to eat and you must want to stay like that all night." Plaintiff grabbed the chain used to restrain her so that she could use the toilet if need be. DEFENDANT DEPUTY AVALOS returned and pretended she was going to unlock the handcuff on Plaintiff's wrist and instead locked both handcuffs onto Plaintiff's left hand and tightened them to the point that her wrist became swollen and red. DEFENDANT DEPUTY AVALOS also pulled on the slack of the chain so hard that the chain cut Plaintiff's baby finger of her left hand. DEFENDANT SHERIFF DEPUTY ORTIZ then instructed the trustees to not serve Plaintiff dinner and they did not. Plaintiff stayed chained to the door until approximately four hours until a male deputy officer Ramirez unlocked the handcuffs.

51.     Plaintiff did not consent to the touching by the employees of DEFENDANT LOS ANGELES COUNTY.

52.     As a direct and proximate result of the touching by the employees of DEFENDANT LOS ANGELES COUNTY, Plaintiff was physically abused and assaulted, harassed, injured emotionally, and damaged in an amount that will be established at trial.

### SIXTH CLAIM FOR
### NEGLIGENT HIRING AND SUPERVISION
(AGAINST DEFENDANTS LEROY BACA, GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, MICHAEL D. ANTONOVICH, AND, LOS ANGELES COUNTY)

53.     Plaintiff incorporates herein by reference paragraphs 1 through 52 as though fully set forth below.

54.     Defendant LEROY BACA, is and at all times mentioned in this complaint was, acting in the course and scope of his employment as the Sheriff of Los Angeles County. As Sheriff, he is the chief executive officer of the Los Angeles Sheriff Department. According to California law, the

Sheriff is answerable for the safekeeping of the inmates in his custody. California Government Code §§26605 and 26610; California Penal Code §4006. Specifically, Defendant BACA is responsible for the oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services. This includes all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security and medical staffs, of the County Jails. He is also responsible for the care, custody, and control of all inmates housed in the County Jails.

55.     DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH are members of the Board of Supervisors of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County.

56.     DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, AND, MICHAEL D. ANTONOVICH are also responsible for the oversight of the The Sybil Brand Commission for institutional Inspections consists of ten Commissioners, who were appointed by the Los Angeles County Board of Supervisors (two from each Supervisorial District). The Sybil Brand Commissioners conducts inspections of jails, lockups, probation and correctional facilities in the Los Angeles County at least once each year. They may conduct additional inspections more often as the Commission may deem necessary or as directed by a judge of the Superior Court. These inspections involve a complete evaluation of the condition of each facility the members of the Commission or a committee of the Commission. These inspections are to involve a complete evaluation of the condition of each facility's effective and economical administration, cleanliness, discipline and comfort of its inmates.

57.     At all times mentioned herein, DEFENDANTS LEROY BACA, GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, MICHAEL D. ANTONOVICH, and, LOS ANGELES

COUNTY knew or should have known that the conditions of the Century Regional Detention Facility were ineffective, unclean and subjected inmates to the risk of harm and even the risk of death. Defendants and each of them failed in the oversight, management and administration of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services.  Furthermore, Defendants and each of them, knew or should have known that Los Angeles County employees that caused harm to Plaintiff were unfit to perform the work for which they were hired and that this unfitness created a particular risk of harm to Plaintiff and the public at large.

58.   Defendants have failed to conduct meaningful investigations of reports of excessive force, improper strip searches, sub-standard medical and dental care, render guilty deputies accountable, and repeatedly ignored evidence that deputies and other Los Angeles County officials are covering up incidents of excessive force, inmate torture, substandard medical care, improper strip searches and overall prisoner abuse.

59.   As a direct and proximate cause of the evident unfitness of the employees, administrators and officials of DEFENDANT LOS ANGELES COUNTY and DEFENDANT LOS ANGELES COUNTY, LEROY BACA, FLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE AND MICHAEL D. ANTONOVICH'S negligence in hiring, retaining and failing to properly supervise its administrators, employees and the conditions of the Century Regional Detention Facility, Plaintiff has been generally and specially damaged in an amount to be established at trial.

### SIXTH CLAIM FOR
### NEGLIGENCE
**(AGAINST DEFENDANTS LEROY BACA, GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, MICHAEL D. ANTONOVICH, AND, LOS ANGELES COUNTY)**

60.   Plaintiff incorporates herein by reference paragraphs 1 through 59 as though fully set forth below.

61.     Defendants, and each of them, have an obligation to oversee and evaluate the condition of each Los Angeles County jail facility's effective and economical administration, cleanliness, discipline and comfort of its inmate. This includes housing practices, transportation, and, medical and dental services.  This also includes all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security and medical staffs, of the County Jails.  Defendants, and each of them, are also responsible for the care, custody, and control of all inmates housed in the County Jails.

62.     Defendants have failed in their obligations to provide adequate medical and dental care, clean facilities, as well as effective and economical administration of its facilities. Defendants have further failed to conduct meaningful investigations of reports of excessive force, improper strip searches, sub-standard medical and dental care, render guilty deputies accountable, and, have repeatedly ignored evidence that deputies and other Los Angeles County officials are covering up incidents of excessive force, inmate torture, substandard medical care, improper strip searches and overall prisoner abuse.

63.     On November 15, 2011, a medical order was issued by the Los Angeles Superior Court ordering that Plaintiff's INR level be monitored while taking the medication Coumadin. That medical order was ignored by the medical staff and administrators of the Century Regional Detention Facility until November 30, 2011.

64.     On November 30, 2011, Plaintiff's INR level was taken and it was 4.4 which is twice the level that it should have been.  Plaintiff was therefore subject to internal bleeding and other very serious medical conditions.  On or about December 2, 2011, Plaintiff's medication was discontinued.  Her INR was not taken again by the medical staff of the Century Regional Detention Facility.

65.     On numerous occasion during her incarceration, Plaintiff requested dental care for an infected tooth.  At no time from November 15, 2011 to December 17, 2011, was Plaintiff examined by a dentist.  Plaintiff ultimately lost her infected tooth.

66.     On December 17, 2011, Plaintiff's INR was 1.1 which was two times below that which it should have been, thereby subjecting her to blood clots in her legs and/or legs which could have caused her death.

67.     As a direct and proximate cause of the failures of the employees, administrators and officials of DEFENDANT LOS ANGELES COUNTY and DEFENDANT LOS ANGELES COUNTY, LEROY BACA, FLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE AND MICHAEL D. ANTONOVICH'S in their obligations to provide adequate medical and dental care as well as effective and economical administration of its facilities, Plaintiff has been generally and specially damaged in an amount to be established at trial.

WHEREFORE Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.  For general damages in the amount of $1.25 million;

2.  For general damages for mental and emotional distress according to proof;

3.  For punitive damages;

4.  For a civil penalty for each unlawful violation;

5.  For costs of suit incurred herein;

6.  Reasonable attorney's fees as allowed by statute; and,

7.  For such other and further relief as the court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff LECIA L. SHORTER hereby demands a jury trial.

Dated:        August 27, 2012

LECIA L. SHORTER
PLAINTIFF IN PRO PER

COMPLAINT FOR DAMAGES- 16

1
2

### DECLARATION OF LECIA L. SHORTER

3    I, Lecia L. Shorter, do hereby declare:

4    1.    I am the plaintiff in this action.

5    2.    I declare that the facts set forth herein are true and of my own personal knowledge except

6    as to those matters which are stated on information and belief.

7

8    I declare under penalty of perjury under the laws of the State of California and the United States

9    that the foregoing is true and correct.

10
11
12    Dated:        August 27, 2012

13                                                                        LECIA L. SHORTER

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 'A'

# LECIA L. SHORTER

287 S. Robertson Blvd.
Suite 291
Beverly Hills, CA    90211
(310) 869-5835
leciashorter@yahoo.com

January 12, 2012


Leroy D. Baca, Sheriff
Los Angeles County Sheriff's Department
4700 Ramona Blvd.
Monterey Park, CA 91754

Re:    Century Regional Detention Facility and the LASD

Dear Mr. Baca:

This letter is written as a formal complaint concerning my recent incarceration at the Century Regional Detention Facility from November 15, 2011 through December 17, 2011. My complaint concerns misconduct by deputies and grossly substandard and incompetent medical services by the medical staff. The actions of the employees of the Sheriff's Department violated my civil rights as an individual and interfered with my constitutional rights related to the legal proceedings in which I was involved including but not limited to interfering with my right to a speedy trial and my right to interact with my legal counsel.

The incidents to which I refer are specifically outlined below.   Although I expect a response from your office, I also intend to submit a complaint for damages to the Los Angeles County Board of Supervisors.


11/13/11

A citizen's arrest was made by security personnel at Cedars Sinai Medical Center.   I was subsequently arrested by LAPD for trespass, assault and battery and assault with a deadly weapon.

11/15/11

I was arraigned at Bouchet Street. For no reason whatsoever, I was chained at the waist and both of my hands were handcuffed. During court, a medical order was issued instructing the medical personnel to check my INR because of the blood thinner I take daily.   After court, I was taken to CRDF, seated on a bench and then

chained to the bench.   Several deputies asked why I was benched, I told them I had no idea.

Initially, I was taken to a medical unit where I spoke to a nurse and informed her that I take 7.5 mg of Coumadin daily and wanted to take the muscle relaxer Robaxin while there. I requested that my INR be taken because I had missed several doses since my initial incarceration. The request was ignored.

I was told by staff that I could shower the next day.   I was not allowed a shower the following.   In fact, I did not shower until 11/18, and only because my attorney submitted a complaint to the watch commander.

11/16/11

I was taken to the mental health unit and was given a yellow shirt and blue pants. The medical staff began to dispense the blood thinning medication at 7.5 mg yet my INR was not taken.

11/17/11

I was awakened for court at LAX. The deputy handcuffed both of my hands and then chained both hands to my waist. I was then taken to cell 7 in the reception area where I stood with other women who were also dressed in yellow shirts and blue pants.

While standing in cell 7, I got nauseous and short of breath. I was taken to the medical unit where my blood pressure, heart rate and oxygenation rate were taken. Dr. Chong then approached me and said I was fine and everything was okay.   I asked whether he ruled out a blood clot. He said there was no clot because my INR was 2.0. I asked how he knew my INR. He said he'd checked my chart. I informed him that no blood draw had been done since I arrived at the facility. He excused himself and returned and said he'd been reading last year's (2010) chart. He then requested a lab tech draw my blood. The lab tech asked Deputy De Santo, the escorting officer, to remove one of my handcuffs so that she could look for a place to draw my blood. Deputy De Santa refused. The tech then attempted to draw blood from my hand several times and was unable to draw any blood.

Frustrated, I informed Deputy De Santo that I was ready to return to the reception area so that I could go to court.   I also informed her that I needed to use the restroom. Deputy De Santo stated that it would be better to go to the restroom in the reception area. We returned to the reception area and she put me inside cell 7. I knocked on the door and reminded her I needed to use the toilet. She said "so go." I asked her to remove one of the handcuffs, she refused. I then banged on the window asking for a supervisor. I was ignored for one and one half hours by approximately 10 to 12 people, including a short black man with two stripes on his shirt.

After 1 ½ hours, the bus arrived. I arrived at LAX approximately 1 ½ hours later. The LAX deputies removed one of the handcuffs and I was able to use the toilet three hours after my initial request. Removal of the handcuff was particularly critical because I was menstruating and could not reach the old pad or place a new pad with both hands chained to my waist.   Neither could I utilize toilet tissue.

I was returned to CRDF that evening and taken to the 2300 module. A female deputy offered to bring me to my cell. I asked if she was the floor deputy, she said no. She asked me to remove all of my clothes except my underwear. I took off everything except the bra and panties. She then said take off the bra, pull down the underwear and "open your vagina and cough." I pulled down the panties, opened my inner thighs and coughed. She said that was not good enough. I told her that was the best I could especially since I was having my period and having an extremely heavy flow. I had on two sanitary pads and a half roll of toilet paper attempting to contain the heavy blood flow. She told me to remove the sanitary pads and open my vagina. I refused. She said, "I guess you want to stay like that all night." She then chained me to the door of the cell with nothing on except the panties. She also took my attorneys business cards.

Deputy Ortiz walked by and asked whether I was ready to cooperate. I told her I'd done the best I could do.   Approximately forty five minutes later, I manipulated my right hand out of the hand cuff. I asked the count deputy for clothes and she refused. That evening, I slept in a cold, air conditioned cell without clothes.

11/18/11

I requested clothes in the morning and was refused. At approximately 12:00 p.m., a black man from the psych department visited the cell and said he had questions to ask me. I told him I was not dressed and didn't think it was appropriate for him to question me without clothes. He said that I was covered in a blanket and that was sufficient. I told him that I had not been allowed a shower since I arrived at CRDF.   I also told him about the incident the night before when I was chained to the door with just panties on. I told him I wanted to speak with a supervisor and he said he didn't believe that would be possible. I answered some of his questions and then told him he should return at another time when I was more appropriately dressed.

At approximately 3:00 p.m., I received a visit from my attorney. The deputies then scrambled to provide me clothes. My attorney complained that I had not been allowed to shower or receive appropriate medical attention e.g. having my INR checked. I received a shower after the attorney visit. My INR was not checked.

11/21/11

I went to court at the criminal courts building. I was chained and handcuffed with my hands at my waist from 6:45 a.m. to 5:45 p.m. (11 Hours). I and two other women were kept in Cell No. 2 for the entire time. I was not allowed to appear in court

notwithstanding my attorneys repeat requests throughout the day that I be brought to court. When I asked the deputies why I had not appeared in court, they said it was a "dry run" and that sometimes happens. My attorney later told me that he had been requesting that I be brought to court and the deputies told him they could not locate me.   The "dry run" interfered with my right to a speedy trial and my right to communicate with my attorney.

I was returned to CRDF that evening. I was searched out by Deputy Williams and there were no problems. I did the same thing with Deputy Williams that I did for Deputies Ortiz and Avalos.

11/23/11

I went to court at the criminal courts building. I had a change of attorneys. I informed my new attorney that I needed to speak with him immediately and definitely before the next hearing date which was scheduled on 12/2/11. He asked the deputies to bring me to the 4th floor in approximately 20 minutes so we could talk. I was returned to cell no. 2 and twenty minutes later I was shipped on a bus to CRDF. I asked the deputies to telephone Department 40. They refused. I asked to speak with a supervisor and that request was also refused. This act also interfered with my right to a speedy trial and my right to communicate with my attorney.

I arrived at CRDF at approximately 11:30 a.m. and was placed in cell 7 with both hands cuffed at my waist. I stood in cell 7 for four hours. At approximately, 3:30 p.m., I was taken to module 2300 where Deputies Ortiz and Avalos stood waiting. Each officer grabbed an arm and walked me to the cell. They asked me to remove my clothes and bend over and open my vagina. I removed my clothes, pulled down the underwear, pulled on my inner thighs and coughed. I pulled up the underwear and turned around to look at the officers. They both yelled "we didn't see you, do it again." I asked what were they doing and they said they weren't looking. I repeated the routine twice and they insisted I didn't "search out" properly. I asked them to get their supervisor so that a supervisor could determine whether I "searched out" properly. Both deputies refused. Deputy Ortiz said, "fine, you must want to stay like that all night and you don't want to eat." Avalos left to get scissors, returned and cut the bra and shirt off the chain. Deputy Avalos stated that I shouldn't be out committing crimes and I wouldn't be in jail.   She also said that I was "nothing." They would be at home with their families over the holidays and I would be in jail. Deputy Ortiz bragged that she had a rich husband and she worked because her "man don't mind."   She also said that she was there earning extra money for her family "babysitting me."

I grabbed the slack on the chain so that I could use the toilet if necessary. Deputy Ortiz took my lunch and some notes that I had written. I was chained to the door with pants and no bra or shirt. There was a dirty shirt on the floor of the cell that I'd left that morning. I put on dirty shirt which I wore until I was allowed a shower on

12/2/11.

A trustee gave me dinner and then asked me to return the dinner because she was not supposed to have given me the meal. I refused. Deputy Oritz called on the intercom and said "I hope you enjoyed your dinner because tomorrow you ain't gettin' shit and we will be at home with our families enjoying Thanksgiving dinner and you will be here." Approximately 30 minutes later, Deputy Ortiz returned to the cell and asked whether I was ready to cooperate. I told her I did the best I could.

Approximately 30 minutes after Deputy Ortiz called on the intercom, Deputy Moreno called and asked whether I was ready to cooperate. I told her I would do what I'd done before and she said that was not good enough. Deputy Moreno then came to the cell and asked whether I was ready to "search out." I got up off the floor, pulled down my underwear, held my inner thighs open and coughed. She said that was not appropriate. I told her not to return because I believed that she was playing a game and simply wanted to view my rear end.

I stayed handcuffed to the door for approximately 6 hours. Deputy Moreno took off the cuffs at approximately 12:00 p.m.

11/29/11

I was taken to LAX court for a pre trial hearing. I informed my attorney, Leonard Friedman, that my INR had not been taken by the medical staff at CRDF and that I was not being allowed to shower, and was being mistreated by two to three of the floor deputies. The court agreed to give a medical order and a shower order, however, Mr. Friedman never submitted the orders to the court for signature. There was in any event an outstanding order from 11/15 which had been ignored.

I left LAX on the afternoon bus and was taken to CCB for approximately two hours. I arrived at CRDF at approximately 3:30 p.m. When I was taken to the 2300 module, Deputies Ortiz, Avalos and Garcia were waiting to bring me to the cell. They asked for my clothes and my bra. They then asked me to lift my breasts and turn around, bend over, open my vagina and cough. I bent over, opened my inner thighs and coughed. They said that was not good enough. Ortiz took my pants and my lunch and said, you must not want to eat and you must want to stay like that all night. I grabbed the chain so that I could use the toilet if need be. The officers left me chained to the door with just a shirt. I decided to engage in a protest and banged a handcuffed on the door of the cell for approximately two hours. Ortiz and Avalos repeatedly told me to stop banging. Avalos pretended she was going to unlock the handcuff and instead locked both handcuffs onto my left hand and tightened them to the point that my wrist was swollen and red. Avalos also pulled on the slack of the chain and I tried to prevent her from doing so. She pulled on the chain so hard that the chain cut the baby finger of my left hand. Ortiz instructed the trustees to not serve me dinner and they did not. I stayed chained to the door until approximately six thirty or

seven o'clock when a male officer Ramirez unlocked the handcuffs.

11/30/11

I was awakened at approximately 8:30 a.m. by the morning nurse and the nurse practitioner "Bachelor." They asked whether they could draw my blood for an INR check and I agreed. Ms. Bachelor apologized for ignoring my requests for two weeks prior and indicated that she had received a court order instructing that my INR be taken. I also informed Ms. Bachelor that I needed a special diet and she indicated she would return to discuss the special diet. Ms. Bachelor never returned not to discuss my INR, a special diet, or any other medical issues that I had.

A blood draw was taken and I bled for approximately 45 minutes and bled through four gauze bandages. That evening I refused my Coumadin.

I also asked the evening nurse for an antibiotic ointment for the wound on my left hand caused by Deputy Avalos and Deputy Avalos said no and closed the chute. Previously, Deputy Avalos refused my coumadin medication because I asked for ointment for a rash on my left wrist. Deputy Avalos attempted to touch the rashed area in my left wrist, I told her not to touch me and pulled my left hand away. She became agitated and slammed the chute and did not allow the nurse to give me my medication that evening.

12/2/11

I was taken to the criminal courts building for court. I was not allowed to go to court despite my attorney's request that I be brought to the courtroom. I was returned to CRDF on the afternoon bus. I was returned to the module, allowed to shower by a female officer. There were no problems with the"search out." Deputies Ortiz and Avalos returned me to my cell. Deputy Avalos began a pattern of not allowing me to throw out my trash by not opening the shoot so the trustees can retrieve trash.

12/3/11

A Caucasian man visited the cell and said he was a psychiatrist. He told me that he thinks I may be bipolar. I asked him what caused him to reach that conclusion he said he had read some notes that indicated I was "irritable." He then asked whether I desired any psychiatric meds or sleeping pills and I refused. He also told me that my INR had returned 4.4 which is twice the level that it should have been.

12/5/11

I went to court, returned in the afternoon. No problem with the "search out."

12/12/11

Ms. Boyles from the psychiatric unit asked me whether I had a "problem" with the deputies. I told her about the "searching out" situation with Deputies Ortiz and Avalos and all of the other issues I was having. She asked whether I filled out a grievance. I explained I had no access to a grievance process because I was kept inside of the cell 24 hours a day unless I went to court.

Boyles said the deputies told her they did not allow me out of the cell because I was "hostile and aggressive" and what was my response. I told her my response was the explanation I had given her about the way I had been treated.

She said she would return that afternoon and attempt to get me out of the cell for a shower. She never returned, most likely because Deputy Ortiz was working that evening.

That evening, Deputy Avalos accompanied the evening nurse with medication. Avalos snatched my medication away from the nurse, placed the pills inside a small white cup, and put the cup on the floor and pushed them under the door. I refused to take the medication.

12/13/11

I went to the criminal courts building.
When I returned from court, Deputy Garcia allowed me to take a shower. There was no problem with the "search out" because Deputies Ortiz and Avalos were not present.
That evening, Deputy Avalos took my medication from the nurse, placed it in a which cup and put the medication on the floor and slid it under the door.

12/15/11

I went to the criminal courts building.

When I was returned from court, Deputies Ortiz and Avalos were waiting, accompanied by a third, unidentified woman who did not agree with their assessment that I was "problematic." The third woman stood watching them and there was no problem with the "search out." I did the same thing I always did.

12/16/11

I went to court at LAX. When I returned, Deputy Avalos accompanied me to the cell with a new deputy. Deputy Ortiz was not present and there were no problems.

Additional Issues:

Medical -

Numerous requests for a dentist were were ignored. My tooth was infected.

I was given coumadin from 11/17/11 to 11/30/11 without anyone checking my INR. My requests to have my INR checked all went ignored. Once the medical staff discovered my INR was twice the level it should have been, my coumadin was discontinued altogether from 12/1/11 until I was released on 12/17/11. No member of the medical staff ever discussed my INR or the medication after 11/30/11.

Nurse Manoalo refused to give me any ointment for the rash that developed on my wrist.

I was given a K12 classification with no medical, legal or factual basis. The K12 classification caused me to be dressed in yellow and blue which inferred that I had psychiatric issues. I was told that an assessment was entered into the jail records on November 16. However, I never met with anyone from the psychiatric staff, particularly not with a physician who would have been able to make such an assessment.

The cell was never cleaned from 11/15/11 to 12/17/11
I spent 24 hours a day in the cell unless I went to court.

I received three showers during the entire incarceration.


Lecia L. Shorter
LLS\

LECIA L. SHORTER
287 S. ROBERTSON BLVD., NO. 291
BEVERLY HILLS, CA  90211
(310) 869-5835

Plaintiff In Pro Per

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lecia L. Shorter<br><br><div align="right">PLAINTIFF(S)</div><br>v.<br><br>Leroy Baca, Gloria Molina, Mark Ridley-Thomas,<br>Zev Yaroslavsky, Don Knabe, Michael D. Antonovich,<br>County of Los Angeles, Deputy Sheriff Avalos,<br><div align="right">DEFENDANT(S).</div> | CASE NUMBER<br><br>**CV12-7337**<br><br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, _Lecia L. Shorter_____, whose address is
_287 S. Robertson Blvd., No. 291, Beverly Hills, CA  90211_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint. You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____9/4/12_____          By: _____
                                         Deputy Clerk

                                         *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

ADDENDUM TO SUMMONS

LEROY BACA, GLORIA MOLINA, MARK  RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON   KNABE, MICHAEL D. ANTONOVICH, DEPUTY SHERIFF AVALOS, DEPUTY SHERIFF ORTIZ, the   COUNTY OF LOS ANGELES and, Does 1 through  10 inclusive,  Defendants.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>LECIA L. SHORTER | DEFENDANTS<br>LEROY BACA, GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON   KNABE, MICHAEL D. ANTONOVICH, DEPUTY SHERIFF AVALOS, DEPUTY SHERIFF ORTIZ, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Lecia L. Shorter<br>287 S. Robertson Blvd., No. 291<br>Beverly Hills, CA  90211        (310) 869-5835 | Attorneys (If Known) |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff      ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

### V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☐ Yes ☒ No          ☒ MONEY DEMANDED IN COMPLAINT: $ 1.25 million

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Civil Rights Violations of 42 USC 1983 - Specifically Defendants violated Plaintiffs 1st, 6th, 8th and 14th Constitutional rights

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☒ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number:   **CV12-7337**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COUNY OF LOS ANGELES | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COUNTY OF LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Xenia Shorter_     Date _8/27/12_

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |