1  LECIA L. SHORTER
2  287 S. ROBERTSON BLVD., STE 291
   BEVERLY HILLS, CA  90211
3  (310) 869-5835
   leciashorter@yahoo.com
4
5  Plaintiff in Pro Per

6              UNITED STATES DISTRICT COURT

7         FOR THE CENTRAL DISTRICT OF CALIFORNIA

8  LECIA L. SHORTER,                 )  Case No.: CV-07337-JVS-(AGR)
                                     )
9              Plaintiff,            )  [PROPOSED]
                                     )
10    vs.                            )  SECOND AMENDED COMPLAINT FOR:
                                     )
11 LEROY BACA, GLORIA MOLINA, MARK   )   1)  CIVIL RIGHTS VIOLATIONS, 42
12 RIDLEY-THOMAS, ZEV YAROSLAVSKY,   )       U.S.C §1983 (General Allegations);
                                     )   2)  CIVIL RIGHTS VIOLATIONS, 42
13 DON   KNABE, MICHAEL D.           )       U.S.C §1983 (Failure to Implement
                                     )       Appropriate Policies, Customs and
14 ANTONOVICH, DEPUTY SHERIFF        )       Practices);
                                     )   3)  CIVIL RIGHTS VIOLATIONS, 42
15 AVALOS, DEPUTY SHERIFF ORTIZ, the )       U.S.C §1983 (Failure to Implement
                                     )       Appropriate Policies, Customs and
16 COUNTY OF LOS ANGELES and, Does 1 )       Practices);
                                     )   4)  CIVIL RIGHTS VIOLATIONS, 42
17 through 25, inclusive,            )       U.S.C §1983 (Cruel and Unusual
                                     )       Punishment);
18             Defendants.           )   5)  CIVIL RIGHTS VIOLATIONS, 42
                                     )       U.S.C §1983 (Right to a Speedy Trial
19                                   )       and Freedom of Association);
                                     )   6)  NEGLIGENT INFLICTION OF
20                                   )       EMOTIONAL DISTRESS;
                                     )   7)  INTENTIONAL INFLICTION OF
21                                   )       EMOTIONAL DISTRESS;
                                     )   8)  DEFAMATION;
22                                   )   9)  ASSAULT AND BATTERY;
                                     )  10) NEGLIGENT HIRING AND
23                                   )       SUPERVISION; and,
                                     )  11) NEGLIGENCE
24                                   )
25                                      DEMAND FOR JURY TRIAL
26
27
28

LODGED
CLERK, U.S. DISTRICT COURT

JAN 2 2 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

SECOND AMENDED COMPLAINT FOR DAMAGES- 1

PLAINTIFF LECIA L. SHORTER ALLEGES AS FOLLOWS:

1.     Plaintiff, LECIA L. SHORTER, is a citizen of the United States, and is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California. At all times mentioned in this Complaint was a prisoner in the custody of the Los Angeles County Sheriff's Department at the Century Regional Detention Facility, in Lynwood, California.

2.     This is an action brought pursuant to the First, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and to *42 U.S.C. §1983*. The jurisdiction of this Court is predicated on *28 U.S.C. §§ 1331* and *1343(a)*.

3.     A substantial portion of the events giving rise to this action occurred in Lynwood, California located in Los Angeles County.  Venue is therefore proper under *28 U.S.C. § 1391(b)*.

4.     Each named Defendant was, at all times mentioned in this complaint, acting under color of statutes, ordinances, regulations, customs, or usage, of the State of California.  This action is brought against Defendants for violation of Plaintiff's a) right to be free of cruel and unusual punishment, guaranteed by the *Eighth* and *Fourteenth Amendments to the United States Constitution;* b) Sixth Amendment right to a speedy trial; c) Sixth Amendment right to be represented by counsel for her defense; d) First Amendment right to freedom of association with her attorney; and, e) right to be free from excessive bail.

5.     Defendant LEROY BACA, is and at all times mentioned in this complaint was, acting in the course and scope of his employment as the Sheriff of Los Angeles County.  As Sheriff, he is the chief executive officer of the Los Angeles Sheriff Department.  According to California law, the Sheriff is answerable for the safekeeping of the inmates in his custody. California Government Code §§26605 and 26610; California Penal Code §4006.  Specifically,

SECOND AMENDED COMPLAINT FOR DAMAGES- 2

Defendant BACA is responsible for the oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services. This includes all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security and medical staffs, of the County Jails. He is also responsible for the care, custody, and control of all inmates housed in the County Jails.

6. Plaintiff is informed and believes and thereon alleges that Defendant Baca is regularly provided with reports of applications of force, substandard medical care, improper strip searches, allegations of unreported and excessive use of force and breaches of security in the County Jails. Plaintiff sues Defendant BACA in his official and individual capacity.

7. Defendant Gloria Molina is the Supervisor of the First District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Molina is sued in her official capacity regarding her administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

8. Defendant Mark Ridley-Thomas is the Supervisor of the Second District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Ridley-Thomas is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

9.      Defendant Zev Yaroslavsky is the Supervisor of the Third District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Yaroslavsk is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

10.      Defendant Don Knabe is the Supervisor of the Fourth District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Knabe is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

11.      Defendant Michael D. Antonovich is the Supervisor the Fifth District of Los Angeles County. The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County. Defendant Antonovich is sued in his official capacity regarding his administrative and executive acts while serving as a member of the Board of Supervisors for Los Angeles County.

12.      Defendants, and each of them, are aware of the culture of deputy violence, intimidation, retaliation, substandard medical care, improper body searches, and inappropriate conduct that pervades the Los Angeles County Jails and have failed to take reasonable measures to remedy the problems. Plaintiff therefore charges Defendants Baca, Molina, Ridley-Thomas, Yaroslavsky, Knabe and Antonovich with violations of Plaintiffs' First, Sixth, Eighth, Eleventh

and Fourteenth Amendment right to reasonable protection from violence and excessive force, substandard medical and dental care, interference with her right to associate with her attorney, and, interference with her right to a speedy trial.

13.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have acquiesced in, fostered, and implicitly authorized the abuse incurred by Plaintiff by failing to adequately train and supervise deputies and the medical staff in the face of historical and continual evidence of abuse.  Defendants have failed to conduct meaningful investigations of reports of excessive force, improper strip searches, sub-standard medical and dental care, render guilty deputies accountable, and repeatedly ignored evidence that deputies and other Los Angeles County officials are covering up incidents of excessive force, inmate torture, substandard medical care, improper strip searches and overall prisoner abuse.

14.     On or about May 4, 2010, Plaintiff filed a complaint and claim for damages with Los Angeles County Sheriff's Department concerning the use of excessive force by Los Angeles County Sheriff Deputies Ian Beckford and R. Williams on April 9, 2010.  Specifically, Plaintiff was physically assaulted by Deputy Ian Beckford when making an inquiry about a court appearance at the Los Angeles Superior Court at LAX on April 9, 2010.  Deputy Beckford called for assistance and Deputy Williams and another unidentified deputy joined in the attack, forcing Plaintiff to the floor and putting their knees on Plaintiff's back with force.

15.     Notwithstanding his responsibilities as chief executive officer of the Los Angeles Sheriff Department and notice of the allegations, Defendant LEROY BACA did not personally investigate the allegations of misconduct concerning Deputies Beckford, Williams and the unidentified deputy involved in the incident of April 9, 2010.

16.    On or about August 24, 2010, the Los Angeles County Board of Supervisors denied Plaintiff's claim for damages without making an inquiry to Defendant LEROY BACA or conducting an investigation of the misconduct of Deputies Beckford and Williams.  The Los Angeles County Supervisors who failed to investigate Plaintiff's complaint were Defendants GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE and MICHAEL D. ANTONOVICH.

17.    On or about January 21, 2011, Plaintiff filed a complaint and claim for damages with the Los Angeles County Sheriff's Department concerning a series of incidents that occurred during her incarceration from October 19, 2010 through November 24, 2010.  Specifically, on October 17, 2010, Plaintiff was arrested by the Beverly Hills Police Department after having been accused of trespassing at her private mail box location.  Plaintiff was held on $30,000.00 bail and transported to the Century Regional Detention Facility in Lynwood, California, operated by the Los Angeles County Sheriff's Department.

18.    While at the Century Regional Detention Facility from October 19 through November 24, 2010, Plaintiff experienced the following:  a) placement in a cell for two days with an inoperable toilet that was filled with urine, no ventilation, no water, an inoperable sink, an inoperable toilet, no blanket, no mattress padding on the steel bunk; b) denied showers; c) deputies' refusal to provide immediate medical attention to address Plaintiff's serious medical condition; d) being kicked and slapped after fainting; e) substandard medical care; f) deputy interference with medical decisions after being hospitalized; g) being forced to have a medical procedure; h) refusals of request to speak with her attorney and/or a family member after being hospitalized; i) deputy physical and mental abuse while Plaintiff was hospitalized; and, not being allowed confidential communications with health care providers while hospitalized.

SECOND AMENDED COMPLAINT FOR DAMAGES- 6

19.     Notwithstanding his responsibilities as chief executive officer of the Los Angeles Sheriff Department and notice of the allegations, Defendant LEROY BACA did not personally investigate the allegations of misconduct concerning Plaintiff's incarceration from October 19, 2010 through November 24, 2010.

20.     On or about March 15, 2011, the Los Angeles County Board of Supervisors denied Plaintiff's claim for damages without making an inquiry to Defendant LEROY BACA or investigating Plaintiff's allegations.

21.     The Los Angeles County Supervisors failed to make and inquiry of Defendant BACA concerning Plaintiff's incarceration from October 19 to November 24, 2010 were Defendants GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE and MICHAEL D. ANTONOVICH.

22.     On or about January 18, 2012, Plaintiff filed a complaint and claim for damages directly with the County of Los Angeles concerning various incidents that occurred during her incarceration at the Century Regional Detention Center from November 15, 2011 through December 17, 2011. Plaintiff also sent a complaint to Defendant LEROY BACA about the incident that occurred during the same period of incarceration.

23.     Plaintiff exhausted all available administrative remedies, by filing a claim with Los Angeles County on January 18, 2012. Plaintiff also wrote Defendant LEROY BACA personally to apprise him of the incidents at Century Regional Detention Facility. Defendant LEROY BACA wrote Plaintiff and told her she had received dental care. On February 28, 2012, Plaintiff's claim for damages was denied by Defendant LOS ANGELES COUNTY BOARD OF SUPERVISORS.

24.     In April of 2013, Plaintiff filed a complaint and claim for damages with Defendants Baca and Los Angeles County concerning a series of incidents that occurred during her arrest and incarceration in January of 2013. Specifically, on January 9, 2013, Plaintiff was arrested by the Los Angeles County Sheriff Department while travelling east on the Culver City Expo Train after being approached by Los Angeles County Sheriff Security Assistant Wahlquist (Badge Number 600280) and asked for proof payment of my fare for the Metro Train. Plaintiff mistakenly handed Security Assistant Wahlquist her mother's TAP pass instead of her TAP pass. Plaintiff carried her mother's TAP pass because she is a stroke survivor and often forgets where she places the card. Security Assistant Wahlquist decided that the photograph on the TAP pass did not match Plaintiff's appearance. Without asking any questions, Security Assistant Wahlquist walked away and returned with Los Angeles County Sheriff Deputy Shane Parks (Badge Number 455174). Deputy Parks asked that Plaintiff exit the train and travel to the Culver City Expo train station. Plaintiff and Deputy Parks exited the train at the Farmdale Station. Plaintiff refused to travel to Culver City. Deputy Shane Parks and Security Assistant Wahlquist became imperious and verbally abusive. Deputy Shane Parks forcefully grabbed Plaintiff, turned her around and handcuffed her. He then called for assistance. While waiting for other officers to arrive, Deputy Shane Parks stood behind Plaintiff, with one hand on her waist and the other on the hand cuffs. He repeated touched Plaintiff's buttocks and Plaintiff asked him to stop. He then started twisting Plaintiff's hands against the handcuffs. Plaintiff again asked him to stop because he was hurting her and he refused. Plaintiff then spit on the ground and told Deputy Shane Parks and Security Assistant Wahlquist "[t]his is what I think of you." Deputy Shane Parks then asked Security Assistant Wahlquist whether the spit hit her and she said no. He then asked Security Assistant Wahlquist whether she was certain the spit did not hit her and

SECOND AMENDED COMPLAINT FOR DAMAGES- 8

1   she responded, "Yes, I think I felt some of it."  Deputy Shane Parks then retorted "[g]reat!  You

2   now have a felony charge for spitting on an officer."

3        25.       Deputy Parks continued to twist Plaintiff's wrists against the handcuffs until he

4   caused visibly red marks and scars.  When additional officers arrived, Deputy Parks shouted "we

5   have a spitter."  A female officer then went to her vehicle to retrieve a spitting mask which she

6   placed on Plaintiff's head.

7
8        26.       Plaintiff arrived at Century Regional Detention Facility for booking at

9   approximately 9:00 p.m.  Deputy Parks then announced "she spit on a deputy."  Numerous

10  deputies then surrounded Plaintiff and took her to a holding cell.  While inside the holding cell,

11  two female officers, one them being Deputy Nalls, began to search Plaintiff.  After searching

12  Plaintiff, the deputies decided to remove Plaintiff's bra.  The deputies then lifted Plaintiff's shirt

13  and exposed her breasts in the presence of male officers.  Plaintiff asked Deputy Nalls to not

14  expose her breasts in the presence of male officers and Deputy Nalls stated, "don't worry, they

15  can't see anything."  However, the male officers were unquestionably positioned so that

16  Plaintiff's breasts were in their plain view.

17
18       27.       Plaintiff was left inside of the holding cell, handcuffed with her hands behind her

19  back and the spitting mask on her head for approximately twelve (12) hours.  Plaintiff did not

20  receive water, food or a blanket during that time.  Plaintiff was not booked until approximately

21  9:00 a.m. the next day.  That is when she received food and a blanket and was able to retrieve

22  water and utilize the toilet.  Plaintiff was charged with two misdemeanors and an infraction and

23  held on a $25,000 bail.

24
25       28.       On January 25, 2013, Plaintiff was transported to the criminal courts building for

26  a scheduled court appearance in Division 40.  Her attorney, Joseph McInnis, requested an

27
28

attorney consultation and was refused by Los Angeles County Sheriff Deputies. He was told that Plaintiff was a "miss out." The truth is that Plaintiff was not a "miss out" and was being held inside of holding cell number two at the Criminal Courts Building from approximately 6:30 a.m. to 6:30 p.m. Plaintiff was chained and handcuffed with three other women who had obvious mental health issues such that they removed their clothing and engaged in sex acts. During that time, Plaintiff could not utilize the toilet or eat. When Plaintiff asked sheriff deputies about the status of her case, Plaintiff was told the court had not called her case for hearing. Attorney Joseph McInnis informed Plaintiff that the court did in fact call her matter for hearing and the court was informed by sheriff deputies that Plaintiff was a "miss out." Los Angeles County Sheriff Deputies misrepresented this fact knowing that Plaintiff was being held inside of holding cell number two because inmates are electronically monitored from the time they leave CRDF to the time they return to CRDF. Additionally, there is a sign in sheet outside of the holding cell that deputies sign attesting they have checked on the status of the inmates inside of the holding cell. As a result of the misrepresentation that Plaintiff was a "miss out," Plaintiff's case was continued to January 29, 2013 and she lost four (4) days of her right to a speedy trial.

29.     Notwithstanding his responsibilities as chief executive officer of the Los Angeles Sheriff Department and notice of the allegations, Defendant LEROY BACA did not personally investigate the allegations of misconduct concerning Plaintiff's arrest and incarceration in January of 2013.

30.     Defendant Los Angeles County denied Plaintiff's claim for damages without making an inquiry to Defendant LEROY BACA or investigating Plaintiff's allegations. Plaintiff exhausted all available administrative remedies, by filing a claim with Los Angeles County in April of 2013.

**FIRST COUNT
FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C §1983
AGAINST ALL DEFENDANTS
(GENERAL ALLEGATIONS)**

31.     Plaintiff incorporates herein paragraphs 1 through 30 as though fully set forth

below.

32.     In committing the acts complained of herein, Defendants, and each of them, acted

under color of state law to deprive Plaintiff of certain constitutionally protected rights under the

First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United

States including, but not limited to: a) the right to be free from cruel and unusual punishment; b)

the right to freedom of association with her attorney; c) the right to a speedy trial; d) the right to

be free from excessive use of force by persons acting under color of state law; and, e) the right to

be free from excessive bail; f) the right to be free from sexual abuse and harassment; g) the right

to complain via internal grievance procedures about jail conditions; h) the right of access to the

courts to air grievances and complaints; i) the right to adequate medical and dental care and

attention to treat both short-term conditions and long-term illnesses; and, j) to be free from

unauthorized and intentional deprivation of her personal property by prison officials.

33.     In violating Plaintiffs' rights as set forth herein and other rights that will be

proven at trial, Defendants acted under color of state law while Plaintiff was a pre-trial detainee

at the Century Regional Detention Facility (CRDF) in Lynwood, California from November 15,

2011 through December 17, 2011.  While incarcerated at CRDF, Plaintiff experienced the

following:  a) the denial of adequate medical care and attention for the treatment of short-term

conditions and a long-term illness; b) the refusal of jail employees to adhere to court medical

orders; c) shower deprivations; d) deprivation of clean clothes and toiletries; e) the denial of

SECOND AMENDED COMPLAINT FOR DAMAGES- 11

medication for a life threatening medical condition; f) refusals of attorney communications notwithstanding requests by her attorney; g) sexual harassment in the form of repetitive insistence by Los Angeles County Sheriff Deputies Avalos and Ortiz that Plaintiff manipulate her vagina; h) being chained and handcuffed to the door of her cell by Los Angeles County Sheriff Deputies Avalos and Ortiz without clothes on numerous occasions for up to six hours at a time; i) intentional food and medicine deprivation by Los Angeles County Sheriff Deputies Avalos and Ortiz; j) intentional and unauthorized deprivation of personal property by Los Angeles County Sheriff Deputies Avalos and Ortiz; k) being kept inside of a holding cell for ten to twelve hours at the Criminal Courts Building while simultaneously not being allowed to appear in court despite attorney and court requests; l) being kept inside of a holding cell for ten to twelve hours at the Criminal Court Building with both hands chained to her waist making it virtually impossible for her to utilize the toilet or eat because she could not use her hands; m) being held in a cell 24 hours a day without physical activity or mental stimulation; n) deprivation of dental care for an infected tooth; o) being forced to stay in an unsanitary cell 24 hours a day which was never cleaned during her entire incarceration; p) being deprived access to file a grievance or complaint regarding the jail conditions at CRDF; and, q) being forced to stay in a cell that was extremely cold without adequate blankets or clothing.

34.     Defendants also violated Plaintiff's civil rights and acted under color of state law when Plaintiff was arrested on January 9, 2013 and was a pre-trial detainee at the Century Regional Detention Facility (CRDF) in Lynwood, California from January 9, 2013 until January 27, 2013. During the arrest, Plaintiff was physically assaulted and touched inappropriately by male sheriff deputy Shane Parks. During her detention at CRDF, Plaintiff's breasts were intentionally exposed to male deputies and she was held inside of a holding cell for twelve (12)

hours handcuffed, with a spitting mask on her head.  Plaintiff was also wrongfully classified as a

mental health patient and forced to remain in a holding cell at the criminal courts building for

twelve (12) hours with inmates who removed their clothing, exposed their genitals and

manipulated themselves sexually and denied access to the court.

35.     The cruel and unusual punishment, deprivation of access to her attorney,

interference with her right to a speedy trial, sexual abuse and harassment, and the use of

excessive force by Defendants, were all in violation of Plaintiffs' rights under the First, Sixth,

Eighth, and Fourteenth Amendments to the Constitution of the United States.

36.     As a direct and proximate result of the violation of their constitutional rights by

the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and

are entitled to relief under 42 U.S.C §1983.

37.     The conduct of Defendants was willful, malicious, oppressive and/or reckless, and

was of such a nature that punitive damages should be imposed in an amount commensurate with

the wrongful acts alleged herein.

**SECOND COUNT**
**FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C §1983**
**AGAINST DEFENDANTS LEROY BACA AND THE COUNTY OF LOS**
**ANGELES**
**(Failure to Implement Appropriate Policies, Customs and Practices)**

38.     Plaintiff incorporates herein paragraphs 1 through 37 as though fully set forth

below.

39.     At all times that Plaintiff was a pre-trial detainee, Defendant Leroy Baca was

directly responsible for the oversight, management and administration of policies of the County

of Los Angeles with reference to Los Angeles County jails, including but not limited to housing

SECOND AMENDED COMPLAINT FOR DAMAGES- 13

practices, transportation, and, medical and dental services.  Defendant Baca implicitly and tacitly

authorized the actions and practices of jail employees and deputy sheriff's experienced by

Plaintiff during her pre-trial incarceration.

40.     Defendant Leroy Baca, in his capacity as Sheriff of the County of Los Angeles

and the Defendant, County of Los Angeles, implicitly or explicitly adopted and implemented

careless and reckless policies, customs, or practices, that included, among other things, of

allowing employees of the Century Regional Detention Facility to treat inmates detained at

CRDF in an inhumane and undignified manner such that the actions amounted to cruel and

unusual punishment.

41.     Defendant LEROY BACA, is and at all times mentioned in this complaint was,

acting in the course and scope of his employment as the Sheriff of Los Angeles County.  As

Sheriff, he is the chief executive officer of the Los Angeles Sheriff Department.  According to

California law as specified in Government Code §§26605 and 26610 and California Penal Code

§4006, the Los Angeles County Sheriff is answerable for the safekeeping of the inmates in his

custody.  Specifically, Defendant BACA is responsible for the oversight, management and

administration of policies of the County of Los Angeles with reference to local jails, including

but not limited to housing practices, transportation, and, medical and dental services.  This

includes all matters relating to the selection, supervision, promotion, training, and discipline of

the uniformed staff, including the supervisory security and medical staffs, of the County Jails.

He is also responsible for the care, custody, and control of all inmates housed in the County Jails.

42.     Defendant LEROY BACA, in his capacity as Sheriff of Los Angeles County and

the Defendant, COUNTY OF LOS ANGELES, implicitly or explicitly adopted and implemented

careless and reckless policies, customs, or practices of allowing employees of the Century

SECOND AMENDED COMPLAINT FOR DAMAGES- 14

Regional Detention Facility to treat inmates in an undignified manner, provide substandard living conditions, refuse food, provide inadequate medical and dental care, ignore court orders, utilize excessive force, sexually harass inmates, refuse attorney consultations, and refuse access to the court.

43.     The failure of the Defendant LEROY BACA and the COUNTY OF LOS ANGELES to adequately train and supervise the Defendants Avalos, Ortiz, jail employees, sheriff deputies and medical staff amounts to deliberate indifference to the right of Plaintiff to be free from cruel and unusual punishment, the right to be free of the use of excessive force by persons acting under the color of the law, the right to be free from sexual harassment, the right to freedom of association with her attorney, and, the right to a speedy trial under the First, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

44.     The conduct of Defendants, and each of them, as alleged in this Complaint, subjected Plaintiff to unnecessary and wanton infliction of physical injury, humiliation, discomfort, pain, and emotional distress.  Defendants also subjected Plaintiff to a serious risk of harm and/or death by failing to properly oversee her life threatening medical condition.

45.     In acting as alleged in this complaint, Defendants, and each of them, treated Plaintiff in an inhumane, undignified manner and violated Plaintiff's Eighth and Fourteenth Amendment right to be free of cruel and unusual punishment while a pre-trial detainee.

46.     In acting as is alleged in this Complaint, Defendants, and each of them, acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiff's federally protected rights such that Plaintiff is entitled to relief under 42 U.S.C. §1983.

47.     In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights including, but not

SECOND AMENDED COMPLAINT FOR DAMAGES- 15

limited to: a) the right to be free from cruel and unusual punishment; b) the right to freedom of association with her attorney; c) the right to be free from sexual harassment and abuse; d) the right to be free from physical assaults; e) the right to a speedy trial; and, f) the right to be free from excessive use of force by persons acting under color of state law.

**THIRD COUNT**
**FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C §1983**
**AGAINST DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV**
**YAROSLAVSKY, DON KNABE, AND MICHAEL D. ANTONOVICH**
**(Failure to Implement Appropriate Policies, Customs and Practices)**

48.     Plaintiff incorporates herein by reference paragraphs 1 through 47 as though fully set forth below.

49.     DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH are members of the Board of Supervisors of Los Angeles County.  The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County.  The Board of Supervisors is also directly responsible for establishing policy to guide the administrative functions of County departments including but not limited to Los Angeles County jails.

50.     DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, AND, MICHAEL D. ANTONOVICH have delegated their authority and are also responsible for the oversight of The Sybil Brand Commission for institutional inspections consists of ten commissioners, who were appointed by the Los Angeles County Board of Supervisors (two from each Supervisorial District). The Sybil Brand Commissioners conducts inspections of jails, lockups, probation and correctional facilities in the

SECOND AMENDED COMPLAINT FOR DAMAGES- 16

Los Angeles County at least once each year. They may conduct additional inspections more often as the Commission may deem necessary or as directed by a judge of the Superior Court. These inspections involve a complete evaluation of the condition of each facility the members of the Commission or a committee of the Commission. These inspections are to involve a complete evaluation of the condition of each facility's effective and economical administration, cleanliness, discipline and comfort of its inmates.  Plaintiff is informed and believes and thereon alleges that the Commission issues an annual report to the Los Angeles County Board of Supervisors concerning its evaluation of the facilities it has inspected.

51.     At all times mentioned herein, DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH, knew or should have known that the conditions of the Century Regional Detention Facility were ineffective, unclean and subjected inmates to the risk of harm and even the risk of death.  Defendants and each of them failed in the oversight, management and administration of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services.  Furthermore, Defendants and each of them, knew or should have known that Los Angeles County employees that caused harm to Plaintiff were unfit to perform the work for which they were hired and that this unfitness created a particular risk of harm to Plaintiff and the public at large.

52.     Notwithstanding the delegation of authority to the Sybil Brand Commission, their knowledge of the unlawful customs and practices of jail employees as well as the claims filed by Plaintiff, DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH have failed to conduct meaningful policies, customs and practices concerning the use of excessive force, improper strip

searches, substandard facilities, substandard medical and dental care, render guilty deputies accountable for sexual harassment and inmate abuse, and repeatedly ignored evidence that deputies and other Los Angeles County officials are covering up incidents of excessive force, sexual harassment, inmate torture, substandard medical care, improper strip searches and overall prisoner abuse.

53.     The actions of DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH as referenced herein are so common and well settled that they constitute a custom among Los Angeles County Sheriff Deputies and Los Angeles County jail employees as to represent a custom, practice and/or policy that is implicitly or explicitly adopted and authorized by DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH in their official capacity as members of the Los Angeles County Board of Supervisors who are responsible for the administration of policies that govern the functioning of jails.

54.     DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH in their official capacity, implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, of allowing employees of the Century Regional Detention Facility to treat inmates detained at CRDF in an inhumane and undignified manner such that the actions amounted to cruel and unusual punishment.

55.     DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH, implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices of allowing

SECOND AMENDED COMPLAINT FOR DAMAGES- 18

employees of the Century Regional Detention Facility to treat inmates, including but not limited
to Plaintiff, undignified and inhumane treatment, sexual abuse and harassment, substandard
living conditions, food deprivation, inadequate medical and dental care, refusals to adhere to
court orders regarding medical services and showers, utilizing excessive force, sexually
harassment, refusals of attorney consultations, and refusing access to the court.

56.     The failure of DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS,
ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH to adopt and
implement policies that protected Plaintiff's right to be free from cruel and unusual punishment,
the use of excessive force by persons acting under the color of the law, sexual harassment,
violations of the right to freedom of association with her attorney, and, deprivation of her right to
a speedy trial constituted violations of Plaintiff's rights as set forth in the First, Sixth, Eighth, and
Fourteenth Amendments to the Constitution of the United States.

57.     In acting as is alleged in this Complaint, DEFENDANTS GLORIA MOLINA,
MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D.
ANTONOVICH acted knowingly, willfully, and maliciously, and with reckless and callous
disregard for Plaintiff's federally protected rights such that Plaintiff is entitled to relief under 42
U.S.C. §1983.

58.     In committing the acts complained of herein, DEFENDANTS GLORIA
MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and,
MICHAEL D. ANTONOVICH acted under color of state law as members of the Los Angeles
County Board of Supervisors to deprive Plaintiffs of certain constitutionally protected rights
including, but not limited to: a) the right to be free from cruel and unusual punishment; b) the
right to not be detained in a Los Angeles County jail facility under inhumane and undignified

SECOND AMENDED COMPLAINT FOR DAMAGES- 19

conditions; c) the right to freedom of association with her attorney; d) the right to be free from

sexual harassment by Los Angeles County employees; e) the right to a speedy trial; f) the right to

receive adequate medical and dental care while in the custody of Los Angeles County

employees; and, g) the right to be free from excessive use of force by persons acting under color

of state law.

## FOURTH COUNT
### FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C §1983 AGAINST DEFENDANTS LEROY BACA, SHERIFF DEPUTY ORTIZ, SHERIFF DEPUTY AVALOS, SHERIFF DEPUTY SHANE PARKS and THE COUNTY OF LOS ANGELES
### (Cruel and Unusual Punishment)

59.    Plaintiff incorporates herein paragraphs 1 through 58 as though fully set forth

below.

60.    From November 15, 2011 to December 17, 2011, Plaintiff was a pre-trial detainee

being held on misdemeanor charges at the Century Regional Detention Facility.  During that

time Plaintiff experienced the following:

a.    On November 15, 2011, while at awaiting arraignment, Plaintiff was chained at

the waist with both hands cuffed at her waist by Los Angeles County Deputy Sheriffs.  Plaintiff

did not present a security risk.  During arraignment, a medical order was issued instructing Los

Angeles County medical employees to monitor Plaintiff's International Normalized Ratio (INR)

because of the anticoagulant, Coumadin, she is required to take daily.  Coumadin affects the

function of the coagulation cascade and helps inhibit the formation of blood clots.  It is

prescribed on a long-term basis to people who have experienced recurrent inappropriate blood

clotting.  INR monitors the effectiveness of Coumadin.  When Plaintiff arrived at CRDF, she

SECOND AMENDED COMPLAINT FOR DAMAGES- 20

informed the medical personnel that she takes 7.5 mg of Coumadin daily and needed to have a

blood test to monitor her INR because she had missed several doses of her medication since her

incarceration. The request was ignored.  Plaintiff's medical service providers have determined

that Plaintiff's INR should be between 2.0 and 3.0 to avoid the recurrence of blood clots in her

legs and lungs.

      b.     Plaintiff was not allowed to shower until November 18, 2011 and only because

her attorney submitted a complaint to the watch commander.

      c.     On November 16, 2011, Los Angeles County medical employees began to

dispense Coumadin to Plaintiff at 7.5 mg without taking a blood test to determine her INR.

      d.     On November 17, 2011, Plaintiff was then taken to cell 7 in the reception area of

CRDF with a chain around her waist and both hands cuffed.  While standing in cell 7, Plaintiff

became nauseous and short of breath. She was taken to the medical unit where her blood

pressure, heart rate and oxygenation rate were taken. Dr. Chong then approached Plaintiff and

said she was okay.  Plaintiff asked Dr. Chong whether he ruled out a blood clot. Dr. Chong

responded there was no clot because Plaintiff's INR was 2.0. Plaintiff asked how he knew her

INR. He said he'd checked her chart. Plaintiff informed Dr. Chong there had been no blood draw

since she arrived at the facility.  Dr. Chong excused himself and returned and said he'd been

reading last year's (2010) chart. He then requested a lab tech draw Plaintiff's blood. The lab tech

asked Deputy De Santo, the escorting officer, to remove one of Plaintiff's handcuffs so that the

lab tech could look for a place to draw Plaintiff's blood. Deputy De Santa refused. The lab tech

then attempted to draw blood from Plaintiff's hand several times and was unable to draw any

blood.  Before returning to the reception area, Plaintiff requested that Deputy DeSanto allow her

to use the restroom. Deputy De Santo stated that it would be better to go to the restroom in the

SECOND AMENDED COMPLAINT FOR DAMAGES- 21

reception area. When Plaintiff returned to the reception area, she was placed inside cell 7. She asked Deputy De Santo to remove one of the handcuffs so she could use the toilet. Deputy De Santo refused. Plaintiff had to wait for nearly three hours until she could utilize the toilet at LAX court. Removal of at least one of the handcuffs was particularly critical because Plaintiff was menstruating and could not reach the old pad or place a new pad with both hands chained to her waist. Neither could she utilize toilet tissue.

e.    On the evening of November 17, 2011, Plaintiff was returned to CRDF taken to the 2300 module. A female deputy offered to bring Plaintiff to her cell. The female deputy asked Plaintiff to remove all of her clothes except her underwear. Plaintiff took off everything except the bra and panties. The female deputy then told Plaintiff to take off the bra, pull down the underwear and "open your vagina and cough." Plaintiff pulled down the panties, opened her inner thighs and coughed. The female deputy said that was not good enough. Plaintiff informed the deputy that she was having her period and experiencing an extremely heavy flow. The deputy told Plaintiff to remove the sanitary pads and open her vagina. Plaintiff refused. The deputy told Plaintiff, "I guess you want to stay like that all night." She then chained Plaintiff's right hand to the door of the cell. Plaintiff had no clothing except the panties. The deputy also confiscated Plaintiff's attorneys' business cards. Deputy Ortiz walked by Plaintiff's cell and asked whether Plaintiff was ready to cooperate. Plaintiff told her she'd done the best she could. Approximately forty five minutes later, Plaintiff manipulated her right hand out of the handcuff. Plaintiff asked the count deputy for clothes and she refused to give Plaintiff any clothes. That evening, Plaintiff slept in a cold, air conditioned cell at approximately forty (40) degrees without clothes.

f.     On November 18, 2011, Plaintiff again requested clothes and was refused. At approximately 12:00 p.m., a black man from the psych department visited the cell and said he had questions to ask Plaintiff. Plaintiff told him she was not dressed and didn't think it was appropriate for him to question her without clothes.  He said that Plaintiff was covered in a blanket and that was sufficient.  Plaintiff told him that she had not been allowed a shower since I arrived at CRDF.  She also told him about the incident the night before when she was chained to the door with just panties on.  She told him she wanted to speak with a supervisor to file a grievance and he said he didn't believe that would be possible. Plaintiff answered some of his questions and then told him he should return at another time when she was more appropriately dressed.  At approximately 3:00 p.m., Plaintiff received a visit from my attorney. The deputies then scrambled to provide her clothes.  Plaintiff's attorney complained that she had not been allowed to shower or receive appropriate medical attention e.g. having my INR checked. Plaintiff was allowed a shower after the attorney visit.  Her INR was not checked.

g.     On November 21, 2011, Plaintiff was transported from CRDF to the criminal courts building.  Plaintiff was chained and handcuffed with her hands at my waist from 6:45 a.m. to 5:45 p.m. (11 Hours) and kept inside cell 2 the entire time.  Plaintiff was not allowed to appear in court notwithstanding her attorney's repeat requests throughout the day that Plaintiff be brought to court. When Plaintiff asked the deputies why she had not appeared in court, they said it was a "dry run" and that sometimes happens. Plaintiff's attorney later told her that he had been requesting that she be brought to court and the deputies told him they could not locate Plaintiff. The artificial "dry run" interfered with Plaintiff's right to a speedy trial and her right to communicate with her attorney.

SECOND AMENDED COMPLAINT FOR DAMAGES- 23

h.      On November 23, 2011, Plaintiff returned to the criminal courts building. Plaintiff's attorney asked the deputies to bring her to the 4th floor in approximately 20 minutes so they could have a confidential discussion. The deputy agreed.  Plaintiff was returned to cell no. 2 and twenty minutes later she was shipped on a bus to CRDF.  Before boarding the bus, Plaintiff asked the deputies to telephone Department 40. They refused.  She asked to speak with a supervisor and that request was also refused. This act also interfered with Plaintiff's right to a speedy trial and my right to communicate with my attorney.  Plaintiff arrived at CRDF at approximately 11:30 a.m. and was placed in cell 7 with both hands cuffed at her waist. Plaintiff stood inside of cell 7 for four hours. At approximately, 3:30 p.m., Plaintiff was taken to module 2300 where Deputies Ortiz and Avalos stood waiting. Each officer grabbed an arm and walked Plaintiff to the cell. They asked Plaintiff to remove her clothes and bend over and open her vagina. Plaintiff removed her clothes, pulled down the underwear, pulled on her inner thighs and coughed. Plaintiff pulled up the underwear and turned around to look at the officers. They both yelled "we didn't see you, do it again." Plaintiff asked what were they doing and they said they weren't looking. Plaintiff repeated the routine twice and they insisted she didn't "search out" properly.  Plaintiff asked Deputies Ortiz and Avalos to get their supervisor so that a supervisor could determine whether she "searched out" properly. Both deputies refused. Deputy Ortiz said, "[f]ine, you must want to stay like that all night and you don't want to eat." Deputy Avalos left to get scissors, returned and cut the bra and shirt off the chain. Deputy Avalos stated that Plaintiff shouldn't be out committing crimes and she wouldn't be in jail.  She also said that Plaintiff was "nothing." She bragged that she and Deputy Ortiz would be at home with their families over the holidays and Plaintiff would be in jail. Deputy Ortiz bragged that she had a rich husband and she worked because her "man don't mind."  She also said that she was there earning extra money for

SECOND AMENDED COMPLAINT FOR DAMAGES- 24

her family "babysitting (Plaintiff)."  Plaintiff grabbed the slack on the chain so that she could use the toilet if necessary. Deputy Ortiz took Plaintiff's lunch and some notes that she had written concerning her case. Plaintiff was chained to the door with pants and no bra or shirt. There was a dirty shirt on the floor of the cell that she'd left that morning. Plaintiff put on dirty shirt which she wore until she was allowed a shower on December 2, 2011.  A trustee gave Plaintiff dinner and then asked Plaintiff to return the dinner because she was instructed to not give Plaintiff the meal. Plaintiff refused to return the dinner. Deputy Oritz called on the intercom and said "I hope you enjoyed your dinner because tomorrow you ain't gettin' shit and we will be at home with our families enjoying Thanksgiving dinner and you will be here." Approximately 30 minutes later, Deputy Ortiz returned to the cell and asked whether Plaintiff was ready to cooperate. Plaintiff told her she did the best she could.  Approximately 30 minutes later, Deputy Moreno called and asked whether Plaintiff was ready to cooperate. Plaintiff told her she would do what she'd done before and Deputy Moreno said that was not good enough. Deputy Moreno then came to the cell and asked whether Plaintiff was ready to "search out." Plaintiff stood up, pulled down her underwear, held open her inner thighs and coughed. Deputy Moreno said that was not appropriate. Plaintiff told her not to return because she believed that she was playing a game and simply wanted to view her rear end.   Plaintiff stayed handcuffed to the door for approximately 6 hours. Deputy Moreno took off the cuffs at approximately 12:00 a.m.

       i.        On November 29, 2011, the court issued a second medical order and a shower order.  Plaintiff returned to CRDF at approximately 3:30 p.m. and was taken to the 2300 module where Deputies Ortiz, Avalos and Garcia were waiting to bring Plaintiff to the cell. The deputies asked for Plaintiff's clothes and bra. Plaintiff complied.  They then asked Plaintiff to lift her breasts and turn around, bend over, open her vagina and cough. Plaintiff bent over, opened her

inner thighs and coughed. They said that was not good enough. Deputy Ortiz took Plaintiff's pants and her lunch and said, "you must not want to eat and you must want to stay like that all night." Plaintiff grabbed the chain so that she could use the toilet if need be. The deputies left Plaintiff chained to the door with just a shirt.  Plaintiff decided to engage in a protest and banged a handcuffed on the door of the cell for approximately two hours.  Deputy Avalos pretended she was going to unlock the handcuff and instead locked both handcuffs onto Plaintiff's left hand and tightened them to the point that Plaintiff's wrist was swollen and red.  Deputy Avalos also pulled on the slack of the chain and Plaintiff tried to prevent her from doing so. Deputy Avalos pulled on the chain so hard that the chain cut the baby finger of Plaintiff's left hand. Deputy Ortiz instructed the trustees to not serve Plaintiff dinner and they did not. Plaintiff remained chained to the door until approximately six thirty or seven o'clock when a male deputy, Ramirez, unlocked the handcuffs.

j.      On November 30, 2011, Plaintiff was awakened at approximately 8:30 a.m. by the morning nurse and the nurse practitioner "Bachelor." They asked whether they could draw Plaintiff's blood for an INR check.  Plaintiff agreed. Ms. Bachelor apologized for ignoring Plaintiff's requests for two weeks prior and indicated that she had received a court order instructing that Plaintiff's INR be taken. Plaintiff informed Ms. Bachelor that she needed a special diet and Ms. Bachelor indicated she would return to discuss the special diet. Ms. Bachelor never returned not to Plaintiff's cell to discuss her INR, a special diet, or any other medical issues that Plaintiff had.  A blood draw was taken and Plaintiff bled for approximately 45 minutes and bled through four gauze bandages.

k.      On the evening of November 30, 2011, Plaintiff asked the evening nurse for an antibiotic ointment for the wound on her left hand caused by Deputy Avalos.  Deputy Avalos

SECOND AMENDED COMPLAINT FOR DAMAGES- 26

accompanied the evening nurse and said no to my request for an antibiotic ointment. Deputy Avalos closed the chute of the cell door and walked away. On a prior occasion, Deputy Avalos refused Plaintiff's Coumadin medication because Plaintiff asked for ointment for a rash on her left wrist. Specifically, Deputy Avalos attempted to touch the affected area of Plaintiff's left wrist, Plaintiff told her not to touch her me and pulled away her left hand. Deputy Avalos was agitated and slammed the chute and did not allow the nurse to give Plaintiff her medication that evening.

l.     On December 1, 2011, the medical staff stopped dispensing Coumadin to Plaintiff.

m.     On December 2, 2011, Plaintiff was taken to the criminal courts building for a hearing. Plaintiff was not allowed to go to court despite her attorney's request that she be brought to the courtroom. Plaintiff was returned to CRDF on the afternoon bus. I was returned to the module, allowed to shower by a female officer. That evening, Deputy Avalos began a pattern of not allowing Plaintiff to throw out her trash by not opening the shoot so the trustees can retrieve trash.

n.     On December 3, 2011, a Caucasian man visited the cell and said he was a psychiatrist. He told Plaintiff that he thinks she may be bipolar. Plaintiff asked him what caused him to reach that conclusion he said he had read some notes that indicated Plaintiff was "irritable." He then asked whether Plaintiff desired any psychiatric meds or sleeping pills and Plaintiff refused his request. He also told me that her INR had returned 4.4, which is twice the level that it should have been.

o.     On December 12, 2011, Ms. Boyles from the psychiatric unit asked Plaintiff whether Plaintiff had a "problem" with the deputies. Plaintiff told Ms. Boyles about the

SECOND AMENDED COMPLAINT FOR DAMAGES- 27

"searching out" situation with Deputies Ortiz and Avalos and all of the other issues she was having. Ms. Boyles asked whether Plaintiff filled out a grievance form. Plaintiff explained that she had no access to a grievance process because she was kept inside of the cell 24 hours a day unless she went to court. Ms. Boyles said the deputies told her they did not allow Plaintiff out of the cell because Plaintiff was "hostile and aggressive." Ms. Boyles wanted to know Plaintiff's response. Plaintiff told her that her response was the explanation she had given about the way she had been treated while incarcerated. Ms. Boyles said she would return that afternoon and attempt to get Plaintiff out of the cell for a shower. Ms. Boyles never returned and Plaintiff did not receive a shower. That evening, Deputy Avalos accompanied the evening nurse with medication. Avalos snatched Plaintiff's medication away from the nurse, placed the pills inside a small white cup, and put the cup on the floor and pushed them under the door. Plaintiff refused to take the medication.

　　　　p.　　　From November 17, 2011 to November 30, 2011, Plaintiff was dispensed Coumadin without anyone checking her INR. Plaintiff requests to have her INR checked went ignored. Once the medical staff discovered Plaintiff's INR was 4.4, twice the level it should have been, Plaintiff's Coumadin was discontinued altogether from December 1, 2011 until her release on December 17, 2011. After her release on December 17, 2011, Plaintiff immediately had a blood test and discovered her INR was 1.0 which meant she was subjected to clotting and a heart attack or stroke.

　　　　q.　　　On November 15, 2011, Plaintiff received a K12 classification by Los Angeles County jail employees with no medical, legal or factual basis. The K12 classification caused Plaintiff to be dressed in yellow and blue which inferred that Plaintiff had psychiatric issues. Plaintiff was never formally diagnosed by a physician qualified to make such an assessment.

SECOND AMENDED COMPLAINT FOR DAMAGES- 28

r.      During the entire time Plaintiff was incarcerated at CRDF, the cell was never cleaned.  Furthermore, Plaintiff remained inside of the cell 24 hours a day unless she was transported to court.   She did not have any physical activity or mental stimulation.  And, she received three showers during the entire incarceration.

61.      On January 9, 2013, Plaintiff was arrested by the Los Angeles County Sheriff Department while travelling east on the Culver City Expo Train by Los Angeles County Sheriff Deputy Shane Parks (Badge Number 455174).   During the arrest, Deputy Shane Parks stood behind Plaintiff, with one hand on her waist and the other on the hand cuffs.  He repeated touched Plaintiff's buttocks and Plaintiff asked him to stop.  He then started twisting Plaintiff's hands against the handcuffs.  Plaintiff again asked him to stop because he was hurting her and he refused.  Deputy Shane Parks continued to twist Plaintiff's wrists against the handcuffs until he caused visibly red marks and scars.  When additional officers arrived, Deputy Shane shouted "we have a spitter."  A female officer then went to her vehicle to retrieve a spitting mask which she placed on Plaintiff's head.  Plaintiff arrived at Century Regional Detention Facility for booking at approximately 9:00 p.m.  Deputy Shane Parks then announced "she spit on a deputy." Numerous deputies then surrounded Plaintiff and took her to a holding cell.  While inside the holding cell, two female officers, one them being female Deputy Nalls, began to search Plaintiff. After searching Plaintiff, the deputies decided to remove Plaintiff's bra.  The deputies then lifted Plaintiff's shirt and exposed her breasts in the presence of male officers.  Plaintiff asked Deputy Nalls to not expose her breasts in the presence of male officers and Deputy Nalls stated, "don't worry, they can't see anything."  However, the male officers were unquestionably positioned so that Plaintiff's breasts were in their plain view.  Plaintiff was left inside of the holding cell, handcuffed with her hands behind her back and the spitting mask on her head for approximately

twelve (12) hours. Plaintiff did not receive water, food or a blanket during that time. Neither could she use the toilet. Plaintiff was charged with two misdemeanors and an infraction and held on a $25,000 bail.          On January 25, 2013, Plaintiff was transported to the criminal courts building for a scheduled court appearance in Division 40. Her attorney, Joseph McInnis, requested an attorney consultation and was refused by Los Angeles County Sheriff Deputies. He was told that Plaintiff was a "miss out." The truth is that Plaintiff was not a "miss out" and was being held inside of holding cell number two at the Criminal Courts Building from approximately 6:30 a.m. to 6:30 p.m. Plaintiff was chained and handcuffed with three other women who had obvious mental health issues such that they removed their clothing and engaged in sex acts with themselves. During that time, Plaintiff could not utilize the toilet or eat. When Plaintiff asked sheriff deputies about the status of her case, Plaintiff was told the court had not called her case for hearing. Attorney Joseph McInnis informed Plaintiff that the court did in fact call her matter for hearing and the court was informed by sheriff deputies that Plaintiff was a "miss out." Los Angeles County Sheriff Deputies misrepresented this fact knowing that Plaintiff was being held inside of holding cell number two because inmates are electronically monitored from the time they leave CRDF to the time they return to CRDF. Additionally, there is a sign in sheet outside of the holding cell that deputies sign attesting they have checked on the status of the inmates inside of the holding cell. As a result of the misrepresentation that Plaintiff was a "miss out," Plaintiff's case was continued to January 29, 2013 and she lost four (4) days of her right to a speedy trial.

62.     The Defendant, County of Los Angeles, has adopted policies, procedures, practices or customs within the Los Angeles County Sheriff's Department generally, and CRDF specifically, that allow, among other things, the use of cruel and unusual punishment, sexual

SECOND AMENDED COMPLAINT FOR DAMAGES- 30

abuse and harassment, physical assaults and excessive force, improper classifications, inadequate housing conditions, and inadequate medical care.

63.     Defendant Leroy Baca, as the chief executive of the Los Angeles Sheriff's Department, is responsible for the supervision and oversight of deputies within his department. Defendant Baca is also responsible for the safekeeping of the inmates in the custody of the Los Angeles Sheriff's Department.  California Government Code §§26605 and 26610; California Penal Code §4006.  Specifically, Defendant BACA is responsible for the oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services. This includes all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security and medical staffs, of the County Jails.

64.     By allowing the acts of the sheriff deputies referenced *infra* and failing to implement policies and procedures which would prevent such occurrences, Defendant Baca essentially acquiesced in the actions of said Deputies.

65.     The actions of Defendant Baca and Defendant County of Los Angeles amount to deliberate indifference to the right of Plaintiff to be free of cruel and unusual punishment, inadequate medical care, inadequate medical conditions, and, excessive force under the Eighth and Fourteenth Amendments to the Constitution of the United States.

66.     As a result of the deliberate indifference to Plaintiff's rights by Defendant Baca and Defendant County of Los Angeles and its agents, servants and employees, Plaintiff suffered personal injuries, humiliation and emotional distress and is entitled to relief under 42 U.S.C. §1983.

SECOND AMENDED COMPLAINT FOR DAMAGES- 31

**FIFTH COUNT**
**FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C §1983**
**AGAINST DEFENDANTS LEROY BACA, and THE COUNTY OF LOS ANGELES**
**(Interference with Right to a Speedy Trial and Freedom of Association)**

67.     Plaintiff incorporates herein paragraphs 1 through 66 as though fully set forth below.

68.     In committing the acts complained of herein, Defendants LEROY BACA AND THE COUNTY OF LOS ANGELES acted under color of state law by preventing Plaintiff from consulting with her attorney and appearing in court when she was scheduled to do so. Defendants' acts of detaining Plaintiff in a holding cell when she was scheduled to appear in court, and, preventing her from consulting with her attorney, had no basis in fact or law and therefore violated Plaintiff's right to a speedy trial as guaranteed by the Sixth Amendments to the Constitution of the United States.

69.     As a direct and proximate result of the violation of Plaintiff's constitutional right to a speedy trial by Defendant BACA and the employees, agents, servants and assigns of Defendant County of Los Angeles, Plaintiff has suffered special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. §1983.

**SIXTH CLAIM FOR**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST DEFENDANTS LOS ANGELES COUNTY, DEFENDANT LEROY**
**BACA, DEPUTY SHERIFF AVALOS, DEPUTY SHERIFF ORTIZ AND DEPUTY**
**SHERIFF SHANE PARKS)**

70.     Plaintiff incorporates herein by reference paragraphs 1 through 69 as though fully set forth below.

SECOND AMENDED COMPLAINT FOR DAMAGES- 32

71.     Defendants LEROY BACA, SHERIFF DEPUTY ORTIZ, SHERIFF DEPUTY AVALOS AND LOS ANGELES COUNTY, at all times referenced herein, owed a duty to Plaintiff to not engage in discriminatory conduct, to not be physically and emotionally abusive to Plaintiff and to provide proper and adequate medical care and supervision of Plaintiff's medical condition.  Specifically, Defendant BACA has a duty to provide adequate and appropriate oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services.

72.     Defendants and each of them knew, or should have known, that their misconduct as set forth herein would cause Plaintiff to experience severe emotional distress.

73.     Defendants and each of them breached their duty of care to Plaintiff as a housed inmate of Century Regional Detention Facility as referenced *infra*.

74.     As a direct and proximate result of Defendants, and acts of cruel and unusual punishment, substandard medical care and violation of Plaintiff's First, Sixth, Eighth and Fourteenth Amendment Constitutional rights, as well as Defendants physical and emotional abuse Plaintiff, Plaintiff has suffered and continues to suffer severe emotional distress and mental suffering, all to her damage in an amount to be established at trial.

## SEVENTH CLAIM FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS LOS ANGELES COUNTY, DEFENDANT LEROY BACA, DEPUTY SHERIFF AVALOS AND DEPUTY SHERIFF ORTIZ)

75.     Plaintiff incorporates herein by reference paragraphs 1 through 74 as though fully set forth below.

76.     At all times referenced herein, the employees of DEFENDANT COUNTY OF LOS ANGELES e.g. DEFENDANT LEROY BACA, DEPUTY SHERIFF ORTIZ AND DEPUTY SHERIFF AVALOS acted within the scope of their employment with DEFENDANT COUNTY OF LOS ANGELES.

77.     As a direct and proximate result of the misconduct referenced herein, Plaintiff has suffered extreme emotional psychological distress, severe harm and anguish including but not limited to physical and emotional abuse.  Additionally, the actions of DEFENDANTS DEPUTY SHERIFF ORTIZ AND DEPUTY SHERIFF AVALOS and Does 1 thru 25 as referenced herein were specifically designed to embarrass, harass, humiliate and annoy Plaintiff.   Plaintiff has suffered damages and continues to suffer damages in an amount to be established at trial.

78.     Defendants, and each of their actions as referenced herein, particularly the physical and emotional abuse and disparaging comments regarding Plaintiff, were knowing, intentional, and willful, because they had full knowledge or knew with substantial certainty of the extreme emotional psychological distress, severe harm, and anguish that their conduct would cause Plaintiff or any person of ordinary sensitivity.  Said conduct was outrageous and intended to cause harm and emotional distress to Plaintiff and Plaintiff has in fact experience psychological and emotional harm as set forth below.

79.     The conduct of Defendants was outrageous, intentional, malicious and oppressive, and done with a wanton and reckless disregard of the consequences to Plaintiff.  Defendants also knew or should have known that their physical and emotional abuse would cause Plaintiff psychological and emotional harm.  Notwithstanding the foregoing, Defendants intended for their conduct to humiliate, annoy and embarrass Plaintiff.    Plaintiff is therefore entitled to punitive damages in amount to be established at trial.

SECOND AMENDED COMPLAINT FOR DAMAGES- 34

### EIGHTH CLAIM FOR DEFAMATION
### (AGAINST DEFENDANT LOS ANGELES COUNTY, DEFENDANT LEROY BACA AND DOES 1 THRU 25)

80.     Plaintiff incorporates herein by reference paragraphs 1 through 79 as though fully set forth below.

81.     DEFENDANT LOS ANGELES COUNTY and its employees, agents, servants and assigns individually and in their capacity as employees of DEFENDANT LOS ANGELES COUNTY made false representations to the public about Plaintiff's mental status and/or condition as an inmate within a Los Angeles County jail facility.  Specifically, Defendant LOS ANGELES COUNTY and its agents, employees, servants and assigns forced Plaintiff to wear yellow shirts and blue pants, representing that she was an inmate with a medically diagnosed psychological condition.

82.     Defendants, and each of them, knew the representation of wearing yellow shirts and blue pants was false in that Plaintiff has never been medically diagnosed with a psychological condition.  Defendants intended that the representation of wearing yellow shirts and blue pants to subject and expose Plaintiff to hatred, contempt, ridicule and shame.

83.     While wearing a yellow shirts and blue pants, a judicial officer of the Los Angeles Superior Court stated openly in during a court hearing, "I am not worried about what she has to say.  Look at what she is wearing, she is obviously crazy."  The judicial officer apparently believed the negative and false connotation of wearing yellow shirts and blue pants and viewed Plaintiff in a negative light as a result.

84.     As a direct and proximate cause of the false representation of wearing yellow shirts and blue pants, Plaintiff has experienced embarrassment, hurt feelings and mortification as

SECOND AMENDED COMPLAINT FOR DAMAGES- 35

a result of the statement made by the judicial officer of the Los Angeles Superior Court and the false representation that she had been medically diagnosed with a mental condition.

85.     Defendants knew that forcing Plaintiff to wear yellow and blue represented that she had been diagnosed with a mental condition, and, they knew that such a representation was false. Defendants intended to place Plaintiff in a false and negative light to the public and specifically, her attorneys, Los Angeles County employees and Los Angeles County judicial officers.

86.     Because of the intentional nature of Defendants false representations about Plaintiff, Plaintiff is entitled to punitive damages in an amount to be established at trial.

## NINTH CLAIM FOR BATTERY
### (AGAINST LOS ANGELES COUNTY, DEFENDANT LEROY BACA, DEPUTY SHERIFF AVALOS AND DEPUTY SHERIFF ORTIZ)

87.     Plaintiff incorporates herein by reference paragraphs 1 through 88 as though fully set forth below.

88.     From November 15, 2011 through December 17, 2011, Plaintiff was housed as a pre-trial inmate at the Century Regional Detention Facility under the care and supervision of DEFENDANTS LOS ANGELES COUNTY AND DEFENDANT LEROY BACA.

89.     On November 29, 2011, Plaintiff was taken to LAX court for a pre-trial hearing. When Plaintiff arrived at Century Regional Detention Facility, she was taken to the 2300 module where Sheriff Deputies Ortiz, Avalos and Garcia were waiting to bring her to her cell. The deputies asked Plaintiff for her clothes and my bra. They then asked her to lift my breasts and turn around, bend over, open her vagina and cough. Plaintiff bent over, opened her inner thighs and coughed. The sheriff deputies stated that was not good enough. DEFENDANT DEPTUY

SECOND AMENDED COMPLAINT FOR DAMAGES- 36

ORTIZ took Plaintiff's pants and her lunch and said, "you must not want to eat and you must want to stay like that all night." Plaintiff grabbed the chain used to restrain her so that she could use the toilet if need be. DEFENDANT DEPUTY AVALOS returned and pretended she was going to unlock the handcuff on Plaintiff's wrist and instead locked both handcuffs onto Plaintiff's left hand and tightened them to the point that her wrist became swollen and red. DEFENDANT DEPUTY AVALOS also pulled on the slack of the chain so hard that the chain cut Plaintiff's baby finger of her left hand. DEFENDANT SHERIFF DEPUTY ORTIZ then instructed the trustees to not serve Plaintiff dinner and they did not. Plaintiff stayed chained to the door until approximately four hours until a male deputy officer Ramirez unlocked the handcuffs.

90.     Plaintiff was arrested on January 9, 2013 by Sheriff Deputy Shane Parks. During the arrest, Plaintiff was physically assaulted and touched inappropriately by male sheriff deputy Shane Parks.

91.     Plaintiff did not consent to the touching by the employees of DEFENDANT LOS ANGELES COUNTY.

92.     As a direct and proximate result of the touching by the employees of DEFENDANT LOS ANGELES COUNTY, Plaintiff was physically abused and assaulted, harassed, injured emotionally, and damaged in an amount that will be established at trial.

\\\

\\\

\\\

\\\

SECOND AMENDED COMPLAINT FOR DAMAGES- 37

**TENTH CLAIM FOR**
**NEGLIGENT HIRING AND SUPERVISION**
**(AGAINST DEFENDANTS LEROY BACA, GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, MICHAEL D. ANTONOVICH, AND, LOS ANGELES COUNTY)**

93.    Plaintiff incorporates herein by reference paragraphs 1 through 92 as though fully set forth below.

94.    Defendant LEROY BACA, is and at all times mentioned in this complaint was, acting in the course and scope of his employment as the Sheriff of Los Angeles County.  As Sheriff, he is the chief executive officer of the Los Angeles Sheriff Department.  According to California law, the Sheriff is answerable for the safekeeping of the inmates in his custody. California Government Code §§26605 and 26610; California Penal Code §4006.  Specifically, Defendant BACA is responsible for the oversight, management and administration of policies of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services.  This includes all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security and medical staffs, of the County Jails.  He is also responsible for the care, custody, and control of all inmates housed in the County Jails.

95.    DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, and, MICHAEL D. ANTONOVICH are members of the Board of Supervisors of Los Angeles County.  The Board of Supervisors is the governing body of the County of Los Angeles, a charter county. As such, it has the function of serving as the executive and legislative head of the Los Angeles County.

96.    DEFENDANTS GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, AND, MICHAEL D. ANTONOVICH are also responsible

for the oversight of The Sybil Brand Commission for institutional inspections consists of ten commissioners, who were appointed by the Los Angeles County Board of Supervisors (two from each Supervisorial District). The Sybil Brand Commissioners conducts inspections of jails, lockups, probation and correctional facilities in the Los Angeles County at least once each year. They may conduct additional inspections more often as the Commission may deem necessary or as directed by a judge of the Superior Court. These inspections involve a complete evaluation of the condition of each facility the members of the Commission or a committee of the Commission. These inspections are to involve a complete evaluation of the condition of each facility's effective and economical administration, cleanliness, discipline and comfort of its inmates.

97.    At all times mentioned herein, DEFENDANTS LEROY BACA, GLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE, MICHAEL D. ANTONOVICH, and, LOS ANGELES COUNTY knew or should have known that the conditions of the Century Regional Detention Facility were ineffective, unclean and subjected inmates to the risk of harm and even the risk of death.  Defendants and each of them failed in the oversight, management and administration of the County of Los Angeles with reference to local jails, including but not limited to housing practices, transportation, and, medical and dental services.  Furthermore, Defendants and each of them, knew or should have known that Los Angeles County employees that caused harm to Plaintiff were unfit to perform the work for which they were hired and that this unfitness created a particular risk of harm to Plaintiff and the public at large.

98.   Defendants have failed to conduct meaningful investigations of reports of excessive force, improper strip searches, sub-standard medical and dental care, render guilty deputies

SECOND AMENDED COMPLAINT FOR DAMAGES- 39

accountable, and repeatedly ignored evidence that deputies and other Los Angeles County

officials are covering up incidents of excessive force, inmate torture, substandard medical care,

improper strip searches and overall prisoner abuse.

99.     As a direct and proximate cause of the evident unfitness of the employees,

administrators and officials of DEFENDANT LOS ANGELES COUNTY and DEFENDANT

LOS ANGELES COUNTY, LEROY BACA, FLORIA MOLINA, MARK RIDLEY-THOMAS,

ZEV YAROSLAVSKY, DON KNABE AND MICHAEL D. ANTONOVICH'S negligence in

hiring, retaining and failing to properly supervise its administrators, employees and the

conditions of the Century Regional Detention Facility, Plaintiff has been generally and specially

damaged in an amount to be established at trial.


**ELEVENTH CLAIM FOR**
**NEGLIGENCE**
**(AGAINST DEFENDANTS LEROY BACA, GLORIA MOLINA, MARK RIDLEY-**
**THOMAS, ZEV YAROSLAVSKY, DON KNABE, MICHAEL D. ANTONOVICH, AND,**
**LOS ANGELES COUNTY)**

100.    Plaintiff incorporates herein by reference paragraphs 1 through 99 as though fully

set forth below.

101.    Defendants, and each of them, have an obligation to oversee and evaluate the

condition of each Los Angeles County jail facility's effective and economical administration,

cleanliness, discipline and comfort of its inmate. This includes housing practices, transportation,

and, medical and dental services.  This also includes all matters relating to the selection,

supervision, promotion, training, and discipline of the uniformed staff, including the supervisory

security and medical staffs, of the County Jails.  Defendants, and each of them, are also

responsible for the care, custody, and control of all inmates housed in the County Jails.

SECOND AMENDED COMPLAINT FOR DAMAGES- 40

102.   Defendants have failed in their obligations to provide adequate medical and dental care, clean facilities, as well as effective and economical administration of its facilities. Defendants have further failed to conduct meaningful investigations of reports of excessive force, improper strip searches, sub-standard medical and dental care, render guilty deputies accountable, and, have repeatedly ignored evidence that deputies and other Los Angeles County officials are covering up incidents of excessive force, inmate torture, substandard medical care, improper strip searches and overall prisoner abuse.

103.   On November 15, 2011, a medical order was issued by the Los Angeles Superior Court ordering that Plaintiff's INR level be monitored while taking the medication Coumadin. That medical order was ignored by the medical staff and administrators of the Century Regional Detention Facility until November 30, 2011.

104.   On November 30, 2011, Plaintiff's INR level was taken and it was 4.4 which is twice the level that it should have been.  Plaintiff was therefore subject to internal bleeding and other very serious medical conditions.  On or about December 2, 2011, Plaintiff's medication was discontinued.  Her INR was not taken again by the medical staff of the Century Regional Detention Facility.

105.   On numerous occasion during her incarceration, Plaintiff requested dental care for an infected tooth.  At no time from November 15, 2011 to December 17, 2011, was Plaintiff examined by a dentist.  Plaintiff ultimately lost her infected tooth.

106.   On December 17, 2011, Plaintiff's INR was 1.1 which was two times below that which it should have been, thereby subjecting her to blood clots in her legs and/or legs which could have caused her death.

SECOND AMENDED COMPLAINT FOR DAMAGES- 41

107.    As a direct and proximate cause of the failures of the employees, administrators and officials of DEFENDANT LOS ANGELES COUNTY and DEFENDANT LOS ANGELES COUNTY, LEROY BACA, FLORIA MOLINA, MARK RIDLEY-THOMAS, ZEV YAROSLAVSKY, DON KNABE AND MICHAEL D. ANTONOVICH'S in their obligations to provide adequate medical and dental care as well as effective and economical administration of its facilities, Plaintiff has been generally and specially damaged in an amount to be established at trial.

WHEREFORE Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.  For general damages in the amount of $1.25 million;

2.  For general damages for mental and emotional distress according to proof;

3.  For punitive damages;

4.  For a civil penalty for each unlawful violation;

5.  For costs of suit incurred herein;

6.  Reasonable attorney's fees as allowed by statute; and,

7.  For such other and further relief as the court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff LECIA L. SHORTER hereby demands a jury trial.

Dated:        January 20, 2014

LECIA L. SHORTER
PLAINTIFF IN PRO PER

SECOND AMENDED COMPLAINT FOR DAMAGES- 42

DECLARATION OF LECIA L. SHORTER

I, Lecia L. Shorter, do hereby declare:

1.    I am the plaintiff in this action.

2.    I declare that the facts set forth herein are true and of my own personal knowledge except as to those matters which are stated on information and belief.


I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.


Dated:        January 20, 2014

LECIA L. SHORTER

SECOND AMENDED COMPLAINT FOR DAMAGES- 43

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SECOND AMENDED COMPLAINT FOR DAMAGES- 44

Lecia
287 S. Robertson Blvd
No. 291
Beverly Hills, CA 90211



U.S. POSTAGE
$2.52
FCM LG ENV
92623
Date of sale
01/20/14 AP
006   2500
08276717



RECEIVED
CLERK, U.S. DISTRICT COURT

JAN 22 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

AGR          United States District Court
Central District
312 N. Spring Street
Los Angeles, CA    90012

ATTN: CIVIL FILING CLERK