Henry Patrick Nelson, CSB #32249
Amber A. Logan, CSB #166395
Rina M. Mathevosian, CSB #251423
***Nelson & Fulton***
Equitable Plaza, Suite 2800
3435 Wilshire Boulevard
Los Angeles, CA 90010-2014
(213)365-2703 / Fax (213)365-9130
**nelson-fulton@nelson-fulton.com**

Attorneys for Defendants,
County of Los Angeles, Leroy Baca, Deputy Jacqueline Ortiz, and Deputy Alejandra Avalos

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LECIA L. SHORTER, | CASE NO. CV 12-7337 DOC (AGR) |
| Plaintiff, | **DECLARATION OF RINA M. MATHEVOSIAN AND EXHIBITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES** |
| v. | |
| LEROY BACA, et al., | |
| Defendants. | [F.R.C.P. Rule 56] |
| | Date:   April 6, 2015 |
| | Time:  8:30 a.m. |
| | Place   Courtroom 9D |
| | Judge: Hon. David O. Carter |
| | Trial Date: June 23, 2015 |

## DECLARATION OF RINA M. MATHEVOSIAN

I, Rina M. Mathevosian, declare that if called and sworn, I could and would state the following, which is based on my personal knowledge:

1.    I am an attorney licensed to practice before all courts of the State of California and admitted to practice in the Central District of California.  I am employed by Nelson & Fulton, attorneys of record for the Defendants County of Los Angeles, Leroy Baca, Deputy Jacqueline Ortiz, and Deputy Alejandra Avalos.

2.   The document attached hereto and incorporated by reference herein as Exhibit A is a true and correct copy of the Declaration of Lieutenant Angela Walton executed by her on March 3, 2015.

3.   The document attached hereto and incorporated by reference herein as Exhibit B is a true and correct copy of the Criminal Docket in the Case of <u>People of the State of California v. Lecia Lenette Shorter</u>, Case 1WA02365.

4.   The document attached hereto and incorporated by reference herein as Exhibit C is a true and correct copy of excerpts of the Deposition Transcript of Lecia L. Shorter, taken and transcribed April 9, 2014.

5.   On February 25, 2015, I met and conferred with Plaintiff's counsel, Ji-In Lee in regards to the filing of this Motion.

I declare under the penalty of perjury that the foregoing is true and correct, executed this 9th day of March 2015 at Los Angeles, California.

<u>s / Rina M. Mathevosian</u>
RINA M. MATHEVOSIAN

**Exhibit A**

## DECLARATION OF ANGELA WALTON

I, Angela Walton, declare that if called and sworn, I would state the following under oath.

1.  I am over the age of 18, and not a party to this action.

2.  I am employed by the Los Angeles County Sheriff's Department and currently hold the rank of Lieutenant.  I am currently assigned to the Century Regional Detention Facility ("CRDF") located at 11705 Alameda Street, Lynwood, California. I have been employed by the Los Angeles County Sheriff's Department for the past 19 years. I have been assigned to CRDF since June 2013 . As such, I am aware of how records and policies related to CRDF are kept in the ordinary course of business.  As such, I am qualified to give this declaration.

3.  I have been requested to access Inmate Information pertaining to Inmate Lecia L. Shorter, Booking No. 2945864. The Inmate Information under this booking number provides that Inmate Shorter was housed at CRDF from November 15, 2011 through December 17, 2011.

4.  I have been requested to access and provide the Los Angeles County Sheriff's Department policies that pertain to inmates housed at CRDF effective in 2011. CRDF is a facility that houses only female inmates.

5.  I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding standardized orientation and training in custody, effective in 2011.

6.  In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding custody training and orientation. The Policy is maintained in the Custody Division Manual as Number 3-02/010.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-1."** The Policy provides that each unit commander shall implement Custody Division Standardized Orientation and Training Programs for new trainees. Policy requires that the training program provide comprehensive information regarding Title 15 and minimum jail standards.

7.  I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding in service training effective in 2011.

8.   In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding in service training. The Policy is maintained in the Custody Division Manual as Number 3-02/020.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-2."** The policy requires that unit commanders provide continual in-service training programs for all personnel assigned to their unit.

9.   I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding training in legal aspects effective in 2011.

10.  In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding training in legal aspects. The Policy is maintained in the Custody Division Manual as Number 3-02/030.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-3."** Unit commanders shall, on a continuing basis, thoroughly familiarize their personnel with Department Policy relative to the use of force and treatment of inmates. The briefing and training shall include the following topics: Penal Code Section 147-Inhumanity to prisoners, Penal Code Section 673 cruel and unusual punishment, and 42 U.S.C. §1983 deprivation of rights under color of authority.

11.  I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding standards and training for corrections effective in 2011.

12.  In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding standards and training for corrections. The Policy is maintained in the Custody Division Manual as Number 3-02/050.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-4."** The policy requires that unit commanders establish procedures to ensure that custodial personnel attend the required annual training mandated by the Standards and Training for Corrections pursuant to Title 15, section 1025, "Continuing Professional Training."

13.  I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Health Care Services effective in 2011.

14.  In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Health Care Services. The Policy is maintained in the Custody Division Manual as Number

5-03/010.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-5."** The policy requires that each unit commander, in conjunction with the Director of Medical Services Bureau, shall have the responsibility to ensure the provision of emergency and basic health care services to all inmates.

15.    I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Medical Mental Health Procedures Manual effective in 2011.

16.    In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Medical Mental Health Procedures Manual. The Policy is maintained in the Custody Division Manual as Number 5-03/020.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-6."**

17.    I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Standards of Medical Care effective in 2011.

18.    In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Standards of Medical Care. The Policy is maintained in the Custody Division Manual as Number 5-03/050.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-7."** The policy requires that standard medical care includes medical services performed by qualified persons under the supervision of a licensed physician and access to daily sick call. Sick call is the process through which medical staff can identify, examine and care for inmate illness or injuries or make appropriate referrals for special health attention.

19.    I have been requested to access and provide the Los Angeles County Sheriff's Department, Custody Division, CRDF Unit Order regarding Medical Services effective in 2011.

20.    In the year 2011, the Los Angeles County Sheriff's Department's Custody Division, CRDF did have a Unit Order regarding Medical Services. The Unit Order is maintained as Number 5-08-050. A true and correct copy of the Unit Order is attached hereto and incorporated by reference herein as **Exhibit "A-8."** The Order requires that inmates are allowed access to medical personnel for complaints of medical conditions. The Unit Order also provides that a nurse will dispense the medications as prescribed by a physician.

21. I have been requested to access and provide the Los Angeles County Sheriff's Department, Custody Division, CRDF Unit Order regarding Person Down, effective in 2011.

22. In the year 2011, the Los Angeles County Sheriff's Department's Custody Division, CRDF did have a Unit Order regarding Person Down. The Unit Order is maintained as Number 5-08-080. A true and correct copy of the Unit Order is attached hereto and incorporated by reference herein as **Exhibit "A-9."** The Order requires that regardless of severity, when it comes to the attention of a employee that a inmate has been injured, the employee shall immediately arrange for a medical examination.

23. I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Showering, effective in 2011.

24. In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Showering. The Policy is maintained in the Custody Division Manual as Number 5-13/040.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-10."** The policy requires that inmates shall be permitted to shower upon assignment to a housing unit, and at least every other day or more often if possible.

25. I have been requested to access and provide the Los Angeles County Sheriff's Department, Custody Division, CRDF Unit Order regarding Inmate Showering/Bathing, effective in 2011.

26. In the year 2011, the Los Angeles County Sheriff's Department's Custody Division, CRDF did have a Unit Order regarding Inmate Showering. The Unit Order is maintained as Number 5-16-030. A true and correct copy of the Unit Order is attached hereto and incorporated by reference herein as **Exhibit "A-11."** The Order requires at a minimum, inmates shall be permitted to shower/bathe upon assignment to a housing module and at least every other day or more often if possible.

27. I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Inmate Meals, effective in 2011.

28. In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Inmate Meals. The Policy is maintained in the Custody Division Manual as Number 5-

13/010.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-12."** The policy requires that meals be served to inmates three times during each 24 hour period. A minimum of 15 minutes shall be allowed for the actual consumption of each meal.

29. I have been requested to access and provide the Los Angeles County Sheriff's Department, Custody Division, CRDF Unit Order regarding Inmate Meals, effective in 2011.

30. In the year 2011, the Los Angeles County Sheriff's Department's Custody Division, CRDF did have a Unit Order regarding Inmate Meals. The Unit Order is maintained as Number 5-06-010. A true and correct copy of the Unit Order is attached hereto and incorporated by reference herein as **Exhibit "A-13."** The Order requires that inmates shall be given a minimum of minimum of 15 minutes to consume their meals.

31. I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Sanitation, effective in 2011.

32. In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Sanitation. The Policy is maintained in the Custody Division Manual as Number 5-11/020.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-14."** The policy requires that each facility shall provide supplies and equipment necessary for the continuous maintenance of highly sanitary conditions.

33. I have been requested to access and provide the Los Angeles County Sheriff's Department, Custody Division, CRDF Unit Order regarding Inmate Visiting, effective in 2011.

34. In the year 2011, the Los Angeles County Sheriff's Department's Custody Division, CRDF did have a Unit Order regarding Inmate Visiting. The Unit Order is maintained as Number 5-15-010. A true and correct copy of the Unit Order is attached hereto and incorporated by reference herein as **Exhibit "A-15."** The Orders provides that legal visiting hours are 1000 hours to 1900 hours, seven days a week. There are no time limits for authorized legal visits during posted hours.

35. I have been requested to access and provide the Los Angeles County Sheriff's Department, Custody Division, CRDF Unit Order regarding Inmate Telephone Calls, effective in 2011.

36. In the year 2011, the Los Angeles County Sheriff's Department's Custody Division, CRDF did have a Unit Order regarding Inmate Telephone Calls. The Unit Order is maintained as Number 5-13-010. A true and correct copy of the Unit Order is attached hereto and incorporated by reference herein as **Exhibit "A-16."** The Order provide that telephone equipment and service be provided at CRDF. Inmate access to telephone calls shall be maximized as much as possible. A prisoner will be allowed three free telephone calls within the first 24 hours after being booked.

37. I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding standard issue of bedding and linen, effective in 2011.

38. In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding standard issue of bedding and linen. The Policy is maintained in the Custody Division Manual as Number 5-13/060.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-17."** The policy requires that each facility shall provide supplies and equipment necessary for the continuous maintenance of highly sanitary conditions.

39. I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Searches, effective in 2011.

40. In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Searches. The Policy is maintained in the Custody Division Manual as Number 5-08/010.00. A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-18."** The objectives of the search policy include but are not limited to controlling the intake of contraband into the facility and preserving the security and safety of both inmates and custodial personnel. The Policy further provides that personnel conducting strip searches or visual body cavity searches shall take all reasonable measures to protect the inmate from undue distress or embarrassment. Every effort shall be made to conduct these searches in an area of privacy so that the inmate cannot be observed by persons not participating in the search. All strip and visual body cavity searches shall be conducted by personnel of the same gender as the inmate being searched, unless exigent circumstances exist.

41.   Strip searches and visual body cavity searches are necessary to controlling the intake of contraband into CRDF. I am aware of female inmates hiding contraband in their underwear and feminine hygiene products including sanitary pads. Among other items, Sheriff's personnel have recovered razors and narcotics from inmates while conducting strip searches and body cavity searches.  The presence of such contraband threatens the safety of inmates, corrections officers, and jail employees.

42.   I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Use of Force, effective in 2011.

43.   In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Use of Force. The Policy is maintained in the Manual of Policy and Procedures as Number 3-01/025.00 A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-19."** The policy provides that department members are authorized to use only that amount of force that is objectively reasonable to perform their duties. "Objectively reasonable" means that Department members shall evaluate each situation requiring the use of force in light of the known circumstances.

44.   I have been requested to access and provide the Los Angeles County Sheriff's Department's policy regarding Unreasonable Force, effective in 2011.

45.   In the year 2011, the Los Angeles County Sheriff's Department's did have policy regarding Unreasonable Force. The Policy is maintained in the Manual of Policy and Procedures as Number 3-01/025.10 A true and correct copy of the policy is attached hereto and incorporated by reference herein as **Exhibit "A-20."** The policy provides that department members shall use only that force which is objectively reasonable.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of March 2015, at Los Angeles, California.

Angela Walton



## 3-02/010.00 STANDARDIZED ORIENTATION AND TRAINING PROGRAM

The purpose of the Custody Division "Standardized Orientation and Training Program" is to create a standardized program throughout Custody Division in facility orientation, custody training, and trainee performance evaluation. The "Standardized Orientation and Training Program" is specified in the Custody Training Manual, maintained by Training Division-Custody personnel.

Custody Training Program

Each unit commander shall implement the Custody Division "Standardized Orientation and Training Program" for new trainees. This program includes:

• Orientation Day,
• Training of three (3) months duration,
• Training Officer/Trainee Relationship Acknowledgment,
• Checklist of training objectives,
• Eight (8) written tests,
• Eight (8) performance tests,
• Fifteen (15) report scenarios,
• Evaluations every two weeks (6 total),
• Recommendations to release from training or extend the training period.

Whenever possible, the following guidelines should be implemented:

• Trainees should have one training officer only,
• Trainees and training officers should be assigned to the same shift and work area,
• Trainees and training officers should have the same schedule and days off.

Custody training officers who recognize that their trainee is not progressing in the "Standardized Orientation and Training Program" at an acceptable rate shall immediately notify their facility training supervisors. The trainee may then be placed on a remedial training program, tailored for his needs by the facility training staff and the training officer. Training personnel shall maintain all necessary documentation regarding the trainee's progress in the remedial program to support the trainee's success or failure. The training program must be completed within the probationary period unless exempted by the Division Chief.

The administration of the "Standardized Orientation and Training Program" will be subject to inspection by command personnel in conjunction with the annual command inspection process. Additionally, each unit shall conduct internal reviews to verify on-going compliance with this directive.

This program will be in addition to any other training provided by each facility. It shall be the responsibility of each facility to maintain records, including a signed Training Officer/Trainee Relationship Acknowledgment, and all documentation of the successful completion of the

training program. There shall be a two year retention of these records.

<u>Unit Orientation</u>

Each Custody Division unit commander shall provide and implement the "Standardized Orientation and Training Program" for each newly assigned employee, supervisor, or transferee. This program shall provide comprehensive information regarding the individual facility and the Custody Division as a whole including, but not limited to, the following;

• Physical structure of the unit,
• Parking, entrances, exits,
• Signing in and out,
• Identification,
• Facility security,
• Fraternization with inmates,
• Appearance,
• Personnel information and changes,
• Use of telephones and electronic communication systems,
• Use of computers and the intranet,
• Provisions regarding meals and breaks,
• Illness or injury on duty,
• Chain of command,
• Functions and purpose of the unit,
• Personal property,
• Emergency procedures,
• Title 15 and 24 (Minimum Jail Standards).

**Revised 11/03/04**
**12/10/01 CDM**



## 3-02/020.00 IN-SERVICE TRAINING

Unit commanders shall provide continual in-service training programs for all personnel assigned to their unit. In-service training shall include Division Instructional Bulletins, refresher training for the 37mm weapon systems, and any other in-service training determined to be necessary for the individual unit as determined by the unit commander. It is the responsibility of each facility to maintain records of attendance, subject matter, and successful completion for each employee attending training programs. These records shall be subject to review during the annual command inspection process.

### Special Weapons Systems Training

Employees certified to fire the 37mm weapon system , i.e., the SL-1, ARWEN, L-6, L-8, and single shot gas gun, are required to fire these weapons at least once every six months under the direction of the unit's training staff or certified user of the weapon of the rank of Bonus I or higher. Failure to do so will result in the loss of certification.

### Instructional Bulletins

All Custody Division personnel shall receive copies of the Custody Division Instructional Bulletins, which are distributed on a monthly basis by the Custody Headquarters Training Unit. Instructional Bulletins are developed by the Custody Division Training Unit and are provided to each unit's training staff. The Custody Division Training Unit is responsible for creating one bulletin each month.

Training Sergeants at each unit are responsible for developing a plan for distribution and briefing of all bulletins to their personnel, and for ensuring that all personnel pass the examination provided with each bulletin. Training Sergeants shall establish procedures to remediate those personnel who do not pass the test. Instructional Bulletins shall be considered mandatory training and shall be conducted in a manner designed to strengthen participant comprehension and performance in the concerned areas.

Instructional Bulletins shall be maintained in a manual (hard copy) or electronic (computer) file folder designated as "Instructional Bulletins." Documentation shall include, but not be limited to:

- Bulletin titles,
- Names of personnel who received the bulletins,
- The date and name of the supervisor(s) who tested the employee,
- Names of personnel who required remedial training.

Unit Training Sergeants shall forward their original records, on a monthly basis, to their respective Training Lieutenant for review and filing.

Instructional Bulletins shall be subject to inspection by command personnel in conjunction with

the annual command inspections. Additionally, each unit shall administer periodic internal reviews to verify ongoing compliance with this directive.

"Instructional Bulletins" have replaced "Recurrent Briefings." The information that is disseminated in the Instructional Bulletins shall supersede all previous information on those subjects.

**12/10/01 CDM**



## 3-02/030.00 TRAINING IN LEGAL ASPECTS

Unit commanders shall, on a continuing basis, thoroughly familiarize their personnel with Department policy relative to the use of force and treatment of inmates. The following statutes shall be briefed as a part of this training:

Penal Code

- Section 147 - Inhumanity to Prisoners,
- Section 149 - Assault by Officers Under Color of Authority,
- Section 673 - Cruel and Unusual Punishment,
- Section 692 through 694 - Lawful Resistance,
- Section 835 - How Arrest is Made and What Restraint is Allowed,
- Section 835a - Right of Arresting Officer to Use Force,
- Section 843 - What Force May Be Used to Arrest Under a Warrant.

Civil Code

- Section 43 - Personal Rights,
- Section 50 - Right to Use Force.

Government Code

- Title 18, U.S.C., Section 241 - Conspiracy Against Rights of Citizens,
- Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law (Criminal),
- Title 42, U.S.C., Section 1983 - Deprivation of Rights Under Color of Authority (Civil).

California Constitution

Article I, Section 6 Prohibition Against Cruel and Unusual Punishment.

United States Constitution

8th Amendment - Prohibition Against Cruel and Unusual Punishment.

**12/10/01 CDM**



## 3-02/050.00 STANDARDS AND TRAINING FOR CORRECTIONS (STC)

Unit commanders shall establish procedures to ensure that custodial personnel attend the required annual training mandated by the Standards and Training for Corrections (STC), pursuant to Title 15, section 1025, "Continuing Professional Training." It is the responsibility of each facility to maintain STC training records and monitor the number of training hours facility staff members have completed.

### Training Division-Custody Unit

It is the responsibility of the Training Division-Custody Unit to provide STC certified training classes for custody personnel on a continuing basis. Unit training coordinators may request to receive monthly class schedules and information from the Training Division-Custody Unit. Custody personnel may submit a request to the Training Division-Custody Unit for a special, one-time certification of an outside training course to be applied towards their annual STC credit requirements, or a portion of their requirements. Training Division-Custody Unit shall be responsible for completing the application for certification and forwarding it to the Board of Corrections for approval.

Training Division-Custody Unit shall periodically audit each facility's training records to verify if required training hours are being completed.

**12/10/01 CDM**



## 5-03/010.00 HEALTH CARE SERVICES

Each unit commander, in conjunction with the Director of Medical Services Bureau, shall have the responsibility to ensure the provision of emergency and basic health care services to all inmates.

**12/10/01 CDM**



## 5-03/020.00 MEDICAL/MENTAL HEALTH PROCEDURES MANUAL

Pursuant to The Minimum Standards for Local Detention Facilities, Title 15, section 1206, "Medical/Mental Health Care Procedures Manual," Medical Services Bureau, in cooperation with the unit commanders, shall develop, in writing, a Medical/Mental Health Procedures Manual, which shall be reviewed and updated at least annually. All policy and procedures shall be in conformance with applicable state and federal laws, and shall include, but are not limited to:

- Summoning and application of proper medical aid,
- Contact and consultation with private physicians,
- Emergency and non-emergency medical and dental services, including transportation,
- Provision for medically required dental and medical prostheses and eyeglasses,
- Notification of next of kin or legal guardian in case of serious illness which may result in death,
- Provision for screening and care of pregnant and lactating women, including postpartum care, and other services mandated by statute,
- Screening, referral, and care of mentally disordered and developmentally disabled inmates,
- Implementation of special medical programs,
- Management of inmates suspected of or confirmed to have communicable diseases,
- The procurement, storage, repackaging, labeling, dispensing, administration-delivery to inmates, and disposal of pharmaceuticals,
- Use of non-physician personnel in providing medical care,
- Provision of therapeutic diets,
- Patient confidentiality and its exceptions,
- The transfer of pertinent individualized health care information, or individual documentation that no health care information is available, to the health authority of another correctional system, medical facility, or mental health facility at the time each inmate is transferred,
- Procedures for notification to the transferring health care staff shall allow sufficient time to prepare the summary. The summary information shall identify the sending facility and be in a consistent format that includes the need for follow-up care, diagnostic tests performed, medications prescribed, pending appointments, significant health problems, and other information that is necessary to provide for continuity of health care. Necessary inmate medication and health care information shall be provided to the transporting staff, together with precautions necessary to protect staff and inmate passengers from disease transmission during transport,
- Forensic medical services, including drawing of blood alcohol samples, body cavity searches, and other functions for the purpose of prosecution shall not be performed by medical personnel responsible for providing ongoing health care to the inmates.

**12/10/01 CDM**

## 5-03/050.00 STANDARDS OF MEDICAL CARE

Standard medical care shall include, but not be limited to:

- Medical history inquiry upon commitment to the facility,
- Medical services performed by qualified persons under the supervision of a licensed physician,
- Emergency medical treatment on a 24-hour basis,
- Access to hospitalization,
- Access to daily sick call or reporting and referral procedures available to inmates to present their medical complaints and receive appropriate medical services for non-emergency illness or injury.

Sick Call

Sick call is the process through which medical staff can identify, examine and/or care for inmate illnesses or injuries or make appropriate referrals for special health attention. Medical Services Bureau will provide sick call to all Custody facilities, Monday through Friday. Urgent and emergent services will be provided on Saturday, Sunday, and holidays. The Inmate Reception Center is excluded since inmates are medically screened as they are processed into the custody environment.

Each facility shall develop unit orders which establish procedures for inmate sick call as specified in Minimum Standards for Local Detention Facilities, Title 15, section 1211, "Sick Call."

These provisions shall include, but not be limited to, the following:

- Procedures for inmates to make timely requests for sick call. This may be accomplished by custodial personnel polling inmates at designated times in a day and initiating a daily sick call list, a daily sick call sign-up roster posted in each housing unit for inmates to sign-up, or other means which will insure that all inmates have regular access to sick call,
- Inmates shall be advised of the time and place for daily sick call during inmate orientation. Signs should be posted conspicuously in day rooms and living units with sick call procedure information. Special provision must be made for inmates who are unable to read, non-English speaking inmates, and for inmates with certain disabilities to understand this information.

Over-the Counter Medications

Over-the-Counter (OTC) medications are drugs that are available without a prescription and regularly sold in retail stores. Since OTC medications have the similar cautions as prescription medications, all OTC medications sold and distributed in all custody facilities shall have prior approval of the Medical Services Bureau Chief Physician.

A supply of approved OTC medications may be kept at each living unit for distribution by trained custody personnel directly to inmates upon reasonable request.

This process is not to circumvent sick call procedures or restrict inmate access to medical personnel.

**12/10/01 CDM**

# Los Angeles County Sheriff's Department

| CUSTODY DIVISION<br>CENTURY REGIONAL DETENTION FACILITY | **Unit Order:** 5-08-050 |
|---|---|
| | **Effective Date:** 01-01-94<br>**Revision Date:** 12-22-06 |

| **Subject:** Medical Services, Defined |
|---|

| **References:** CDM 5-03/050.00, 2-00/050.00; CCR Title 15, Sections 1208, 1211, 1215 |
|---|

**PURPOSE OF ORDER:**

To define the Medical Services available to inmates at the Century Regional Detention Facility (CRDF).

**SCOPE OF ORDER:**

This order shall apply to all personnel assigned to CRDF.

**ORDER:**

Sick Call

Allows inmates access to medical personnel for complaint of medical conditions. The nurse will interview the inmate in the housing area and determine if any treatment or further examination by medical staff is necessary. Refer to CRDF Unit Order 5-08-060.

Pill Call

Allows inmates who take daily medication to receive their medication and have access to medical services. A nurse will dispense the medications as prescribed by a physician. Refer to CRDF Unit Order 5-08-060.

Treatment Line

Allows inmates who are in need of a specific medical treatment(s), e.g., blood pressure check, dressing change, weight check, etc., access to this treatment on an out-patient basis.

**1 of 2**

**12-22-06**                                                                 **5-08-050**

Doctors Line

Allows inmates who have been screened by the nurse and referred for further treatment, access to a physician.  Refer to CRDF Unit Order 5-08-060.

Dental Line

Allows inmates access to a dentist for examination or treatment.

Lab Work Line

Allows lab test(s), as ordered by a physician, for inmates being treated by the medical services staff.

Psychiatric Line

Allows inmates access to mental health services.  A mental health evaluation may be requested by the inmate, medical services staff, CRDF staff, and friends or family of the inmate.  Refer to CRDF Unit Order 5-08-010.

APPROVED BY: _____
ALICE E. SCOTT, CAPTAIN

**2 of 2**                                 DATE:_____ 01/26/07 _____

# Los Angeles County Sheriff's Department

| CUSTODY DIVISION<br>CENTURY REGIONAL DETENTION FACILITY | Unit Order: 5-08-080 |
|---|---|
| | Effective Date: 01-01-94<br>Revision Date: 12.-26-01 |
| **Subject:** Person Down | |
| **References:** TITLE 15, Section 1218; CDM 5-08/160.00, 5-14/000.00 | |

**PURPOSE OF ORDER:**

To establish procedures for providing inmates with medical care after being injured, reporting the injury and properly documenting the incident. These procedures apply to all injuries, regardless of their source, including inmate death.

**SCOPE OF ORDER:**

This order shall apply to all personnel assigned to CRDF.

**ORDER:**

When it comes to the attention of any employee that an inmate has been injured, regardless of severity, that employee shall immediately arrange for a medical examination of the inmate. A Inmate Injury Report (SH-J-212) shall be written and given a Reference Number or a Uniform Reporting Number (URN). The following is a guide for obtaining medical assistance:

<u>Inmates Not Seriously Injured</u>

- Arrange for the inmate to be escorted to the clinic for an initial examination. The officer discovering the injury shall obtain all relevant information for reporting purposes.
- Advise the Tower Senior of the injury.
- Prepare an Inmate Injury Report (SH-J-212) describing how the injury occurred, (including witnesses' statements). Obtain a written statement from the inmate on how he was injured. This report shall also contain a written evaluation by medical personnel of the inmate's injuries. When no injuries are apparent, the nurse shall indicate "no visible injuries" in this section.
- Advise Main Control personnel of the injury for notation in the facility log and obtain a Uniform Reporting Number (URN) and a Reference Number for the report.

1 of 3

02-27-01                                                                5-08-080

Inmates Seriously Injured

- Evaluate the injury.  In cases where the injury is life-threatening, Main Control shall be notified and will request paramedics.  Additionally, Medical Services personnel will be requested to respond and examine the inmate.
- Advise the Watch Commander.  The Watch Commander shall immediately notify the Risk Management Bureau and request an investigator respond to CRDF to collect any necessary information regarding the incident.
- Advise Main Control personnel of the injury for notation in the facility log and obtain a Uniform Report Number and a Reference Number for the report.
- Prepare an Inmate Injury Report (SH-J-212) describing how the injury occurred, (including witnesses' statements, if any) and a written statement from the inmate (if possible) on how he was injured.  This report shall also contain a written evaluation of the inmate's injuries by Medical Services.

When outside medical assistance is requested, i.e., paramedics, ambulance, etc., they shall be escorted by the Prowler or Escort Deputy to the injured inmate's location.  Based on the location of the emergency, the arriving emergency personnel will be directed to one of four designated areas.  The designated areas for ambulance pick up are the front entrance, the booking entrance, the loading dock and the movement center bus area.

Sick or Injured Inmate - "Inmate Down"

Personnel shall, upon first knowledge that an inmate is "down", request medical services' staff and back-up if necessary.  Other inmates near the "down" inmate should be instructed to go to their cells or move away.

If the inmate is unable to walk, personnel should await the nurse's arrival.  If the inmate can talk, ask him for an explanation, e.g. flu, heart problem, etc. and relate the information to the nurse.  The nurse will take full charge of treatment.  A Prowler or Escort Deputy should be requested to escort the nurse and inmate to the main clinic.

If the inmate is claiming an injury, he must be escorted to the clinic as soon as possible.  An inmate injury report (SH-J-212) must be completed.

Seizures

The housing officer will instruct all inmates to move away from the "convulsing" inmate.  If possible, the officer shall move objects within striking distance of the sick inmate.  The officer should advise Main Control and request a nurse and a floor prowler.  Do not allow any inmate to restrain the sick inmate.

Special Population Inmates

2 of 3

02-27-01                                                               5-08-080

For both minor and serious injuries occurring to inmates housed in Special Population, medical services and any outside medical personnel requested should respond to the inmate's location.

If it becomes necessary to move a dangerous inmate to the clinic or out of the facility to a hospital, he should be immobilized with restraining devices, if possible.  Additionally, two deputies and a supervisor will escort the inmate to Medical Services.  If transportation to a hospital becomes necessary, two armed deputies will accompany the inmate and provide security.

Inmate Medical Records

In the event that the injured inmate's medical record(s) need to be transported to or from any medical facility, those record(s) will be sealed in an envelope and hand carried by the transporting officer.

Inmate Death

It is the policy of this Department for deputy personnel to resolve any doubt of life or death in favor of an assumption of life.  In cases where death is obvious, the following procedures will be implemented:

- The immediate area will be cleared of inmates, the scene preserved, and a lockdown of the immediate area will be instituted.
- Notify the Watch Sergeant and Watch Commander.  The Unit Commander shall be notified immediately at anytime of the day or night.
- Obtain all relevant information and complete a person dead report (SH-AD 49).
- Do not move or disturb the body or surrounding materials except to determine to a certainty that death has occurred.
- In any event, all inmates who were in the area, or had a line of sight to the area will be isolated until Homicide Detectives interview them.
- Adhere to all Departmental policies concerning handling of a homicide scene.



## 5-13/040.00 SHOWERING

Inmates shall be permitted to shower upon assignment to a housing unit, and at least every other day or more often if possible. Inmates on work assignments and those making court appearances shall be permitted to shower daily.

Accessible showers:

For inmates with disabilities, accessible showers shall be available for their use. When accessible showers are used, they shall be specifically recorded in the Uniform Daily Activity Log.

**Revised 03/02/09**
**12/10/01 CDM**

# Los Angeles County Sheriff's Department

| | |
|---|---|
| **CUSTODY DIVISION**<br>**CENTURY REGIONAL DETENTION FACILITY** | **Unit Order:** 5-16-030 |
| | **Effective Date:** 08-06-99<br>**Revision Date:** 06-21-06 |

| | |
|---|---|
| **Subject:** | Inmate Shower/Bathing |

| | |
|---|---|
| **References:** | CCR TITLE 15, Section 1266; CDM 5-13/040.00 |

**PURPOSE OF ORDER:**

To ensure State law and Title 15 requirements are met regarding proper hygiene for inmates, it shall be the policy of Century Regional Detention Facility (CRDF) to have a liberal attitude toward inmate hygiene.

**SCOPE OF ORDER:**

This order shall apply to all personnel assigned to and/or working in any capacity at CRDF.

**ORDER:**

At the minimum, inmates shall be permitted to shower/bathe upon assignment to a housing module and at least every other day or more often if possible.  Inmates with work assignments and those making court appearances shall be permitted to shower daily.  The Module Officer shall log all showers given on each shift in the Uniform Daily Activity Log (UDAL).

NOTE:    Shower areas shall provide privacy for inmates while allowing staff to supervise.

Individual areas of the facility housing inmates with special medical or mental health needs shall adopt and facilitate a regimen to ensure compliance with Title 15, Section 1266, Showering.

APPROVED BY:_____ON-FILE_____

1 of 1

ALICE E. SCOTT, CAPTAIN

DATE:_____06-21-06_____



## 5-13/010.00 INMATE MEALS

Meals shall be served three times during each 24 hour period. At least one of these meals shall include hot food. If more than 14 hours elapse between these meals, supplemental food shall be provided.

Food carts and/or insulated food containers on flatbed carts shall be used to transport food to areas located some distance from the kitchen, in order to serve foods at their appropriate temperature. At the time of service, hot food should be served at or above 140 degrees Fahrenheit and cold food at or below 41 degrees Fahrenheit, to limit the growth of bacteria that can cause food borne illness.

A minimum of 15 minutes shall be allowed for the actual consumption of each meal, except for those inmates on medical diets where the responsible physician has prescribed additional time. If the inmate misses a regularly scheduled facility meal, he shall be provided with a sandwich and beverage in lieu of that meal. Inmates on medical diets shall be provided with a full diet meal. Food shall be served only under the immediate supervision of custodial staff.

Inmates shall be allowed to converse in a moderate tone during meals with other inmates at the same table. Inmates shall regulate their conversation to enable them to complete their meal and avoid unnecessary delay of the feeding routine. When or where conditions warrant, unit commanders may limit or omit the privilege of inmate talking during meals.

**12/10/01 CDM**

# Los Angeles County Sheriff's Department

| | |
|---|---|
| **CUSTODY DIVISION**<br>**CENTURY REGIONAL DETENTION FACILITY** | **Unit Order:** 5-06-010 |
| | **Effective Date:** 01-01-94<br>**Revision Date:** 07-27-06 |

| | |
|---|---|
| **Subject:** | Inmate Meals |
| **References:** | CDM 5-11/040.00, 5-13/010.00; CCR TITLE 15, Sections1240, 1246, and 1248 |

**PURPOSE OF ORDER:**

To establish policies and procedures for inmate meals at the Century Regional Detention Facility (CRDF).

**SCOPE OF ORDER:**

This order shall apply to all personnel who are assigned to CRDF.

**ORDER:**

All inmates shall be given a minimum of fifteen minutes, in compliance with TITLE 15, to consume their meal. All inmates shall be provided with one tray. Consideration shall be given to those inmates with special eating needs if it is prescribed by a physician. Breakfast shall be served at 0630 hours, lunch shall be served at 1030 hours and dinner at 1700 hours. Inmate workers that are at work shall be allowed to return to their housing area for feeding. Those inmate workers who are not able to return to their housing area shall be provided a food tray and beverage by their work officer. Telephones, showers, and recreation privileges shall be discontinued during inmate feeding. The Food Services Staff shall obtain a current inmate count by module and area, from the Kitchen Deputy, two hours prior to the meal. The inmate count can be obtained from the FC01 screen in the AJIS computer program.

Prowler deputies shall supervise the inmate workers during the transportation of the flatbed carts from the kitchen to the housing areas. Prior to leaving the kitchen, the prowlers shall ensure all items for the meal are on the flatbed carts by verifying the items against the menu which is taped to each cart. Any discrepancy shall be immediately reported to the Kitchen Deputy. The flatbed carts shall be delivered to the housing area sallyports to be picked up by the housing area inmate worker. The carts must be brought into the housing area immediately to keep the meals hot. The Module Deputy shall unlock the tool box and verify the quantity and size of the serving utensils for each food product with the menu prior to issuing them to the inmate workers. Any discrepancy shall be immediately reported to the Kitchen Deputy.

**1 of 5**

07-27-06                                                                                      5-06-010

## Serving Procedures

- The food containers shall be arranged lengthwise on the serving tables to allow the trays to be slid down the table.
- The tables shall be cleaned with disposable paper towels and disinfectant cleaner before and after each use.
- Inmate workers shall wash their hands with individual dispenser soap and warm water for twenty seconds and dry them with paper towels.
- Inmate workers assigned to dispense meals to module 1200, shall wash their hands prior to serving such in staff restroom #9174, in accordance with the above hand washing procedures.
- Inmate workers shall wear hair nets and plastic gloves.
- The proper serving utensil shall be utilized for each food item.
- Do not deviate from the portions indicated on the menu.
- Keep containers covered until meals are served.
- Do not stir the food containers because it causes heat loss.
- Serve hot food first and cold food last.
- Inmate workers shall be served last.
- Food containers shall never be placed on the floor.
- Food shall be served only under the immediate supervision of a staff member.
- Inmates shall be allowed to converse in a moderate tone during meals within the day room or designated eating area. When or where conditions warrant, unit commanders may limit or omit the privilege of inmate talking during meals.

The Kitchen staff shall conduct spot checks of the inmate feeding procedure. This shall include taking the temperature of the food when it arrives in the kitchen and again at least ten minutes prior to it being served to the inmates at the module level. This temperature reading shall be recorded in the Kitchen staff log. At the time of service, hot food should be served at or above 135 degrees Fahrenheit and cold food at or below 41 degrees Fahrenheit, to limit the growth of bacteria that can cause food borne illness.

The Watch Commander shall conduct an inspection of the inmate meals. This may include sampling the food when the inmate food servers are being fed.

## Direct Supervision Modules

The inmate workers shall arrange the serving tables end to end on the cement area in front of the interview room. Direct observation modules may feed day room sleepers first, followed by each tier, in order to allow for sufficient tables and seating for each inmate being fed in accordance with Title 15. To ensure that all portions are the prescribed amount, the completed trays shall be placed at the end of the second table for inmate pick up.

07-27-06                                                                    5-06-010

All module inmate workers, who shall be serving food, shall be screened by medical staff prior to serving food. Custody personnel may call the Main Clinic, at any time, to request medical screening for potential "Module" Inmate Workers.

The serving tables shall be used to serve breakfast, lunch and dinner and shall be secured in the interview room after each meal. At no time shall any food tray or container be placed on the floor. This includes sandwiches and beverage crates.

## Special Population Modules

Those inmates on lockdown status shall be fed in their cells. Special Population Modules can serve all pods on a continuous basis by wheeling the tables in front of each pod door. The module officer shall position themselves where they can observe and control the entire operation. The module officer shall be assisted by a floor prowler.

## Courtline Feeding

Flatbed carts shall be delivered to the respective modules for courtline feeding at 0400 hours. To expedite the courtline feeding, inmates should be gathered in as few modules as possible while keeping in mind the safety and security concerns. As a general practice, courtline feeding shall take place in the following direct supervision modules, as long as the inmate classifications can intermingle:

3100- feeding 3100 and 3200
3400- feeding 3300 and 3400
2800- feeding 2700 and 2800
3600- feeding 3500 and 3600
3700- feeding 3700 and 3800

Inmates returning from court after 1800 hours ("late court returnees") shall be provided a hot meal. The Reception Center shall be responsible for distributing hot meals to all late court returnees.

– At 1750 hours, Reception Center personnel shall obtain cambros containing burritos, and crates of fruit punch from the Kitchen.

– Prior to serving food, personnel shall ensure inmate workers assigned as food handlers have been medically cleared, and complied with appropriate hygiene procedures.

– Beginning at 1800 hours, food shall be served to all late court returnees. They shall receive two burritos and one carton of fruit punch. Inmates prescribed therapeutic diets shall receive their meals upon notification to custody staff. The floor prowler is responsible for requesting the inmate's meal from the Kitchen Supervisor.

07-27-06                                                                    5-06-010

– Once all late court returnees have received their meals, inmate workers will clean all equipment as well as the serving area.

– Reception Center personnel on early morning shift shall return all equipment and remaining food to the Kitchen.

## Reception Center

The Reception Center shall maintain a minimum supply of sandwiches and juice, throughout the day, for inmates processing in the reception center during breakfast and lunch.  The processing deputy shall call the kitchen supervisor to replenish food supplies as needed.

## Type 1 Feeding

All prisoners shall be fed between 0400 and 0430 hours.  Inmate workers shall be assigned to work in the prisoner dorm, and under direct custody supervision may serve food to inmates, through tray slots.

## Inmate Workers Feeding

Inmate workers working Early Morning shift in the kitchen shall be fed breakfast at 0300 hours.  All other inmate workers housed in the inmate worker modules shall be fed breakfast at the same time "courtline feeding" is served.  Additionally, meals given to inmate workers shall consist of food provided to custody personnel by kitchen staff. Custody staff shall not provide inmates food from the Officers Dining Room (ODR) without approval from the watch sergeant.

## Therapeutic Diets (Medical Diets)

Food Services staff shall prepare all therapeutic diets as requested by Medial Services staff.  Only the attending physician shall prescribe a medical diet.  Inmates returning from court shall be provided their therapeutic diet.  Custody staff shall provide the Kitchen Supervisor with the inmate's name and booking number, and request the inmate's therapeutic diet.

## Religious Meals

Requests for religious meals shall be handled by the Men's Central Jail Chaplain's office. The Chaplain shall be responsible for making arrangements for the meals to be delivered to the CRDF Kitchen for safekeeping and the cook shall be responsible for the reheating.

07-27-06                                                                    5-06-010

Religious meals shall be of the TV dinner type.  The cook shall re-heat the meal and personally hand the meal to a deputy for transporting to the inmate's housing unit and log the deputy's name in the Kitchen Supervisor's red daily calendar "Pass On" book.

Therapeutic diets and religious meals shall be delivered to the inmate while regular inmate meals are being served.

   **NOTE:**    Inmate workers shall not pilfer medical diet plates for preferred food items.

## Disciplinary Isolation Diet

A disciplinary isolation diet may be served to an inmate with approval by the responsible physician and the Unit Commander.  Such a diet shall be served twice in each 24 hour period.  A Disciplinary Diet Request form shall be filled out and submitted to the Unit Commander when a disciplinary isolation diet is recommended by the Disciplinary Review Board.  Under no circumstances shall food be denied to an inmate as a disciplinary action.

## Food Contamination

The senior cooks assigned to the kitchen keep a tray of every meal served to the inmates in a refrigerator for a period of 72 hours.  In the event of contaminated food or food poisoning the tray shall be sent to a lab for examination.  In the event of food poisoning, the Watch Commander, Medical Services staff, and senior cook in the kitchen shall be notified and shall complete the appropriate reports.

## Return of Empty Food Carts and Dirty Tray Carts to the Kitchen

The food servers shall rinse off the serving utensils and return them to the module deputy. The module deputy shall then account for all the serving utensils and place them in the toolbox and lock it.

Empty food containers, flatbed carts, utensil toolboxes and dirty trays shall be removed from the housing areas and returned to the kitchen as soon as possible after each meal by the floor prowler.  Upon return of the toolboxes from the modules, the Kitchen Officer

shall verify that all utensils are accounted for. Any discrepancy shall immediately be reported to the Tower Senior.

APPROVED BY: _____ ON-FILE _____
                         ALICE E. SCOTT, CAPTAIN
         DATE: _____ 07-27-06 _____

## 5-11/020.00 SANITATION

Each facility shall provide supplies and equipment necessary for the continuous maintenance of highly sanitary conditions.

- Floors shall be swept and mopped,
- Bars shall be washed,
- Walls shall be washed,
- Unless protected by trash can liners, garbage and trash receptacles shall be emptied and sanitized,
- Windows shall be washed frequently, and screens (where applicable) shall be kept clean at all times,
- Toilets, urinals, sinks, showers, and basins shall be cleaned.

In addition, each facility shall develop specific procedures to provide for cleanliness of problem areas which are unique to that facility.

**12/10/01 CDM**

09-05-01                                                              5-15-010

# Los Angeles County Sheriff's Department

|  |  |
|---|---|
| **CUSTODY DIVISION**<br>**CENTURY REGIONAL DETENTION FACILITY** | **Unit Order:** 5-15-010 |
|  | **Effective Date:** 01-01-94<br>**Revision Date:** 04-24-02 |

| **Subject:** | Inmate Visiting |
|---|---|
| **References:** | MPP 5-03/060.20; CDM 5-15/000.00, 5-15/010.00, 5-15/020.00, and Title 15 section 1062. |

## PURPOSE OF ORDER:

To establish procedures for prisoners/inmates to visit with their attorneys, bondsmen, clergy, family and friends. Booking Center Deputies shall coordinate visitation for Type I prisoners who are held in the booking area. All other inmate visits shall be coordinated by the Visiting Center.

## SCOPE OF ORDER:

This order shall apply to all personnel assigned to CRDF.

## ORDER:

Visiting Area and Booking Center Deputies have the positive duty of demanding that all visitors' demeanor is reasonable and courteous. Visitors shall dress in acceptable civilian attire. Visitors dressed in provocative, revealing and/or tattered clothing shall be denied a visiting application. Additionally, visitors under the influence of any intoxicating substance shall be denied a visiting application and are subject to arrest. Loitering or any other unacceptable behavior shall not be tolerated and the person(s) shall be ordered to leave the premises.

Attorney Interviews

Type I prisoners temporarily housed in the booking area may be interviewed by an accredited attorney any time during the booking process, within reasonable restrictions. Attorneys are required to complete an Attorney Interview Request Form (SH-J-9). Attorneys may request to bring a maximum of two additional persons necessary for the preparation of the case.

The officer receiving the request shall verify that the attorney has valid picture identification and a current California Bar Card. The request form will be forwarded to the Watch

**1 of 9**

Commander for approval prior to the interview.  When warranted, the handling detective should be notified of the pending interview.

Attorneys shall be escorted from the lobby to the booking interview area.  Briefcases and handbags shall be searched by the escorting Deputy, before allowing entry into the booking interview area. (For information regarding searches, refer to "Wolff vs McDonnel, 4-18 US 539").

The prisoner must sign the Attorney Interview Request Form, accepting or refusing the interview.  The Booking Counter Deputy shall forward the completed form to visiting, where it will be kept on file.  A prisoner has the right to accept or refuse an interview at any time, even if they initiated the request.  The Booking Counter Deputy is responsible for coordinating and monitoring the interview.

- There is no set time limit, however, it is permissible to solicit the cooperation of the attorney by asking that business be conducted in a timely manner.
- Attorneys may give or have their clients sign necessary paperwork, and shall be allowed to give their clients a business card.

Bondsman Interviews

Type I prisoners temporarily housed in the booking area may be interviewed by a bondsman any time after bail has been set, or after a change in the disposition of the charge resulting in a change of bail.  The Lobby Deputy shall notify the Booking Counter Deputy that a prisoner in the booking area has a bondsman interview.

Bondsmen are required to complete a Bondsman Interview Request Form (SH-J-20). Bondsmen may request to bring a maximum of two additional persons necessary to complete bail arrangements.  The officer receiving the request shall verify that the bondsman has valid picture identification and a valid identification card issued by the California Department of Consumer Affairs.  The request form shall be forwarded to the Watch Commander for approval prior to the interview.  When warranted, the handling detective should be notified of the pending interview.

Bondsmen shall be escorted from the lobby to the booking interview area.  Briefcases and handbags shall be searched by the escorting deputy, prior to entry into the booking interview area.  (For information regarding searches, refer to "Wolff vs McDonnel, 4-18 US 539").

The prisoner must sign the Bondsman Interview Request Form, accepting or refusing the interview.  The Booking Counter Deputy shall forward the completed form to visiting, where it will be kept on file.  A prisoner has the right to accept or refuse an interview at any time,

even if they initiated the request.  The Booking Counter Deputy is responsible for coordinating and monitoring the interview.

- There is no set time limit, however, it is permissible to solicit the cooperation of the bondsman by asking that business be conducted in a timely manner.
- Bondsmen may have their clients sign necessary paperwork, however, they are **not** permitted to give their clients a business card.

Authorized Legal Visits

The authorized legal visitors are:

- Attorneys,
- Bail Bondsmen,
- Full-time compensated investigators employed by Federal, State, County, City, or Military agencies.
- Diplomatic representatives of foreign nations, including consuls, envoys, etc.,
- Persons in possession of a valid Sheriff's Department or Los Angeles Police Department Press Pass  (Refer to MPP 5-03/060.10),
- Any physicians, psychiatrists, etc., licensed to practice in this State, may visit if directed by a court order,
- Notary Public, when requested by an inmate for the purpose of notarizing legal documents,
- Private investigators, if properly state licensed or court appointed,
- Persons designated by the Los Angeles Superior Court as pro-per runners,
- or an individual who has received authorization from the Watch Commander.

An attorney may request to bring in a maximum of two material witnesses necessary for preparation of the case.  The material witness must be on a court approved witness list. An attorney may bring an interpreter if the interpreter is a county interpreter with County ID or if the interpreter is appointed by the presiding judge of the inmate's case and must present the Court Order.

Legal Visiting Hours

Legal visiting hours are 1000 hours to 1900 hours, seven days a week.  There are no time limits for authorized legal visits during posted hours.  If a visit is being conducted at the time of a lockdown, the visit shall end.  The canceled visit may resume when the Visiting Center is reopened.  Any deviation requires approval from the Watch Commander.

During public visiting days (Thursday-Sunday), legal visitors shall have preferential treatment over public visitors.  A separate registration line will be provided for them.

3 of 9

**09-05-01**                                                                 **5-15-010**

The legal visitor shall complete the appropriate (SH-J) form:

- Attorney Interview Form (SH-J-9), for attorneys
- Bondsman Interview Request Form (SH-J-20), for bondsmen
- Inmate Visitor Pass (SH-J-319), for all other authorized legal visitors

The Visiting Deputy shall verify the authorized legal visitor presents authentic and valid credentials bearing their photograph and a serial number. Presentation of a badge only (i.e. Law Enforcement Officers, Probation/Parole Officers , etc.) does not constitute proper identification. Legal visit identification may include, but not limited to the following:

- California Bar Card or other state bar card and a valid state picture identification
- A valid California or state issued driver's license
- A valid California or other state issued identification card
- A military identification card
- A valid passport
- A valid US Government identification card with picture

During registration, the Visiting Deputy shall conduct an inspection of all items entering the Visiting Concourse in full view of the authorized legal visitor. Papers and/or documents shall not be read, however, they may be rifled, bent, and inspected for contraband.

Recording devices, i.e., tape recorders, video cameras, cellular phones, etc., are not allowed in the Visiting Center, unless there is a valid Court Order or Watch Commander's approval.

Once the Visiting Deputy accepts the completed visiting request form, he/she shall generate a Legal Visitor Pass to the appropriate floor control. Once the pass is received by the Floor Control Officer, he/she shall notify the housing officer who will then notify the inmate. The floor control officer shall coordinate with the Visiting Deputy and housing officer to arrange the visit.

<u>Outside Clergy Visits</u>

Members of Clergy from churches throughout the outside community must obtain passes for a legal visit by contacting the CRDF Chaplain's Office located in the LRJC Lobby (213/357-5114, or 5116). If a CRDF chaplain is unavailable, the Visiting Senior shall have the Office of Religious and Volunteer Services at Central Jail (213/974-8085) contacted to obtain verification of the clergy visitors approved application.

The following limitations apply specifically to outside Clergy visits at CRDF:

- Clergy must have ministerial credentials and valid picture identification.

**4 of 9**

- Clergy shall not be permitted to visit a relative under the guidelines of a legal visit. The Watch Commander may approve a legal visit under exceptional circumstances.
- Clergy visits shall be permitted for the sole purpose of providing spiritual counseling only, services shall not be performed. Marriages shall not be performed.
- Physical contact visits are not permitted.
- Clergy may visit an inmate once per week as a legal visit, for a period not to exceed 50 minutes. This will not count as a regular visit.
- Clergy may not be accompanied by any other person during the legal visit. Multiple visitor visits shall be conducted through the regular visiting process only. The Watch Commander may approve multiple visitor visits in exceptional situations, such as death notifications.
- Clergy shall not be permitted to pass anything to the inmate (except two business cards). Appropriate religious materials shall be presented to the CRDF Chaplains office, who will forward the material to Main Control Deputy personnel for inspection and distribution to the inmate.
- Clergy are expected to maintain professional appearance when conducting a legal visit. Clergy with an unkept appearance will be excluded.

Passing Legal Documents

The passing of legal documents should be done at the end of a visit. At this time, the floor control officer shall notify the floor prowler to complete the exchange.

Visitors may not pass any items at anytime during a visit. Inmates may complete a property release form and inmate money slips for release of funds to the visitor, at the end of the visit. Only deputy personnel may pass items through the visiting pass through.

Inmates may be allowed to sign the following types of checks at the end of the visit:

- Income Tax Checks
- Social Security Checks
- Employment Checks

Inmates shall not be allowed to sign any general relief checks such as:

- County Welfare
- Unemployment

All checks shall be approved by the Visiting Senior prior to the visit. Checks needing a signature shall be in the name of the inmate signing the check. Personal items or personal property shall not be allowed through the visiting pass through. Should question arise regarding the use of the visiting pass through, contact the Visiting Senior for clarification. The Watch Commander may make exceptions. No money, cigarettes, clothing, books,

newspapers, personal property or other non-legal material (e.g., rubber bands, paper clips, metal fasteners, etc.) shall be passed to inmates.

Only the following items shall be allowed to be given to inmates by authorized legal visitors:

- Two business cards (attorney and clergy only);
- Legal documents and paperwork pertaining to the inmate's case.  Exceptions require a court order or the Watch Commander's approval.

All legal papers and/or documents shall be inspected by the floor prowler for contraband before they are given to the inmate.  Legal papers and/or documents shall not be read, however, they may be rifled and bent.

Public Visiting

Public visiting may be held Thursday-Sunday from 1000 hours to 2000 hours.  There shall be a break between 1530 and 1700 hours to allow inmates time for their evening meal. Visiting may be extended at the discretion of the Watch Commander.

Per Title 15, inmates are entitled to two visits a week totaling one hour.  Inmates at this facility, may have the opportunity for a 20 minute visit each visiting day.  The following holidays may be treated as normally scheduled visiting days:

- New Years Day
- Memorial Day
- Independence Day
- Labor Day
- Thanksgiving Day
- Christmas Day

Visitors who violate the visiting center policy may have their visiting privileges suspended as indicated:

- One week or less for a minor offense (Watch Commander approval)
- Two weeks for a moderate offense   (Unit Commander approval)
- Three to Four weeks for an egregious offense (Unit Commander approval)

Inmate Visitor Passes (SH-J-319)shall be available in the Visitor Waiting Area and must be filled out by all visitors.  Three visitors maximum (adult and/or minor), may be allowed to visit an inmate at one time.  Minor children shall be under the close supervision of an adult at all times.

Visitors shall be issued one pass per inmate, per day. All additional visitors (adult and/or minor) accompanying the registered visitor shall have their name(s) written on the back of the visitor's pass. Persons requesting visitation privileges must present identification to the Visiting Deputy.

Identification may include, but is not limited to the following:

- A valid California or other state issued driver's license (or a temporary permit if accompanied by other picture identification),
- A valid California or other state issued identification card,
- A military identification card,
- A valid passport,
- A valid US Government identification card with picture (refer to CDM section 5-130/05).

**Acceptable I.D. for Minors:**

- A valid School I.D.
- A valid Passport

When doubt exists as to the validity of identification, the Visiting Senior shall be notified and the appropriate action shall be taken. A record check of the visitor in question shall be conducted if it is considered necessary for the security of the employees and/or the facility. Any discrepancies concerning what constitutes proper identification shall be resolved by the Visiting Senior or the Watch Sergeant.

When the Inmate Visitor pass is completed, visitors will register with the Visiting Deputy. At this time, any information needed to complete the visiting request slips, such as an inmate's booking number, will be available to them. After the Visiting Deputy collects the completed visiting request slip, he/she shall generate a visiting pass to the designated inmate's Floor Control Officer.

Visitors shall wait in the Visitor Waiting Area. Once the visit is accepted, visitors shall be directed through the metal detector, and into the visiting concourse. Visiting privileges may be changed or canceled by the Watch Commander at any time if the circumstances warrant. The Visiting Senior shall be notified of any changes and/or cancellations of visits.

Visiting deputies may stop accepting visiting passes up to 30 minutes prior to the ~~1600~~ 1500 hour break and the end of a visiting day, based on the number of persons waiting. Should this situation arise, the Watch Commander has the ultimate responsibility for suspending, canceling, or extending visiting.

09-05-01                                                                          5-15-010

## Warrant Checks

Routine warrant checks on all visitors are not required by the Visiting Center personnel. However, Visiting Center personnel may conduct warrant checks on suspicious individuals.

When an arrest is anticipated, the visiting deputy shall immediately notify the Watch Sergeant. The Watch Sergeant shall evaluate the situation and determine if and how many deputies outside of the Visiting Center are needed to assist with the booking or arrest process. First consideration for relief shall be drawn from the east tower escort(s) and prowler(s).

## Public Visiting Lockers

Public visitors shall place all personal items (e.g. purses, packages, etc.) into the public visiting lockers. All other items that will not fit in the public visiting lockers, should be taken out of the Visiting Center. Exceptions to the items entering the Visiting Concourse are at the discretion of the Visiting Senior or Watch Sergeant. Deputies shall not hold or take responsibility for visitor's personal property.

## Type I Prisoners

Type I prisoners are entitled to an attorney/bondsman visit within the first 24 hours of their incarceration. This entitles Type I prisoners housed in the Type I jail an "after hours" visit. The "after hours" visit shall be arranged by the Watch Commander. After the 24 hour period expires, all attorney/bondsmen visits shall be held during posted legal visiting hours and coordinated by the Visiting Center.

Per TITLE 15, "Type I Prisoners shall be afforded a public visit no later than the calendar day following arrest." The Visiting Center shall coordinate Type 1 visits during posted hours. These hours are to include the hours set aside for legal visits. A floor prowler shall escort and supervise the visit, so that Type I prisoners do not intermingle with inmate workers.

## Visiting Center

The Visiting Senior shall be responsible for the Visiting Center and shall report to the Watch Sergeant. The uniform dress code for the visiting staff is Class A, with full sam or sally browne including a ballistic vest and carrying a chemical spray agent . At the

**09-05-01**                                                                 **5-15-010**

beginning and end of a visiting day, the visiting staff shall conduct a security check of the Visiting Center.   The staff shall ensure that there is no contraband or unauthorized person(s) present and that the Visiting Center is clean and stocked with necessary supplies.


Visiting Log Book

The Visiting Log Book (red calendar book) shall be completed at the end of each visiting day, and shall include:

* The names and employee numbers of the Visiting staff,
* The total number of passes and visitors,
* The details of any unusual incidents or complaints,
* Notifications to Main Control of the total number of visitors and the number of inmates visited for entry into the Facility Log.

All visiting forms and passes shall be properly stored in Room 4008 in the visiting center and retained according to the Custody Division Manual section 4-13/000.00.

# Los Angeles County Sheriff's Department

| CUSTODY DIVISION<br>CENTURY REGIONAL DETENTION FACILITY | Unit Order: 5-13-010 |
| --- | --- |
| | Effective Date: 01-01-94<br>Revision Date: 04-19-2002 |

| Subject: | Inmate Telephone Calls |
| --- | --- |

| References: | MPP 3-07/080.00; CDM 5-13/000.00 |
| --- | --- |

## PURPOSE OF ORDER:

To establish policy and procedures to allow prisoners/inmates access the telephone(s) at the Century Regional Detention Facility (CRDF).

## SCOPE OF ORDER:

This order shall apply to all personnel assigned to CRDF.

## ORDER:

Telephone equipment and service for CRDF is provided and maintained through the Communications and Fleet Management Bureau (CFMB).

The Los Angeles metropolitan area offices of the Department including CRDF are served by a Centrex (Pacific Bell) telephone system. Outlying units of the Department are served by decentralized switchboards.

Inmate Telephone Calls

Inmates will be allowed reasonable access to a telephone beyond those calls which are required by Section 851.5 of the Penal Code. Inmate access to telephones shall be maximized as much as possible. Pacific Bell collect call telephones are located throughout the housing areas.

Prisoner Telephone Calls

Prisoner will be allowed three free telephone calls within the first 24 hours after being booked, as required by Section 851.5 of the Penal Code. These telephone calls must be within an 11 mile radius of CRDF. Calls outside of this radius must be collect calls.



## 5-13/060.00 BEDDING AND LINEN STANDARD ISSUE

A standard issue of bedding and linens for each inmate entering a living area who is expected to remain overnight shall include, but is not limited to:

- One clean, serviceable mattress meeting the requirements of Title 15, section 1272,
- One clean sheet or mattress cover,
- One clean towel,
- One freshly laundered or dry-cleaned blanket (or more, depending upon climatic conditions).

**12/10/01 CDM**

## 5-08/010.00 SEARCHES

Each custody facility shall implement procedures governing searches in strict accordance with this policy to ensure that the security and safety of the unit is maintained. Objectives of searches include:

- Control the intake of contraband into the facility,
- Recover missing or stolen property,
- Preserve internal order, and the security and safety of both inmates and custodial personnel,
- Conduct searches in a way that minimizes the likelihood that inmates' legitimately owned or obtained property will be destroyed.

Searches are tools intended to maintain the safety and security of inmates and employees, and to control the accumulation of contraband and narcotics by inmates. Searches are not to be used to inflict physical stress or punishment on inmates. Inmates shall not be required to remain in any search position for more time than is reasonable and necessary to complete a search.

All deputies and custody assistants are encouraged to conduct random searches whenever possible. Inmate housing areas and areas commonly accessed by inmates should be searched on a regular basis. All housing areas should be searched at least twice a month, if possible, and all other common areas should be searched at least once a month for any contraband and weapons. Common areas would include, but are not limited to, the kitchen, clinic, visiting, elevators, holding cells, day rooms, indoor/outdoor recreation areas, etc.

Prior to any search, the area should be cleared of inmates. The module/floor sergeant shall be notified prior to the start of the search, and the module/floor sergeant or senior must be present during the entire search. There shall be a sufficient number of custodial personnel to conduct the search, the amount of personnel needed shall be determined by the size of the area to be searched. Deputies and custody assistants shall search in an orderly and professional manner. All searches shall be performed in a respectful manner that preserves the dignity of the inmates' personal property. Deputies and custody assistants shall conduct a search in the least disruptive manner possible while still conducting a thorough search.

Housing areas should be searched thoroughly, paying close attention to any crevices or areas where contraband may be hidden. When searching clothing, bedding, and mattresses, custody personnel should inspect for any lumps and/or any irregular seams. Any excess food, clothing and contraband should be removed from cells and housing areas. All contraband items shall be documented and the inmates should be disciplined accordingly.

Any items in good useable condition shall be recycled.  Such items to be recycled include, but are not limited to, religious items issued by chaplains and forms issued by the Department.

All searches shall be logged and signed in the Uniform Daily Activity Log by the module/floor sergeant or senior. The module/floor sergeant or senior shall ensure that a search report (SH-J-434) is completed and submitted to the watch commander.

The module/floor sergeant or senior who supervised the search shall remain at the location until the conclusion of the search and shall ensure that all complaints have been noted and/or handled (refer to Custody Division Manual, section 5-12/000.00, "Inmate Complaint/Service Request).

Types of Searches

Each unit shall implement procedures for the following types of searches in accordance with this policy and legal requirements as stated in Penal Code section 4030, "Strip or Body Cavity Search."

- Specific area searches,
- Housing areas and cell searches,
- Facility perimeter searches,
- Random searches,
- Pat down/cursory searches, strip searches, visual body cavity searches, and physical body cavity searches,
- Contraband searches,
- Narcotic searches.

Inmate Searches

Definitions

- Pat Down/Cursory Search: A search which requires the physical "patting" of a person over their clothing.
- Strip Search: A search which requires a person to remove or re-arrange some or all of their clothing to permit a visual inspection of the underclothing, breasts, buttocks or genitalia.
- Visual Body Cavity Search: This search is the visual inspection of a person's body cavities (i.e., skin folds, rectal and vaginal cavities).
- Physical Body Cavity Search: This search is the intrusion into a person's body cavity for the purpose of discovering and/or retrieving any object concealed within the cavity.

Pat Down/Cursory Search

A pat down/cursory search shall be conducted on all new bookings before accepting them from any arresting agency.

This search may be conducted at any time, on any inmate, by any custodial personnel in order to discover and retrieve concealed weapons and/or contraband which may be hidden under an inmates clothing.

<u>Strip Searches and Visual Body Cavity Searches</u>

Personnel conducting searches shall take all reasonable measures to protect the inmate from undue distress or embarrassment. Every effort shall be made to conduct these searches in an area of privacy so that the inmate cannot be observed by persons not participating in the search. All strip and visual body cavity searches shall be conducted by personnel of the same gender as the inmate being searched, unless exigent or emergency circumstances exist. This provision shall not preclude personnel, based on gender, from employment opportunities or positions that duties may include strip searching inmates of the opposite gender.

In accordance with state law, Penal Code section 4030, "Strip or Body Cavity Search," and federal appellate court decisions, Ackerman v. Giles 746 F.2d 614, and Kennedy v. City of Los Angeles 901 F. 2d 702, once an inmate has been arraigned he may be subject to a strip or visual body cavity search for jail security or safety.

Pursuant to the federal appellate court decision in Way v. County of Ventura 445 F. 3d 1157, **all pre-arraigned inmates charged with an infraction, misdemeanor or felony, shall not be subjected to a strip or visual body cavity search before arraignment unless** there is an individualized suspicion and articulable facts that the inmate is concealing a weapon, drugs or contraband and the search will reveal such. The fact that an inmate is arrested for a misdemeanor or felony offense involving drugs, weapons or violence shall not act as the sole basis for conducting a strip or visual body cavity search.

If a strip and/or visual body cavity search is necessary for **any** pre-arraigned inmate, the watch commander shall complete and sign a Strip Search Authorization Record (SH-R-399) which shall be forwarded to the unit commander for review.

<u>Strip and Visual Body Cavity Searches of Civil Commitments</u>

Civil commitment inmates, including sexually violent predators (SVP's), who must be housed separate and apart from all other inmates, are not subject to strip searches or visual body cavity searches unless, and only under, one or more of the following exceptions:

- The civil committee or SVP is returning to the jail for housing after a court appearance, or returning from another housing facility (i.e., any outside hospital or medical facility),

- There is reasonable suspicion to believe the civil committee or SVP is in possession of drugs, weapons or other contraband,
- Whenever any SVP is received at a county jail facility from a state prison or psychiatric facility.

<u>Identification of Contraband</u>

If contraband is identified in a body cavity of an inmate during a strip search or visual body cavity search, personnel shall immediately notify a supervisor (sergeant or higher). Personnel shall verbally encourage the inmate to remove the secreted contraband, but shall not force the inmate to remove the secreted contraband.

Personnel shall isolate the inmate from all other inmates, and allow the inmate to have reasonable access to a toilet.  Personnel shall ensure the toilet has been checked and the water shut-off prior to giving the inmate access.  If necessary, for the purpose of evidence preservation, the toilet may be lined with a plastic bag.

If the inmate does not remove the contraband voluntarily after a reasonable period of time, no more than six hours, the on duty watch commander shall ensure an incident report and a search warrant is obtained.  Custody Investigative Services Unit (CISU) shall be notified during the investigation process for guidance and/or assistance.

Upon receipt of a signed search warrant, the inmate shall be transported to Los Angeles County + University of Southern California Medical Center (LAC+USC) (or, if LAC+USC is unable to accept the inmate, to any County-owned/operated hospital/medical center) for removal of the contraband by a physician or other authorized licensed medical personnel.

Once the object is recovered, personnel from the concerned custody facility shall book the object into evidence and prepare a supplemental report.

<u>Physical Body Cavity Searches</u>

- No inmate shall be subjected to a physical body cavity search except under the authority of a search warrant or court order specifically authorizing such a search,
- No person shall be present during a physical body cavity search unless such person is necessary for conducting the search or their official duties, relative to the search, require them to be present at the time of the search, (i.e., collection of evidence). The deputy present during the search shall be of the same gender as the inmate,
- A physical body cavity search shall only be conducted under sanitary conditions, and only by a physician or other authorized licensed medical personnel.

<u>Inmates Returning From Court</u>

Personnel shall not conduct a strip search or body cavity search of any inmate scheduled to be released within a 24 hour period, unless so authorized by the unit commander.

Care and Control of Inmate Property

Personnel conducting searches shall take all reasonable measures to ensure that the inmates' property is handled with care.

- If the inmates are removed from their housing area and their property was left behind, the property will be searched and all contraband items removed. The property shall be left on top of the inmates' bunk.
- If the inmates are removed from their housing area and they take their personal and county issued property (excluding mattress), the property should be searched in their presence. When all contraband items are removed, the remainder of the property will be returned to the inmate.
- All bunks shall be searched whether the inmate is present or not.
- All personal property listed in Custody Division Manual, section 7-02/000.00 and 7-03/000.00 (including commissary) and county issued property (with the exception of their sheet and blanket), that does not fit properly inside the inmate property bag, will be considered contraband and will be confiscated and disposed of without compensation, due to health reasons.
- In order to ensure clean and sanitary housing for all inmates, perishable foods, served with inmate meals, not consumed within a four hour period will be considered contraband and **SHALL** be destroyed.
- Pictures, drawings, etc., determined to be lewd or overly inappropriate shall be properly disposed of in the designated contraband disposal container.

Perimeter Searches (Security Check)

Each unit shall implement a procedure or check list for conducting perimeter searches (security check). A perimeter search shall be conducted at least once per shift by the facility watch commander or their designee. The perimeter shall be checked for any security risks, damage or vandalism. Also, all exterior gates, doors and razor wire shall be checked for integrity and to ensure all are secured. The perimeter search shall be noted in the Facility Log and the Watch Commander's Log. Main control shall be notified immediately of any security concerns, problems, or situations requiring emergent response or action.

**Revised 09/08/11**
**Revised 06/15/11**
**Revised 06/08/09**
**Revised 01/16/07**
**12/10/01 CDM**

<u>3-01/025.00</u>          <u>USE OF FORCE</u>

This section reinforces the Department's Core Values concerning reverence for human life.

Force is defined as any physical effort used to control or restrain another, or to overcome the resistance of another.

Department members are authorized to use only that amount of force that is objectively reasonable to perform their duties. "Objectively reasonable" means that Department members shall evaluate each situation requiring the use of force in light of the known circumstances, including, but not limited to, the seriousness of the crime, the level of threat or resistance presented by the subject, or the danger to the community, in determining the necessity for force and the appropriate level of force.   Department members maintain the right to self-defense and Deputy personnel have a duty to protect the lives of others.

3-01/025.10          UNREASONABLE FORCE

Department members shall use only that force which is objectively reasonable.   Unreasonable force is that force that is unnecessary or excessive given the circumstances presented to Department members at the time the force is applied. Unreasonable force is prohibited.   The use of unreasonable force will subject Department members to discipline and/or prosecution.

Head strikes with an impact weapon are prohibited unless circumstances justify the use of deadly force.

**Exhibit B**

```
                    SUPERIOR COURT OF CALIFORNIA
                       COUNTY OF LOS ANGELES
NO. 1WA02365                                      PAGE NO.  1
THE PEOPLE OF THE STATE OF CALIFORNIA      VS.    CURRENT DATE 02/26/15
DEFENDANT 01:  LECIA LENETTE SHORTER
LAW ENFORCEMENT AGENCY EFFECTING ARREST: UNIV OF CALIF POLICE DEPT

BAIL: APPEARANCE   AMOUNT     DATE     RECEIPT OR  SURETY COMPANY   REGISTER
        DATE      OF BAIL    POSTED    BOND NO.                     NUMBER

CASE FILED ON 09/02/11.
  COMPLAINT FILED, DECLARED OR SWORN TO CHARGING DEFENDANT WITH HAVING
COMMITTED, ON OR ABOUT 08/06/11 IN THE COUNTY OF LOS ANGELES, THE FOLLOWING
OFFENSE(S) OF:
    COUNT 01: 602(K) PC MISD
    COUNT 02: 415 PC MISD
NEXT SCHEDULED EVENT:
  09/08/11   830 AM   ARRAIGNMENT   DIST AIRPORT COURTHOUSE DEPT 141


ON 09/08/11 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

CASE CALLED FOR ARRAIGNMENT
PARTIES: EDWARD B. MORETON, JR (JUDGE)   LINDA THOMAS  (CLERK)
         NONE  (REP)      NONE  (DDA)
THE DEFENDANT FAILS TO APPEAR, WITHOUT SUFFICIENT EXCUSE AND NOT REPRESENTED BY
  COUNSEL
NEXT SCHEDULED EVENT:
  BENCH/WARRANT TO ISSUE

09/08/11 BENCH WARRANT IN THE AMOUNT OF $10,000.00 BY ORDER OF JUDGE EDWARD B.
  MORETON, JR ISSUED. (09/09/11).


ON 11/17/11 AT  800 AM :

  DEFENDANT IS PRESENT AND IN CUSTODY.
NEXT SCHEDULED EVENT:
  11/17/11   830 AM  BENCH WARRANT HEARING   DIST AIRPORT COURTHOUSE DEPT 141


ON 11/17/11 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

  NUNC PRO TUNC ORDER PREPARED. IT APPEARING TO THE COURT THAT THE MINUTE ORDER
 IN THE ABOVE ENTITLED ACTION DOES NOT PROPERLY REFLECT THE COURT'S ORDER. SAID
MINUTE ORDER IS AMENDED NUNC PRO TUNC AS OF THAT DATE.  ALL OTHER ORDERS ARE
TO REMAIN IN FULL FORCE AND EFFECT. DETAILS LISTED AT END OF THIS MINUTE ORDER.
CASE CALLED FOR BENCH WARRANT HEARING
PARTIES: MARK T. ZUCKMAN (JUDGE)  LISA KING  (CLERK)
            CHARMAIN D. CAMPBELL  (REP)     SUSAN S. COUIG  (CA)
THE DEFENDANT IS PRESENT(IN LOCK UP) AND REPRESENTED BY FRIEDMAN BAR PANEL
  ATTORNEY
DEFENDANT PLEADS NOT GUILTY TO COUNT 01, 602(K) PC.
DEFENDANT PLEADS NOT GUILTY TO COUNT 02, 415 PC.
BAIL SET AT $30,000.
NEXT SCHEDULED EVENT:
11/21/11   830 AM  PRETRIAL HEARING   DIST AIRPORT COURTHOUSE DEPT 141
```

```
CASE NO. 1WA02365                              PAGE NO.   2
DEF NO.  01                                    DATE PRINTED 02/26/15
```

11/17/11 BENCH WARRANT IN THE AMOUNT OF $10,000.00   RECALLED. (11/17/11).

CUSTODY STATUS: REMANDED TO CUSTODY


ON 11/21/11 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

CASE CALLED FOR PRETRIAL HEARING
PARTIES: MARK T. ZUCKMAN (JUDGE)  MELISSA CORRALEZ  (CLERK)
              SANDRA SUTTLE      (REP)  SUSAN S. COUIG  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY FRIEDMAN BAR PANEL ATTORNEY
BAIL SET AT $30,000
  THE DEFENDANT DOES NOT STIP TO COMMISSIONER ZUCKMAN IN THIS
  MATTER.
  .
  MATTER IS ORDERED TRANSFERRED TO DEPARTMENT 140 FORTHWITH.
  COURT ORDERS AND FINDINGS:

  -THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
NEXT SCHEDULED EVENT:
 11/21/11   930 AM  PRETRIAL HEARING   DIST AIRPORT COURTHOUSE DEPT 140

CUSTODY STATUS: DEFENDANT REMANDED


ON 11/21/11 AT  930 AM  IN AIRPORT COURTHOUSE DEPT 140

CASE CALLED FOR PRETRIAL HEARING
PARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
              CHARMAIN D. CAMPBELL      (REP)  CLAUDIA MARTIN  (CA)
DEFENDANT IS  NOT PRESENT IN COURT, BUT REPRESENTED BY FRIEDMAN BAR PANEL
  ATTORNEY
BAIL SET AT $30,000
  CASE CONTINUE TO 11/29/11 FOR BAIL REVIEW HEARING.
  DEFENDANT ORDERED TO BE PRESENT.
NEXT SCHEDULED EVENT:
 11/29/11   830 AM  BENCH WARRANT HOLD   DIST AIRPORT COURTHOUSE DEPT 140

CUSTODY STATUS: REMANDED TO CUSTODY


ON 11/29/11 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 140

CASE CALLED FOR BENCH WARRANT HOLD
PARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
              CHARMAIN D. CAMPBELL      (REP)  GISELLE M. FERNANDEZ  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY FRIEDMAN BAR PANEL ATTORNEY
BAIL SET AT $30,000
  BODY ATTACHMENT FOR GORMAN LAUDIS HELD.TO
  CASE CONTINUE TO 12/15/11 FOR JURY TRIAL.
NEXT SCHEDULED EVENT:
 12/15/11   830 AM  JURY TRIAL   DIST AIRPORT COURTHOUSE DEPT 140
DAY 28 OF 30

CUSTODY STATUS: REMANDED TO CUSTODY


ON 12/15/11 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 140

CASE CALLED FOR JURY TRIAL

```
CASE NO. 1WA02365                              PAGE NO.   3
DEF NO.  01                                    DATE PRINTED 02/26/15
```

PARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
                  CHARMAIN D. CAMPBELL      (REP)  NONE  (DDA)
DEFENDANT IS   NOT PRESENT IN COURT, BUT REPRESENTED BY FRIEDMAN BAR PANEL
    ATTORNEY
BAIL SET AT $30,000
    MOTION TO TRIAL GRANTED. DEFT. IS IS DEPT 52 ON A 10/10
    COURT FIND GOOD CAUSE TO CONT. CASE UNTIL 12-16-11 IN DEPT.140
WAIVES STATUTORY TIME.
NEXT SCHEDULED EVENT:
    12/16/11   830 AM  JURY TRIAL    DIST AIRPORT COURTHOUSE DEPT 140
DAY 09 OF 10

CUSTODY STATUS: REMANDED TO CUSTODY


ON 12/16/11 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 140

CASE CALLED FOR JURY TRIAL

PARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
                  CHARMAIN D. CAMPBELL  (REP)    GISELLE M. FERNANDEZ  (DA)
THE DEFENDANT IS PRESENT(IN LOCK UP) AND REPRESENTED BY FRIEDMAN BAR PANEL
    ATTORNEY
 ON PEOPLE'S MOTION, COURT ORDERS COMPLAINT AMENDED BY INTERLINEATION TO ADD
    VIOLATION 415 PC MISD AS COUNT 02.
DEFENDANT ADVISED OF AND PERSONALLY AND EXPLICITLY WAIVES THE FOLLOWING RIGHTS:
    WRITTEN ADVISEMENT OF RIGHTS AND WAIVERS FILED, INCORPORATED BY REFERENCE
HEREIN
TRIAL BY COURT AND TRIAL BY JURY
    CONFRONTATION AND CROSS-EXAMINATION OF WITNESSES;
    SUBPOENA OF WITNESSES INTO COURT TO TESTIFY IN YOUR DEFENSE;
    AGAINST SELF-INCRIMINATION;
DEFENDANT ADVISED OF THE FOLLOWING:
 THE NATURE OF THE CHARGES AGAINST HIM, THE ELEMENTS OF THE OFFENSE IN THE
    COMPLAINT, AND POSSIBLE DEFENSES TO SUCH CHARGES;
 THE POSSIBLE CONSEQUENCES OF A PLEA OF GUILTY OR NOLO CONTENDERE, INCLUDING
    THE MAXIMUM PENALTY AND ADMINISTRATIVE SANCTIONS AND THE POSSIBLE LEGAL
    EFFECTS AND MAXIMUM PENALTIES INCIDENT TO SUBSEQUENT CONVICTIONS FOR THE
    SAME OR SIMILAR OFFENSES;
 THE EFFECTS OF PROBATION;

 IF YOU ARE NOT A CITIZEN, YOU ARE HEREBY ADVISED THAT A CONVICTION OF THE
    OFFENSE FOR WHICH YOU HAVE BEEN CHARGED WILL HAVE THE CONSEQUENCES OF
    DEPORTATION, EXCLUSION FROM ADMISSION TO THE UNITED STATES, OR DENIAL OF
    NATURALIZATION PURSUANT TO THE LAWS OF THE UNITED STATES.
COUNSEL FOR THE DEFENDANT JOINS IN THE WAIVERS AND CONCURS IN THE PLEA.
COURT FINDS THAT EACH SUCH WAIVER IS KNOWINGLY, UNDERSTANDINGLY, AND EXPLICITLY
    MADE;
THE DEFENDANT PERSONALLY WITHDRAWS PLEA OF NOT GUILTY TO COUNT 02 AND PLEADS
    NOLO CONTENDERE WITH THE APPROVAL OF THE COURT TO A VIOLATION OF SECTION 415
    PC IN COUNT 02.   THE COURT FINDS THE DEFENDANT GUILTY.
COUNT (02) : DISPOSITION: CONVICTED
COURT FINDS THAT THERE IS A FACTUAL BASIS FOR DEFENDANT'S PLEA, AND COURT
    ACCEPTS PLEA.
NEXT SCHEDULED EVENT:
    SENTENCING

CASE NO. 1WA02365                                    PAGE NO.   4
DEF NO.  01                                          DATE PRINTED 02/26/15

   DEFENDANT WAIVES ARRAIGNMENT FOR JUDGMENT AND STATES THERE IS NO LEGAL CAUSE
   WHY SENTENCE SHOULD NOT BE PRONOUNCED. THE COURT ORDERED THE FOLLOWING
   JUDGMENT:
AS TO COUNT  (02):
IMPOSITION OF SENTENCE SUSPENDED
DEFENDANT PLACED ON SUMMARY PROBATION
   FOR A PERIOD OF 018 MONTHS UNDER THE FOLLOWING TERMS AND CONDITIONS:
   SERVE 032 DAYS IN LOS ANGELES COUNTY JAIL
      LESS CREDIT FOR 32 DAYS
   IN ADDITION:
   -STAY AWAY FROM THE LOCATION OF THE ARREST.
   -OBEY ALL LAWS AND ORDERS OF THE COURT.
   -DEFENDANT ACKNOWLEDGES TO THE COURT THAT THE DEFENDANT
    UNDERSTANDS AND ACCEPTS ALL THE PROBATION CONDITIONS, AND
    DEFENDANT AGREES TO ABIDE BY SAME.
   OBEY ALL LAWS AND FURTHER ORDERS OF THE COURT.
   JAIL TIME TO BE SERVED CONCURRENT WITH ANY OTHER CASE.
   FEES WAIVED

COUNT (02): DISPOSITION: CONVICTED
REMAINING COUNTS DISMISSED:
   COUNT  (01): DISMISSAL IN FURTH OF JUSTICE PER 1385 PC
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
   PROCEEDINGS TERMINATED


12/23/11   ARREST DISPOSITION REPORT SENT VIA FILE TRANSFER TO DEPARTMENT OF
           JUSTICE

ON 01/23/12 AT  900 AM :

   DECLARATION AND ORDER FOR PAYMENT OF ATTORNEY FEES IN THE
   AMOUNT OF $1511.10 TO LEONARD FRIEDMAN IS FILED THIS DATE,
   SERIAL NUMBER D-412358 ISSUED.
   .



ON 01/11/13 AT  830 AM :


   MATTER CALENDARED FOR POSSIBLE VIOLATION OF PROBATION.
   .           *** NO LEGAL FILE ***
   REFERENCE CASE: 3CA11386
             *** ENTRY BY R. VILLANUEVA ***
NEXT SCHEDULED EVENT:
   01/11/13  830 AM  POSSIBLE VIOL. OF PROBATION   DIST CENTRAL ARRAIGN CTHOUSE
      DEPT 082



ON 01/11/13 AT  830 AM  IN CENTRAL ARRAIGN CTHOUSE DEPT 082

CASE CALLED FOR POSSIBLE VIOL. OF PROBATION
PARTIES: JOHN GREEN (JUDGE) PATRICIA PEREZ  (CLERK)
            ELECTRONIC RECORDING  (REP)    HEIDI MICHELLE MATZ  (DA)
STIPULATED THAT JOHN GREEN (JUDGE) MAY HEAR THE CAUSE AS TEMPORARY JUDGE.
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY CHARLEAN HARTSFIELD ALTERNATE
   PUBLIC DEFENDER
   PROBATION REVOKED

```
CASE NO. 1WA02365                                    PAGE NO.    5
DEF NO.  01                                          DATE PRINTED 02/26/15
```

AS TO COUNT  (02):
  PROBATION VIOLATION HEARING SET ON 01-25-13 IN DEPT. 40
  REFERENCE CASE #3CA11386.
  .
  REMAND ORDER ISSUED.
  .
  NO LEGAL FILE IN COURT.
  .
  ERM WAS R. VAN ENGERS.
  .
  TCIS ENTRY MADE BY M. GARCIA.
  .
BAIL SET AT $1,000.
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
  01/25/13   830 AM   PROBATION VIOLATION HEARING   DIST CRIM JUSTICE CTR (LAC)
      DEPT 040


CUSTODY STATUS: REMANDED TO CUSTODY


ON 01/25/13 AT  830 AM  IN CRIM JUSTICE CTR (LAC) DEPT 040

CASE CALLED FOR PROBATION VIOLATION HEARING
PARTIES: COMMR. DONALD S KENNEDY (JUDGE)  HOPE E. PATINO  (CLERK)
              ADRIANNE THOMPSON      (REP)  CARLOS RAMIREZ  (CA)
THE DEFENDANT FAILS TO APPEAR, WITH SUFFICIENT EXCUSE. (MISS-OUT) AND
REPRESENTED BY JAHEE YIN ALTERNATE PUBLIC DEFENDER
BAIL SET AT $1,000
  MATTER CONTINUED TO 01/29/2013 IN DEPARTMENT 40 AT 09:00 A.M
  FOR PROBATION VIOLATION HEARING SETTING.
  .
  ***ENTERED BY E SANCHEZ PER NOTES IN FILE***
NEXT SCHEDULED EVENT:
  01/29/13   900 AM   SETTING OF VIOLATION HEARING   DIST CRIM JUSTICE CTR (LAC)
      DEPT 040

CUSTODY STATUS: DEFENDANT REMANDED


ON 01/29/13 AT  900 AM  IN CRIM JUSTICE CTR (LAC) DEPT 040

CASE CALLED FOR SETTING OF VIOLATION HEARING
PARTIES: COMMR. DONALD S KENNEDY (JUDGE)  HOPE E. PATINO  (CLERK)
              BRIAN LUCY        (REP)  KELLY D. BOYER  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JOSEPH B. MCINNIS ALTERNATE
  PUBLIC DEFENDER
BAIL SET AT $1,000
  MATTER CONTINUED TO 03/13/2013 IN DEPARTMENT 40 AT 09:00 A.M
  FOR PROBATION VIOLATION HEARING SETTING.
  .
  ***ENTERED BY E SANCHEZ PER NOTES IN FILE***
NEXT SCHEDULED EVENT:
  03/13/13   900 AM   SETTING OF VIOLATION HEARING   DIST CRIM JUSTICE CTR (LAC)
      DEPT 040

CUSTODY STATUS: DEFENDANT REMANDED

```
CASE NO. 1WA02365                              PAGE NO.   6
DEF NO.  01                                    DATE PRINTED 02/26/15
```

ON 03/13/13 AT  900 AM  IN CRIM JUSTICE CTR (LAC) DEPT 040

CASE CALLED FOR SETTING OF VIOLATION HEARING
PARTIES: COMMR. DONALD S KENNEDY (JUDGE)  HOPE E. PATINO  (CLERK)
           CHARLES KUHN       (REP)  CARLOS RAMIREZ  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JOSEPH B. MCINNIS ALTERNATE
   PUBLIC DEFENDER
   MATTER CONTINUED TO 04/03/2013 IN DEPARTMENT 40 AT 09:00 A.M
   FOR PROBATION VIOLATION HEARING SETTING.
   .
   ***ENTERED BY E SANCHEZ PER NOTES IN FILE***
NEXT SCHEDULED EVENT:
   04/03/13   900 AM  SETTING OF VIOLATION HEARING   DIST CRIM JUSTICE CTR (LAC)
      DEPT 040

CUSTODY STATUS: DEFENDANT REMAINS ON OWN RECOGNIZANCE


ON 04/03/13 AT  900 AM  IN CRIM JUSTICE CTR (LAC) DEPT 040

   NUNC PRO TUNC ORDER PREPARED. IT APPEARING TO THE COURT THAT THE MINUTE ORDER
   IN THE ABOVE ENTITLED ACTION DOES NOT PROPERLY REFLECT THE COURT'S ORDER. SAID
   MINUTE ORDER IS AMENDED NUNC PRO TUNC AS OF THAT DATE.  ALL OTHER ORDERS ARE
   TO REMAIN IN FULL FORCE AND EFFECT. DETAILS LISTED AT END OF THIS MINUTE ORDER.
   CASE CALLED FOR SETTING OF VIOLATION HEARING
PARTIES: COMMR. DONALD S KENNEDY (JUDGE)  HOPE E. PATINO  (CLERK)
           MONICA MOORE       (REP)  CARLOS RAMIREZ  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JOSEPH B. MCINNIS ALTERNATE
   PUBLIC DEFENDER
   SETTING OF PROBATION VIOLATION HEARING IS TRAILING DEFENDANT'S
   OPEN CASE NO. 3CA11386.
   MATTER IS CONTINUED AS SHOWN BELOW.
   REFERENCE: 1CA16810 AND 0WA12036.
   .
   .
   THIS MINUTE ORDER IS CORRECTED NUNC PRO TUNC AS FOLLOWS:
   BY STRIKING: " TIME: 08:30 A.M. "

   BY ADDING: "TIME: 9:30 A.M."
   CORRECTED 4-3-13, BY A.CISNEROS, J.A.
   COURT ORDERS AND FINDINGS:
   -THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
NEXT SCHEDULED EVENT:
   04/03/13   930 AM  SETTING OF VIOLATION HEARING   DIST CRIM JUSTICE CTR (LAC)
      DEPT 054

CUSTODY STATUS: DEFENDANT REMAINS ON OWN RECOGNIZANCE


ON 04/03/13 AT  930 AM  IN CRIM JUSTICE CTR (LAC) DEPT 054

CASE CALLED FOR SETTING OF VIOLATION HEARING
PARTIES: LIA MARTIN (JUDGE)  ANA LUISA CISNEROS  (CLERK)
           LORRAINE ROMIN       (REP)  BRADLEY ROTHENBERG  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JOSEPH B. MCINNIS ALTERNATE
   PUBLIC DEFENDER
   THE SETTING OF PROBATION VIOLATION HEARING IS TRAILING
```

CASE NO. 1WA02365                                    PAGE NO.    7
DEF NO.  01                                          DATE PRINTED 02/26/15

   DEFENDANT'S OPEN CASE # 3CA11386.
   .
   THE SETTING OF PROBATION VIOLATION HEARING IS CONTINUED
   TO MAY 8, 2013 AS INDICATED BELOW.
   .
   PROBATION REMAINS REVOKED; THE DEFENDANT MAY REMAIN ON
   HER OWN RECOGNIZANCE.
   .
   *THIS CASE IS CALLED WITH CASES 3CA11386-01; 0WA12036-01;
   AND 1CA16810.
   .
   THE CASE FILE(S) ARE FORWARDED TO DEPARTMENT 40 FORTHWITH.
   COURT ORDERS AND FINDINGS:
   -THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
NEXT SCHEDULED EVENT:
   05/08/13   830 AM   SETTING OF VIOLATION HEARING   DIST CRIM JUSTICE CTR (LAC)
      DEPT 040


CUSTODY STATUS: DEFENDANT REMAINS ON OWN RECOGNIZANCE


ON 05/08/13 AT  830 AM  IN CRIM JUSTICE CTR (LAC) DEPT 040

CASE CALLED FOR SETTING OF VIOLATION HEARING
PARTIES: COMMR. DONALD S KENNEDY (JUDGE) HOPE E. PATINO   (CLERK)
              ANGELA DEVER  (REP)     KELLY D. BOYER  (CA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JOSEPH B. MCINNIS ALTERNATE
  PUBLIC DEFENDER
  THE DEFENDANT IS ADVISED OF RIGHTS RE HEARING ON VIOLATION AND WAIVES RIGHTS
TO A REVOCATION HEARING.
  DEFENDANT AND COUNSEL ADMIT TO VIOLATION OF PROBATION IN OPEN COURT.
COURT FINDS DEFENDANT IN VIOLATION OF PROBATION.
  PROBATION REVOKED
PROBATION REINSTATED
  PROBATION IS CONTINUED ON THE SAME TERMS AND CONDITIONS WITH THE FOLLOWING
    MODIFICATIONS:
AS TO COUNT  (02):
  THE DEFENDANT IS ORDERED TO SERVE 40 DAYS IN THE LOS ANGELES
  COUNTY JAIL.  THE DEFENDANT IS GIVEN CREDIT FOR 20 ACTUAL DAYS

  PLUS 20 GOOD TIME/WORK TIME DAYS FOR A TOTAL CREDIT OF 40 DAYS.
  .
  THE DEFENDANT IS GIVEN CREDIT FOR TIME SERVED.
  .
  NO FURTHER APPEARANCES.
  .
  ***TCIS ENTRY BY S. REESE, BASED UPON CLERK'S NOTES***
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
  PROBATION IN EFFECT

CUSTODY STATUS: ON PROBATION


ON 05/30/13 AT  330 PM  IN CRIM JUSTICE CTR (LAC) DEPT CLK

CASE CALLED FOR SUBSEQUENT ADR SUBMITTED
PARTIES: NONE (JUDGE)  NONE  (CLERK)

```
CASE NO. 1WA02365                              PAGE NO.   8
DEF NO.  01                                    DATE PRINTED 02/26/15

                  NONE      (REP)  NONE  (DDA)
DEFENDANT IS  NOT PRESENT IN COURT, AND NOT REPRESENTED BY COUNSEL
 MAY 8, 2013 PROCEEDINGS REPORTED.
NEXT SCHEDULED EVENT:
PROBATION IN EFFECT


02/26/15


I HEREBY CERTIFY THIS TO BE A TRUE AND CORRECT COPY OF THE ELECTRONIC DOCKET
ON FILE IN THIS OFFICE AS OF THE ABOVE DATE.
SHERRI R. CARTER ,EXECUTIVE OFFICER/CLERK OF SUPERIOR COURT, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA

BY _____, DEPUTY
```

**Exhibit C**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

LECIA L. SHORTER,                    )    Case No:  CV 12-7337 JVS (AGR)
                                     )
                Plaintiff,           )
                                     )
vs.                                  )
                                     )
LEROY BACA, ET AL.,                  )
                                     )
                Defendants.          )
_____  )

# ORIGINAL TRANSCRIPT

## DEPOSITION OF LECIA L. SHORTER

Los Angeles, California
Wednesday, April 9, 2014

Reported By: Teresa Gold, CSR 10506
Printed on recycled paper.

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   LECIA L. SHORTER,              )   CASE NO.
                                    )   CV 12-7337 JVS (AGR)
 6            Plaintiff,            )
                                    )
 7   vs.                            )
                                    )
 8   LEROY BACA, et al.,            )
                                    )
 9            Defendants.           )
     _____)

10

11

12

13

14            DEPOSITION OF LECIA L. SHORTER

15              LOS ANGELES, CALIFORNIA

16            WEDNESDAY, APRIL 9, 2014

17

18

19

20

21

22

23

24   Reported by:

25   Teresa E. Gold, CSR No. 10506

                                                        1
```

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4

5     LECIA L. SHORTER,              )  CASE NO.
                                     )  CV 12-7337 JVS (AGR)
6            Plaintiff,              )
                                     )
7     vs.                            )
                                     )
8     LEROY BACA, et al.,            )
                                     )
9            Defendants.             )
      _____ )

10

11

12

13

14

15              Deposition of Lecia L. Shorter, taken on

16       behalf of the Defendant, at 3435 Wilshire

17       Boulevard, Suite 2800, Los Angeles,

18       California 90010, commencing at 10:09 a.m.,

19       Wednesday, April 9, 2014, before Teresa E.

20       Gold, Certified Shorthand Reporter No. 10506

21       pursuant to Notice.

22

23

24

25

                                                          2

1                    A P P E A R A N C E S

2

3        For Plaintiff In Propria Persona:

4                LECIA L. SHORTER

5

6        For Defendant Sheriff Baca, et al.:

7                NELSON & FULTON

8                BY:   RINA MATHEVOSIAN, ATTORNEY AT LAW

9                3435 Wilshire Boulevard

10               Suite 2800

11               Los Angeles, California   90010

12               (213) 365-2703

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                            3

```
1                          I N D E X

2

3   WITNESS:                                         PAGE

4   LECIA L. SHORTER

5            Examination by MS. MATHEVOSIAN              5

6

7

8

9

10

11  INFORMATION TO BE ENTERED IN TRANSCRIPT:

12                  (None requested.)

13

14

15

16  QUESTIONS REFUSED TO ANSWER:

17                       PAGE        LINE

18                        21           7

19

20

21

22  EXHIBITS OFFERED:

23                  (None offered.)

24

25
                                                         4
```

```
 1          LOS ANGELES, CALIFORNIA; WEDNESDAY, APRIL 9, 2014

 2                          10:09 A.M.

 3                          -- oOo --

 4                     LECIA L. SHORTER,

 5            the witness herein, was sworn and

 6          examined and testified as follows:

 7

 8          DEPOSITION OFFICER:  Please raise your right

 9   hand.

10          Do you solemnly swear or affirm that the

11   testimony you are about to give in this deposition shall

12   be the truth, the whole truth, and nothing but the truth?

13          MS. SHORTER:  Yes.

14

15                          EXAMINATION

16   BY MS. MATHEVOSIAN:

17      Q.   Can you please state and spell your name for the

18   record.

19      A.   Lecia Lenette Shorter.  That's L-E-C-I-A,

20   L-E-N-E-T-T-E, S-H-O-R-T-E-R.

21      Q.   Ms. Shorter, this is a deposition.  I will be

22   asking you questions and you will be giving me answers

23   under oath.  You are required to answer truthfully under

24   the penalty of perjury.  The answers you give today will

25   have the same effect as if you were testifying in court,
```

10:11

5

1   myself.  You can look at me and I don't look like I don't

2   like to keep myself clean.  Every opportunity I had to

3   shower I was jumping in the shower.

4       Q.   Okay.  So you were in a single-man cell; correct?

5       A.   Single-man cell?

6       Q.   Was there anyone else in your cell?

7       A.   No.

8       Q.   Was there a sink in your cell?

9       A.   Yes.

10      Q.   And there was also a toilet in your cell;

11  correct?

12      A.   Yes.

13      Q.   Besides that one time where you brought up to the

14  court that you wanted to shower and you received an order

15  to shower, did you bring it up to the court again that you

16  needed to shower?

17      A.   I don't think I was in the court again except to

18  do a plea bargain, and then I got out like the next day or

19  something.

20      Q.   Okay.  While you were incarcerated at CRDF, the

21  Central Regional Detention Facility, did you ever make a

22  request to see your attorney at CRDF?

23      A.   I probably did.  I made requests for phone calls

24  and those requests were denied.

25      Q.   And did your attorney ever come to CRDF to see

49

1    Q.   And when you arrived at the module what would

2  occur?

3    A.   Different things.   On most occasions Avalos and

4  Ortiz, and I think a Deputy Garcia or Moreno would be

5  waiting for my arrival.

6    Q.   Were you escorted by yourself or were you

7  escorted with other inmates?

8    A.   I would be with other inmates and each inmate

9  would have a different place to go or a different

10  direction to take.   Usually I would be by myself with

11  Deputy Ortiz and Avalos or Garcia.

12    Q.   Were there ever other inmates with you that would

13  arrive at module 2300?

14    A.   Yes.   They would go to different areas.

15    Q.   When you would arrive at the module is this when

16  you were searched?

17    A.   No.

18    Q.   Where were you searched?

19    A.   In my cell.

20    Q.   Okay.

21    A.   Well, they don't physically search you.

22    Q.   How did the search take place?

23    A.   They search you inside of the cell.   You are

24  transported with your hands cuffed and you are

25  transported, like they hold your handcuffs.   You got one

52

1    deputy on each side.  I believe the cell is on the second

2    floor so you go up the stairs.  They would have the door

3    opened, you stand inside, and they will unlatch one of

4    your handcuffed hands so that you can bring one hand -- I

5    don't know if it's in front maybe?  I don't know if it's

6    in front, however -- anyway, they will unlatch one of the

7    handcuffs and they have a chain that they are holding, and

8    they will say, Take off your bra and your shirt.  So I

9    would take off my bra and the shirt, and they are like

10   hanging on the chain because there's one handcuff.  I only

11   have one hand free.  I don't know if you can get a visual

12   of what I'm saying.  So anyway, you take off your bra and

13   your shirt, and then they will say, Take off your

14   underwear.  So you take off your underwear.  Then they

15   say, Turn around, open your vagina and bend over and

16   cough.

17        Q.   Did you have a problem with that?

18        A.   Yes.

19        Q.   What did you say in response to that?

20        A.   The first time I had a problem because I had this

21   heavy menstrual cycle and I had like two or three pads on

22   that I would bleed through in like 30 or 40 minutes.  So I

23   was like, I'm menstruating right now very heavily so I'm

24   not going to put my hands in my vagina and open them.  I

25   think that's just improper and inappropriate.

                                                           53